FILED

MAR 18 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

Plaintiff's Name KaHEal earriSH
Inmate No ## F. 15921
Address Salinas valley State erison
P.O. Box 1050
Soledad, LaliFornia 93960

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

KaHEal earriSH,
(Name of Plaintiff)

vs.

A. Solis, R. Hedrick,
w. muniz, L. Salazar,
R. mavchula, B. Powell,
A. maychula, J. Sanud
(Names of all Defendants)

1: 11 CV 00 460    JLT PC

(Case Number)

COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983

I. **Previous Lawsuits (list all other previous or pending lawsuits on back of this form):**

A.   Have you brought any other lawsuits while a prisoner? Yes ___ No X

B.   If your answer to A is yes, how many? _____
     Describe previous or pending lawsuits in the space below.
     (If more than one, use back of paper to continue outlining all lawsuits.)

     1. Parties to this previous lawsuit:

     Plaintiff _____

     Defendants _____
     _____

     2. Court (if Federal Court, give name of District; if State Court, give name of County)
     _____

     3. Docket Number _____   4. Assigned Judge _____

     5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
     _____

     6. Filing date (approx.) _____   7. Disposition date (approx.) _____

RECEIVED

MAR 18 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

1

**II.** **Exhaustion of Administrative Remedies**

A.   Is there an inmate appeal or administrative remedy process available at your institution?

Yes **X** No___

B.   Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes **X** No___

If your answer is no, explain why not_____

_____

_____

C.   Is the process completed?

Yes **X**       If your answer is yes, briefly explain what happened at each level.
EACH LEVEL OF CEVIEW WAS MET BY ZDUOTESFEIT
INVEStigatiONl EUCJUED tp iDtENTioDally aVDId
FiNDiNg WCONGDOiNg ON thE FACT OF EACH NAMED
DEFENDANT hElEM.

No___       If your answer is no, explain why not.

_____

_____

_____

**NOTICE:**   Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

III. **Defendants**

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A.   Defendant _A · Solis_____ is employed as _CHIEF DEPUTY WARDEN_____ at _Salinas Valley State Prison (SVSP)_

B.   Additional defendants _31625 Highway 101 Soledad Calif 93560, and is sued in his individual and official capacity for ratification of policies which violated plaintiff civil and constitutional rights._ _(SEE attaCHMENt)_

IV. **Statement of Claim**

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

(1.) Plaintiff is a person with a qualified disability within the meaning of the Americans with Disability Act (ADA) and a participant in the California Department of Corrections and Rehabilitation/(CDCR) Mental Health Delivery Services (MHDS) program at the Enhanced out patient (EOP) level of care. EOP is designed for inmates who are gravely mentally disable and/or unable to care for themselves in the general population.

(2.) During the times the derivations are claimed in this lawsuit plaintiff was an EOP inmate being _(SEE attaCHMENt sHEEt)_

V. **Relief.**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Compensatory damages in the amount of $20,000 against EacH defendant jointly and seperately; punitive damages in the amount of $20,000 against EacH defendant jointly and seperately; exemplary damages in the amount of $20,000 against EacH defendant jointly and seperately; prospective damages in the amount of $20,000 against EacH defendant jointly and _(SEE attaCHMENt)_

I declare under penalty of perjury that the foregoing is true and correct.

Date _March 7, 2011_          Signature of Plaintiff X _____

(revised 9/17/03)

3

<u>Additional Defendants:</u>

1.
2. (2.) Defendant B. Hedrick is the associate
3. warden at SVSP, 31625 Highway 101, Soledad
4. Calif 93960, being sued in her individual and
5. official capacity for catification of policies
6. which violated plaintiff's civil and
7. constitutional rights.

8. (3.) Defendant W. Muniz is the facility
9. captain at SVSP, 31625 Highway 101, Soledad,
10. Calif 93960, being sued in his individual and
11. official capacity for the catification of
12. policies which violated plaintiff's civil and
13. constitutional rights.

14. (4.) Defendant S. Salazar is a correctional
15. Lieutenant at SVSP, 31625 Highway 101, Soledad
16. Calif 93960, being sued in his individual and
17. official capacity for catification of the
18. policies which violated plaintiff's civil
19. and constitutional rights.

20. (5.) Defendant E. Manchula is a correctional
21. Sergeant at SVSP, 31625 Highway 101, Soledad
22. Calif 93960, being sued in his individual and
23. official capacity for catification of policies
24. which violated plaintiff's civil and
25. constitutional rights.

26. (6.) Defendant B. Powell is a correctional
27. officer at SVSP, 31625 Highway 101, Soledad
28. Calif 93960, being sued in his individual

page 3(A) attachment

1.          'Additional Defendants'

2.   And official capacity for the violation of

3.   Plaintiff's civil and constitutional rights

4.   being challenged by this action.

5.   (7.)  Defendant A. Malchula is a

6.   Correctional officer at SVSP, 31625 Highway

7.   161, Soledad, Calif 93560, being sued in his

8.   individual and official capacity for the

9.   violation of Plaintiff's civil and

10.  constitutional rights being challenged by

11.  this action.

12.  (8.)  Defendant J. Sanudo is a Correctional

13.  officer at SVSP, 31625 Highway 161, Soledad,

14.  Calif 93560, being sued in his individual and

15.  official capacity for the violation of

16.  Plaintiff's civil and constitutional rights

17.  being challenged by this action.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

                    Page 3 (A) Attachment

1. __Statement of Claim__

2. Confined in SVSP administrative

3. segregation (Ad-Seg) housing unit which is

4. designed for prisoners who are EOP and

5. have disciplinary charges pending.

6. (3.) In Ad-Seg, Defendant's Solis,

7. Hedrick, and Muniz ratify and implement

8. a policy which authorize and permit

9. Defendant's Salazar, P. Mauchula,

10. Powell, A. Mauchula, and Sanudo to carry

11. on a practice and tradition of green

12. wall prison guard gang activity which

13. includes fostering a code of silence

14. specifically to conceal violations of

15. California Penal Code §§ 2650, 2651 and

16. 2652 imposed against Plaintiff, and

17. various other EOP inmates in Ad-Seg.

18. (4.) The green wall prison guard gang at

19. SVSP was initially exposed by the

20. Office of Inspector General (OIG) which

21. identified green wall prison guard gang

22. activity as excessive force against

23. inmates, vandalizing of property,

24. retaliation, intimidation, and fostering a

25. code of silence which operates to

26. conceal wrong doings and violations of

27. CDCR policy. Plaintiff ask the court

28. //

PAGE 3 (A) Attachment

1. <u>STATEMENT OF CLAIM</u>
2. to take Judicial notice to Exhibit A
3. Herein regarding svsp infamous green
4. wall prison guard gang which still exists,
5. and the CDC&'s policy against code
6. of silence.
7. (5.) In may 2010, Defendant R. Maulhula
8. confronted plaintiff regarding Exhibitio-
9. nism, and made clear that the next
10. time plaintiff was charged with indecent
11. exposure, plaintiff would "FEEL the
12. green wall." At this time, plaintiff did
13. not know that the green wall was a
14. prison guard gang, for prior to this
15. plaintiff had heard Defendant Powell
16. boast of "green wall" several times.
17. (6.) on The early morning of June 11, 2010,
18. plaintiff was charged with indecent
19. exposure against an EOP psychologist who
20. reported the exposure directly to
21. Defendant R. Maulhula. About thirty
22. minutes later Defendant Powell came
23. to plaintiff's cell door and stated
24. "sergeant Maulhula said he already
25. told you next time you expose yourself
26. your getting fucked up so you got a ass
27. kicking comming."
28. "

PAGE 3 (b) ATTACHMENT

1.
## Statement of Claim
2. (7.)  Defendant Powell reminder of the
3. threat previously made by Defendant
4. R. Mauchula caused plaintiff distress,
5. fear and suicidal tread, and so when
6. psychiatric technician (PT) K. Munn
7. made noon time medication delivery
8. plaintiff reported being suicidal in need
9. of crisis care as a direct result of
10. threat of physical harm made by
11. Defendant's R.Mauchula and Powell.
12. (B.)  Defendant Powell was providing
13. security escort for PT. K. Munn and in
14. response to plaintiff's suicidal report
15. declared that "We'll take care of it,"
16. and returned moments later with
17. Defendant R. Mauchula ordering that
18. plaintiff submit to handcuffing.
19. (9.)  Plaintiff repeatedly advised of
20. not wanting to have Defendants' "Kick"
21. his "ass" and therefore was scared to
22. submit to handcuffing however, Defendant
23. R. Mauchula responded " I told you
24. this would happen next time you played
25. with your dick so lets go or we're
26. comming in there."
27. (D.)  As plaintiff stood paralized by fear
28. ))

Page 3 (C) attachment

1. <u>STATEMENT OF CLAIM</u>
2. THE CELL DOOR CAME OPEN and DEFENDANT
3. POWELL CHARGED IN WITH A 4-5 FOOT PLASTIC
4. SHIELD, IN FRONT OF him, and RAMMED THE
5. SHIELD AGAINST PLAINTIFF'S BODY AND UPPER
6. TORSO, immediately KNOCKING THE WIND
7. FROM PLAINTIFF'S "5" "8" 140 POUND BODY
8. SENDING PLAINTIFF FALLING TO THE CELL FLOOR.
9. (11.) THE OVER SIX FOOT, 240 POUND DEFENDANT
10. POWELL THEN SLAMMED THE SHIELD DOWN ONTO
11. PLAINTIFF'S FALLEN BODY, FOLLOWED BY his OWN
12. BODY, and SECURED PLAINTIFF IN handCUFFS
13. WHILE ANOTHER OFFICER PLACED handCUFFS
14. ON PLAINTIFF'S ANKLES.
15. (12.) DEFENDANT R. MAUCHULA THEN BEGAN
16. SPEAKING TO his BROTHER, DEFENDANT A.
17. MAUCHULA, IN SPANISH AS PLAINTIFF LAY IN
18. PRONE POSITION COMPLETELY handCUFFED
19. WITH DEFENDANT POWELL STRADLING ON
20. PLAINTIFF'S UPPER BACK MAKING IT hard FOR
21. PLAINTIFF TO BREATH BECAUSE OF THE WEIGHT.
22. (13.) DEFENDANT R. MAUCHULA THEN PULLED
23. DOWN THE BACK OF PLAINTIFF'S UNDERWEAR
24. SHORTS and DISCHARGED O.C. PEPPER
25. SPRAY TO PLAINTIFF'S ANUS, TESTICLES, and
26. FACE WHILE DEFENDANT'S R. MAUCHULA, A.
27. MAUCHULA, and SANUDO THEN BEGAN
28. //

PAGE 3 (d) ATTACHMENT

## STATEMENT OF CLAIM

1. Kicking plaintiff repeatedly in the legs,
2. lower back, and buttox while defendant
3. Powell hit plaintiff with a closed fist in
4. the back of the head about five times
5. while saying "stupid nigger," "stupid
6. nigger." As defendant R. Mauchula was
7. kicking plaintiff, defendant was yelling
8. "fuckin pervert" over and over, and after
9. about 3-4 minutes of being punched and
10. kicked defendant R. Mauchula told his
11. brother A. Mauchula to "leave" because
12. "you shouldn't be here."
13. (14.) Both Mauchula defendant's then
14. exited the cell and were replaced by
15. officer's J. Spaulding, R. Chavez, and Reyes,
16. defendant Powell then pushed plaintiff's
17. face into the cell floor seconds before
18. removing himself from plaintiff's back,
19. causing plaintiff's lower lip to cut into
20. his teeth.
21. (15.) Plaintiff was then escorted to a
22. holding cage for evaluation of injuries and
23. defendant R. Mauchula instructed the
24. medical examinator to only record
25. injuries where o.c. pepper spray was
26. imposed. See exhibit (B) herein.
27. (16) defendant Saliazar was the incident
28. ))

page 3 (E) Attachment

## Statement of Claim

1. Commander who authorized and
2. instructed Defendants' cell extraction
3. of plaintiff. Defendant Salazar also
4. instructed Defendant R. Mauchula
5. to keep record of plaintiff's injuries
6. "to a minimum" and to not allow
7. plaintiff decontamination process in
8. order to reduce effects of the O.C.
9. pepper spray, and despite plaintiff's
10. repeated request for shower all
11. Defendants' refused based on
12. Defendant Salazar's orders.
13. (17.)   Defendant Salazar then used
14. Defendant's Solis, Hedrick, and Muniz
15. deficient policy being challenged by this
16. lawsuit, to falsify, and orchestrate the
17. falsification of crime incident reports'
18. to purport that plaintiff attempted to
19. attack Defendant Powell by charging at
20. Defendant with clinched fists, and
21. what injuries which were recorded on
22. Exhibit G herein, were the result of an
23. "accidental discharge of O.C. pepper spray."
24. SEE Exhibit L herein.
25. (18.)  From the date of the incident giving
26. rise to this action untill about August 17,
27. 2010, plaintiff was kept in crisis care on
28. 11

Page 3 (F) Attachment

## Statement of Claim

1. Suicide watch where mental health
2. status was upgraded from EOP to
3. Department of Mental Health (DMH).
4. (19.) During plaintiff's stay in crisis care
5. plaintiff's suffered burning skin, eyes, and
6. lungs, swollen eyes, painful and bruised
7. legs and torso, swollen cut lip, pained
8. back head and extensive migraine
9. headaches. Plaintiff also suffer mental,
10. emotional, and psychological trama as a
11. direct result of defendants', and each
12. of them, green wall prison guard gang
13. activity which was intended to terrorize.
14. (20.) Defendant's R. Mauchula and Powell
15. also placed plaintiff's television and all
16. other personal property belonging to plaintiff
17. in the trash after vandalizing such in
18. accordance with the green wall prison
19. guard gang code.
20. (21.) On August 23, 2010, when plaintiff
21. filed an inmate grievance related to the
22. events which occurred on June 11, 2010,
23. defendant Solis and defendant Muniz
24. violated well established CDCR policy by
25. assigning plaintiff's grievance directly to
26. defendant Salazar who was a party to the
27. matter being appealed, and under the

Page 3/5) attachment

## STATEMENT OF CLAIM

1. direct authority of defendant's Solis,
2. and Muniz Defendant Salazar conducted
3. counterfeit investigations pursued to
4. intentionally concealed Defendant's Solis,
5. Hedrick, and Muniz deficient policy of
6. authorizing green wall prison guard gang
7. activity against EOP inmates, including
8. plaintiff, in Ad-Seg. SEE Exhibit B HEREIN.
9. (22.) additionally, various other EOP
10. EOP Ad-Seg inmates have made written
11. complaints related specifically to being
12. subjected to excessive force imposed by
13. Defendant's R. Maulchula and Powell, and
14. Defendant's Solis, Hedrick, and Muniz
15. respond by transfer of the EOP inmate to
16. another prison so green wall prison guard
17. gang activity may continue impose excessive
18. force on plaintiff and other EOP Ad-Seg
19. inmates.
20.

21.    V. PRAYER FOR RELIEF CONTINUE

22. Separately, special damages in the amount
23. of $20,000 against EACH Defendant Jointly
24. and Separately, a Declaration that the
25. acts and omissions described herein
26. violated plaintiff's rights under the laws
27. of the State of California, the United

## PRAYER FOR RELIEF

1. STATES, and THE U.S. Constitution.
2. DECLATORY and InJunctive relief to
3. include appointment of a SPELLAL
4. MASTER to, investigate GREEN WALL PRISON
5. gard gang ACTIVITY imposed against EOP
6. inmates at SVSP. Grant PLAINTIFF'S
7. demand For Jury trial, and all other
8. relief this court DEEMS Just and
9. Proper,
10.
11.        VERIFICATION
12.    I do hereby declare that I have read
13. the Foregoing complaint Above and the
14. matters contained therein are true and
15. Correct under the Penalty of Purjury under
16. the laws of THE STATE OF California this 7TH
17. day OF March 2011, at Soledad, California.
18.
19.
20.        X _____
21.        RaHEAN PARRISH-DECLARANT
22.        PLAINTIFF / In pro se
23.
24.
25.
26.
27.

PAGE 3(i) ATTACHMENT

# Exhibit 1

*February 04, San Jose Mercury*

★★ A5

# Report: Prison guards had ganglike group

### By Don Thompson
#### ASSOCIATED PRESS

Guards at a California state prison formed their own ganglike organization, inventing hand signals and codes to telegraph their membership to inmates and other officers, state investigators concluded in a confidential report this month.

The Office of Inspector General found that a group of correctional officers at Salinas Valley State Prison near Soledad formed an alliance in 1999 that they called the "Green Wall," after the color of their uniforms.

Numerous incidents involving the group took place over the next two years, including the vandalizing of prison property with markings of "GW" and "7/23," which stood for the seventh (G) and 23rd (W) letters of the alphabet.

The Green Wall logo was taped to a control room window, a pair of dice, an upside down horseshoe with the numbers 7 and 23, and the satanic symbol, "666."

Members developed a hand signal — fingers folded into the shape of a W — to represent their organization to inmates and other employees, a whistle-blower testified to a joint state Senate committee hearing last week.

The prison's own internal investigators smuggled into the prison a green-handled knife engraved with "7/23" as a promotion gift for a sergeant, according to the report obtained by the Associated Press.

The report is sharply critical of Warden Anthony LaMarque, who took command in March 2000 and remains the warden there.

LaMarque had a special relationship with several members of the prison's internal affairs unit, the report found. He ignored reports that they might be involved in the Green Wall, and refused to transfer them during an investigation of allegations that they used excessive force against inmates and engaged in other misconduct, according to the report.

LaMarque was evasive when he was questioned about the Green Wall, and falsely said the Monterey County district attorney was investigating the group, the report said. It said he admitted knowing about the organization, but didn't try to find out what it was or who belonged.

The warden "wouldn't be able to comment because it's pending litigation right now," said prison spokesman Lt. Eloy Medina.

The Jan. 5 report was sent to the California Department of Corrections for "appropriate action," but department spokesman Bob Martinez said he couldn't comment because the report is supposed to be confidential.

Former internal affairs officer Donald J. Vodicka, a hulking man with a shaved head, was so frightened after he blew the whistle on the Green Wall that he wore a bulletproof vest and repeatedly burst into tears while testifying before the joint Senate hearing last week.

Vodicka sued the state and corrections officials in September for allegedly violating his whistle-blower rights by retaliating against him with a demotion, defaming him, and inflicting emotional distress. He is on a medical disability leave.

He alleged that members of the Green Wall employed a code of silence to hide activities including roughing up inmates after several guards were injured on Thanksgiving Day 1998. The organization grew out of that event, with green-attired members throwing parties featuring green beer on the seventh and 23rd days of the month.

The inspector general was unable to verify claims that members of the Green Wall set up inmates for assaults, vandalized cars of fellow employees who were not members, or intimidated other staff members.

Department spokesman Martinez said new Youth and Adult Correctional Agency Secretary Roderick Hickman, in testimony to the Senate committees, "made it very, very clear, this is something he's pledged to deal with, to confront in a relentless way, and to get rid of."

State of California                                                                Youth and Adult Correctional Agency.

# Memorandum

Date   :   February 17, 2004

To     :   All California Department of Corrections Employees

Subject:   ZERO TOLERANCE REGARDING THE "CODE OF SILENCE"

The California Department of Corrections (CDC) is only as strong as the values held by each of its employees, sworn and non-sworn. How we conduct ourselves inside our institutions and in the Central Office is a reflection of those values:

The "Code of Silence" operates to conceal wrongdoing. One employee, operating alone, can foster a Code of Silence. The Code of Silence also arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those employees who report wrongdoing. Fostering the Code of Silence includes the failure to act when there is an ethical and professional obligation to do so.

Every time a correctional employee decides not to report wrongdoing, he or she harms our Department and each one of us by violating the public's trust. As members of law enforcement, all Correctional Officers must remain beyond reproach. The public's trust in this Department is also violated by retaliating against, ostracizing, or in anyway undermining those employees who report wrongdoing and/or cooperate during investigations. There is no excuse for fostering a Code of Silence.

Your hard fought efforts to protect the public deserve recognition. Recently, however, the public's trust has been undermined by the operation of a Code of Silence within the CDC. To correct this problem we are taking steps to ensure the Department exemplifies integrity and instills pride. Part of this effort is the immediate implementation of a zero tolerance policy concerning the Code of Silence. We will not tolerate any form of silence as it pertains to misconduct, unethical, or illegal behavior. We also will not tolerate any form of reprisal against employees who report misconduct or unethical behavior, including their stigmatization or isolation.

Each employee is responsible for reporting conduct that violates Department policy. Each supervisor and manager is responsible for creating an environment conducive to these goals. Supervisors are responsible for acquiring information and immediately conveying it to managers. Managers are responsible for taking all appropriate steps upon receipt of such information, including initiating investigations and promptly disciplining all employees who violate departmental policy.

Any employee, regardless of rank, sworn or non-sworn, who fails to report violations of policy or who acts in a manner that fosters the Code of Silence, shall be subject to discipline up to and including termination.

RICHARD RIMMER
Director (A)
California Department of Corrections

RODERICK Q. HICKMAN
Agency Secretary
Youth and Adult Correctional Agency

# EXHIBIT  B

**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| SVSP | D – 2 | INJURY / UNUSUAL OCCURRENCE — USE OF FORCE | | PRE AD/SEG ADMISSION | 6/11/2010 |

| THIS SECTION FOR INMATE ONLY | NAME LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| | Parrish | | F 15901 | D2 126 | |

| THIS SECTION FOR STAFF ONLY | NAME LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|

| THIS SECTION FOR VISITOR ONLY | NAME / LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| D2 126 | 6/11/2010 1310 | Powell  C WAVE2 |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL *(circle)* | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| 1305 | 1315 | POUGM KNOWEL | LITTER / WHEELCHAIR / AMBULATORY / ON SITE | 29 | B | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"Fuck them"

| INJURIES FOUND? | YES / NO | |
|---|---|---|
| Abrasion/Scratch | 1 | |
| Active Bleeding | 2 | |
| Broken Bone | 3 | |
| Bruise/Discolored Area | 4 | |
| Burn | 5 | |
| Dislocation | 6 | |
| Dried Blood | 7 | |
| Fresh Tattoo | 8 | |
| Cut/Laceration/Slash | 9 | |
| O.C. Spray Area | 10 | |
| Pain | 11 | |
| Protrusion | 12 | |
| Puncture | 13 | |
| Reddened Area | 14 | |
| Skin Flap | 15 | |
| Swollen Area | 16 | |
| Other | 17 | |
| | 18 | |
| | 19 | |

O injury

O.C. SPRAY EXPOSURE? YES / NO

DECONTAMINATED? YES / NO

Self-decontamination instructions given? YES / NO

Refused decontamination? YES / NO

Q 15 min. checks  1350 1345

Staff issued exposure packet? YES / NO

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| 1315 Denise | |

TIME/DISPOSITION

RTC
Holding cell  1318

| REPORT COMPLETED BY/TITLE | (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|---|
| KEVIN MUNNR | | | SUN MON |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)    DISTRIBUTION:    ORIGINAL - Custody    CANARY - Inmate/Employee    PINK - Health and Safety / RTW Coordinator (only work related injury)

# SALINAS VALLEY STATE PRISON
## HOLDING CELL LOG

DATE: 6-11-10   FACILITY: D   HOLDING CELL #: 2

INMATE: Parrish   CDC NUMBER: F-15901   CELL: 126L

PLACEMENT ORDERED BY: Sgt Machuca
Print Name                          Signature

REASON FOR PLACEMENT: Emergency Cell Extraction

STAFF PLACING INMATE IN HOLDING CELL: C/o Powell
                                       Print Name              Signature
                                       C/o Sanudo
                                       Print Name              Signature

HOLDING CELL SEARCHED BY: C/o Powell
                          Print Name                Signature

RESULTS OF SEARCH: Negative

JUMPSUIT ISSUED   YES ☐   NO ☒

TIME PLACED IN HOLDING CELL: 1315

The inmate's welfare will be checked every 15-MINUTES. The inmate will be offered access to water and toilet facilities at reasonable intervals not to exceed one hour.

| TIME CHECKED | PRINT STAFF NAME | SIGNATURE | COMMENTS |
|---|---|---|---|
| 1. 1330 | J. Spaulding | | |
| 2. 1345 | J. Spaulding | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

STAFF RELEASING INMATE FROM HOLDING CELL
Print Name: J. Spaulding   Signature
Print Name: J. Streeper   Signature

TIME RELEASED FROM HOLDING CELL: 1350   TOTAL TIME IN CELL: 35 min

MEDICAL EXAM   YES ☒   NO ☐   LVT   Print Name: MUNN, K   Signature

COMMENTS ON INMATE'S BEHAVIOR/DISPOSITION:

SUPERVISOR'S SIGNATURE UPON RELEASE OF INMATE:
Print Name: R. MACHUCA Jr.   Signature   TITLE

**MANAGER/AOD APPROVAL** IF FOUR (4) HOUR TIME LIMIT IS EXCEEDED:

Print Name                Signature                TITLE
REASON FOR EXCEEDING TIME LIMIT:

# EXHIBIT C

# CRIME / INCIDENT REPORT
## PART A - COVER SHEET

CDCR 837-A (REV. 10/06) | Page 1 of 7

| | | DV-1.5.4 |
|---|---|---|
| INCIDENT LOG NUMBER | INCIDENT DATE | INCIDENT TIME |
| SVSP-FD2-10-06-0394 | 06/11/2010 | 13:07 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | PROGRAM | AD/SEG YARD | USE OF FORCE: |
|---|---|---|---|---|---|---|---|
| SVSP | FD2 - FD2-180 | ☐ I ☐ II ☐ RC<br>☐ III ☑ IV | COMPLEX II<br>FACILITY D | ASU BUILDING D-2 | ASU | N/A | Yes |

| SPECIFIC CRIME / INCIDENT | ☑ CCR ☐ PC ☐ N/A | NUMBER / SUBSECTION |
|---|---|---|
| Obstructing a Peace Officer - Resulting in the Use of Physical Force - Cell Extraction | 3005-a Obstructing a Peace Officer | -- |

| D.A. REFERRAL ELIGIBLE | CRISIS RESPONSE TEAM ACTIVATED | MUTUAL AID | PIO/AA NOTIFIED |
|---|---|---|---|
| ☐ Yes ☑ No | ☐ Yes ☑ No | ☐ Yes ☑ No | ☑ Yes ☐ No |

## RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☑ N/A | ☑ N/A<br><br><br>Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☑ N/A | ☑ N/A | ☐ N/A<br>1. PHYSICAL FORCE -<br>#Warning: 0 #Effect: 0 #Chemical: 0 |

| ESCAPES |
|---|
| ☑ N/A |

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☑ N/A | ☑ N/A |

**EXTRACTION:** 1. EMERGENCY EXTRACTION
☐ N/A

### BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)

On June 6, 2010 at approximately 1307 hours inmate Parrish F-15901, D2-126U covered the windows to his cell door and stated he was suicidal, necessitating staff to perform an emergency cell extraction and utilizing physical force to remove Parrish from his cell.

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID# | BADGE # |
|---|---|---|---|
| G. SALAZAR | CORRECTIONAL LIEUTENANT | | |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE<br>6/11/2010 |
| NAME OF WARDEN / AOD (PRINT / SIGN) | TITLE | | DATE |
| W. MUNIZ | FACILITY D CAPTAIN | | 4\15\10 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| SVSP | FD2 - FD2-180 | 06/11/2010 | 13:07 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT   ☐ SUPPLEMENTAL INFORMATION   ☐ AMENDED INFORMATION   ☐ CLOSURE REPORT

SYNOPSIS: On June 6, 2010 at approximately 1230 hours Officer B. Powell advised D1&2 Administrative Segregation (Ad-Seg) Sergeant R. Machuca that inmate Parrish F-15901, solely housed in D2-126, had his cell windows covered from the inside except for a small section of lower right window of the cell door. Powell stated he could see Parrish through the uncovered section of the window. Machuca instructed Powell to monitor Parrish and to keep him informed of any changes. At approximately 1240 hours Psychiatric Technician K. Munn entered Machuca's office and informed him that Parrish stated to him that he was feeling suicidal and wanted to kill himself, and was refusing to exit the cell for a CDCR 7219 Medical report of Injury or Unusual Occurrence. Machuca responded to building D2 and instructed Powell to get a shield. Machuca and Powell entered D2, C-section and approached cell D2-126. Machuca could not see into the cell because Parrish had all sections of the windows covered. Machuca ordered Parrish to remove the window covers and turn on the cell lights. Parrish stated "I'm feeling suicidal, I'm gonna kill myself. I already swallowed some metal" Machuca again ordered Parrish to remove the window covers and turn on the cell light. Parrish ignored Machuca's orders and stated "I'm suicidal". Machuca called Parrish with no response. Machuca feared Parrish would follow through with his threat to kill himself and called Officers Chavez and Spaulding to cell D2-126. Machuca opened the food port while Powell placed the shield over the open food port. Machuca shined his flashlight into the cell. Parrish had a sheet hanging from the wall where the bunks are connected to the wall across to the other wall covering both bunks. Parrish was on the other side of the sheets, there was no visual on Parrish. Machuca called for Parrish, who did not respond. Machuca felt if he waited any longer due to no visual or response from Parrish, he would cause harm to himself. Machuca instructed Officer Chavez to get a set of leg restraints and assigned Officer Chavez as Leg Restraint Officer for an Emergency Medical Cell Extraction. Machuca assigned Officer Powell as the Shield Officer, Officer Sanudo as the Handcuff Officer, and Officer Spaulding as the Baton Officer. Machuca ordered Officer Obodozie to open the cell door. Powell entered the cell with the shield up and the rest of the team followed. As the team entered the cell Parrish jumped off the bunk and ran towards the Officers hitting the shield with his left shoulder and both hands. Powell forced Parrish to the ground with the shield. At approximately 1307 hours the D2 audible alarm was activated. Parrish was on his stomach in the prone position with the shield covering the middle of his back to his head. Parrish began to violently thrust his body side to side, kicking his feet up and down and side to side, and attempting to push off the ground in an attempt to break free. Machuca ordered Parrish to stop resisting. During the struggle a burst of O.C. accidentally discharged from one of the Extraction Team Member's holster into the cell. The Extraction Team subdue Parrish by applying the handcuffs and leg restraints. Parrish was assisted to his feet and escorted out of the cell and placed into D2 rotunda holding cell #2, where Psychiatric Technician K. Munn completed a CDCR 7219 Medical Report on Parrish noting no injuries. Parrish was escorted to the Correctional Treatment Center via CTF Fire Department for further medical and psychological evaluation. An X-ray on Parrish revealed he did swallow some kind of metal (one bolt and two nuts). Parrish was placed on contraband watch at the Facility C BPH.

SUSPECT(S): Inmate Parrish F-15901, D2-126

VICTIMS(S): N/A

DECONTAMINATION: There was an accidental discharge of O.C., but decontamination was not necessary.

USE OF FORCE: Officer Powell used the shield to stop Parrish from advancing towards the Extraction Team. Officer Chavez gained control of Parrish's ankles and applied leg restraints. Officer Spaulding utilized both his hands to grasp Parrish's right forearm and placed Parrish's forearm behind his back. Officer Sanudo grabbed Parrish's left wrist and placed handcuffs on Parrish. There was an accidental discharge of O.C. Pepper Spray during the extraction. It was not determined who had the accidental discharge. Reports note a sent of O.C. in the cell and on the CDCR 7219 on inmate Parrish. Parrish was not sprayed directly and the exposure did not require decontamination procedures.

VIDEO TAPED INTERVIEW: N/A

ESCORTS: Officer Sanudo and Officer Powell escorted Parish to the D2 rotunda holding cell #2.

☑ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE: | ID# | BADGE # |
|---|---|---|---|
| G. SALAZAR | CORRECTIONAL LIEUTENANT | | |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE 6/11/2010 |
| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |

| CDCR 837-A1 (REV. 10/06) | | | Page 3 of 7 | SVSP-FD2-10-06-0394 |
|---|---|---|---|---|
| INSTITUTION | FACILITY | | INCIDENT DATE | INCIDENT TIME |
| SVSP | FD2 - FD2-180 | | 06/11/2010 | 13:07 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT    ☐ SUPPLEMENTAL INFORMATION    ☐ AMENDED INFORMATION    ☐ CLOSURE REPORT

CRIME SCENE / EVIDENCE: N/A

MEDICAL / MENTAL HEALTH EVALUATION AND TREATMENT: Psychiatric Technician K. Munn conducted a 7219 Medical Evaluation/Examination on inmate Parrish noting no injuries. Inmate Parrish is a participant in the Mental Health Delivery System at the EOP level of care.

CONCLUSION: Inmate Parrish will receive a CDCR-115 Serious Rules Violation Report for violation of CCR 3005(a) for the specific act of "Obstructing a Peace Officer/Resulting In The Use of Physical Force", a division D(7) offense. This case will not be referred to the Monterey County District Attorneys Office for possible prosecution.

NOTIFICATIONS: All appropriate administrative staff have been notified. You will be apprised of any further developments via supplemental reports.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE: | ID# | BADGE # |
|---|---|---|---|
| G. SALAZAR | CORRECTIONAL LIEUTENANT | | |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE 6/11/2010 |
| NAME OF WARDEN / AOD (PRINT/ SIGN) | | TITLE | DATE |

# CRIME / INCIDENT REPORT
## PART B1 - INMATE
CDCR 837-B1 (REV. 10/06)

| INSTIUTTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| SVSP | FD2 - FD2-180 | SVSP-FD2-10-06-0394 |

INMATE (ENTIRE SHEET)

| NAME:  LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| PARRISH | K. | NMI | F-15901 | M | BLA | | |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY COC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | RELEASE Date Type | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| SUSPECT | | | | | | | | | D2-126U |

| CURRENT INMATE LEVEL | ☐ N/A | ☐ CCCMS | ☑ EOP | ☐ DMH | COMMITMENT OFFENSE | | COUNTY OF COMMITMENT |
|---|---|---|---|---|---|---|---|
| IV | ☐ MHCB | ☐ DDP | ☐ DPP | | | | |

☑ N/A     DESCRIPTION OF INJURIES, LOCATIONS AND CAUSE

| ☑ N/A | ☑ TREATED AND RELEASED | ☐ HOSPITALIZED | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|---|
| ☐ DECEASED DATE | | ☐ REFUSED TREATMENT | ☑ N/A |

| Reason For Death: | Is There ASCA Seious Injur | |
|---|---|---|
| | ● No   ○ Yes | |

# CRIME / INCIDENT REPORT
## PART B2 - STAFF
CDCR 837-B2 (REV. 10/06)

Page 5 of 7

| INSTITUTION | FACILITY | | INCIDENT LOG NUMBER | |
|---|---|---|---|---|
| SVSP | FD2 - FD2-180 | | SVSP-FD2-10-06-0394 | |

### STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| SALAZAR | G. | | R. | CORRECTIONAL LIEUTENANT | | M | HIS | S/S/H |
| PARTICIPANT | BADGE # | ID # | | | POST ASSIGN # | | POSITION | |
| INCIDENT COMMANDER | | | | | | | ASU LIEUTENANT | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ REFUSED TREATMENT ☐ DECEASED DATE | ☐ TREATED AND RELEASED ☐ HOSPITALIZED | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury   ◉ No ◯ Yes | | | |

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| MACHUCA, JR. | R. | | NMI | CORRECTIONAL SERGEANT | | M | HIS | F/S |
| PARTICIPANT | BADGE # | ID # | | | POST ASSIGN # | | POSITION | |
| PRIMARY | | | | | | | FAC D 1&2 ASU SGT. | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ REFUSED TREATMENT ☐ DECEASED DATE | ☐ TREATED AND RELEASED ☐ HOSPITALIZED | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury   ◉ No ◯ Yes | | | |

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| CHAVEZ | R. | | NMI | CORRECTIONAL OFFICER | | M | HIS | S/M |
| PARTICIPANT | BADGE # | ID # | | | POST ASSIGN # | | POSITION | |
| PRIMARY | | | | | | | FAC D1 FLOOR #1 | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ REFUSED TREATMENT ☐ DECEASED DATE | ☐ TREATED AND RELEASED ☐ HOSPITALIZED | USED FORCE ☑ Yes ☐ No TYPE OF FORCE: PHYSICAL FORCE | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury   ◉ No ◯ Yes | | | |

DV-1.5.4

**PART B2 - STAFF**

CDCR 837-B2 (REV. 10/06)

Page 6 of 7

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| SVSP | FD2 - FD2-180 | SVSP-FD2-10-06-0394 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|---|
| OBODOZIE | | L. | | NMI | CORRECTIONAL OFFICER | | M | BLA | S/M |
| PARTICIPANT | BADGE # | | ID # | | | POST ASSIGN # | | POSITION | |
| WITNESS | | | | | | | | D2 CONTROL BOOTH OFFICER | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|
| | ☐ REFUSED TREATMENT  ☐ HOSPITALIZED | ☐ Yes  ☑ No | ☐ Yes  ☑ No |
| Reason For Death | ☐ DECEASED DATE | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury  ⊙ No  ○ Yes | | |

| NAME: LAST | | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|---|
| POWELL | | B. | | NMI | CORRECTIONAL OFFICER | | M | WHI | S/M |
| PARTICIPANT | BADGE # | | ID # | | | POST ASSIGN # | | POSITION | |
| PRIMARY | | | | | | | | FAC D2 FLOOR #2 | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|
| | ☐ REFUSED TREATMENT  ☐ HOSPITALIZED | ☑ Yes  ☐ No | ☑ Yes  ☐ No |
| Reason For Death | ☐ DECEASED DATE | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury  ⊙ No  ○ Yes | PHYSICAL FORCE | |

| NAME: LAST | | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|---|
| SANUDO | | J. | | NMI | CORRECTIONAL OFFICER | | M | HIS | T/W |
| PARTICIPANT | BADGE # | | ID # | | | POST ASSIGN # | | POSITION | |
| PRIMARY | | | | | | | | FAC D1 FLOOR #2 | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|
| | ☐ REFUSED TREATMENT  ☐ HOSPITALIZED | ☑ Yes  ☐ No | ☐ Yes  ☑ No |
| Reason For Death | ☐ DECEASED DATE | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury  ⊙ No  ○ Yes | PHYSICAL FORCE | |

DV-1.5.4

**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

Page 7 of 7

| INSTITUTION | FACILITY | | INCIDENT LOG NUMBER | |
|---|---|---|---|---|
| SVSP | FD2 - FD2-180 | | SVSP-FD2-10-06-0394 | |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| SPAULDING | J. | NMI | CORRECTIONAL OFFICER | M | WHI | M/T |
| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | | POSITION | |
| PRIMARY | | | | | D1&2 PROPERTY OFFICER | |

☑ N/A  DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A  NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ REFUSED TREATMENT ☐ DECEASED DATE | ☐ TREATED AND RELEASED ☐ HOSPITALIZED | USED FORCE ☑ Yes ☐ No TYPE OF FORCE: PHYSICAL FORCE | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|---|
| Reason For Death | | | | |

Is There ASCA Serious Injury  ⦿ No  ◯ Yes

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| MUNN | K | NMI | PSYCHIATRIC TECHNICIAN | M | WHI | S/M |
| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | | POSITION | |
| OBSERVER, MED | N/A | | N/A | | FAC D PSYCH TECH | |

☑ N/A  DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A  NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ REFUSED TREATMENT ☐ DECEASED DATE | ☐ TREATED AND RELEASED ☐ HOSPITALIZED | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|---|
| Reason For Death | | | | |

Is There ASCA Serious Injury  ⦿ No  ◯ Yes



# CRIME / INCIDENT REPORT
## PART C - STAFF REPORT

CDCR 837-C (REV. 10/06)

SVSP-FD2-10-06-0394

| NAME: LAST | | FIRST | | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|---|---|
| MACHUCA JR | | R. | | NMI | 6/11/2010 | 13:07 |

| POST # | POSITION | YEARS OF SERVICE | | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|---|
| | FAC. D1&2 AD.SEG. SGT | 8 YR. | 11 MO. | 6/11/2010 | D2 CEL 126 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| F/S | 06:00-14:00 | Obstructing a Peace Officer - Resulting in the Use of Physical Force - Cell Extraction | 3005-a Obstructing a Peace Officer |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES |
|---|---|---|
| RESPONDER | (S) LT G. SALAZAR<br>(S) C/O R. CHAVEZ<br>(S) C/O J. SPAULDING<br>(S) C/O J. SANUDO<br>(S) C/O L. OBODOZIE<br>(S) C/O B. POWELL<br>(S) PT K. MUNN | (S) PARRISH(F15901, D2-126U) |

| FORCE OBSERVED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | CHEMICAL AGENTS USED |
|---|---|---|---|---|---|
| NONE | ☑ N/A<br><br>FORCE:<br>☐ EXPANDABLE BATON<br>☐ PHYSICAL FORCE<br>☐ X10 | WEAPON<br>☐ MINI 14<br>☐ .38 CAL<br>☐ 9MM<br>☐ SHOTGUN | WARNING EFFECT: | LAUNCHER:<br>☐ 37MM<br>☐ L8<br>☐ 40MM<br>☐ 40 MM MULTI<br>☐ HFWRS | EFFECT#: | CHEMICAL/ TYPE:<br>☐ OC<br>☐ CN<br>☐ CS<br>☐ OTHER |

| EVIDENCE COLLECTED BY | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ Yes<br>☑ No | ☑ N/A | ☑ N/A | ☐ Yes<br>☑ No | ☐ Yes<br>☑ No |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes<br>☑ No | ☑ N/A | ☑ N/A | ☑ N/A<br>DESC: | ☐ Yes<br>☑ No |

NARRATIVE:

On Friday June 11, 2010 at approximately 1230 hours while performing my duties as D1&2 Administrative Segregation (Ad.-Seg.) Sergeant, Officer Powell entered my office and advised me that Inmate Parrish(F15901) who is solely housed in D2 Cell 126, had his cell windows all covered from the inside, except for a small section of the lower right window of the cell door. Officer Powell stated that he could still see Inmate Parrish through the uncovered section of the window. I instructed Powell to monitor the situation and keep me informed of any changes. At approximately 1240 hours Phsch. Tech.(PT) Munn entered my office and advised me that Inmate Parrish stated to him that he was feeling suicidal and wanted to kill himself, but was refusing to exit the cell for a CDCR 7219 Medical Report of Injury or Unusual Occurrence. I responded to D2 and instructed Powell to get a shield. Officer Powell and I entered D2 C-section and approached cell 126. Inmate Parrish had all sections of the windows covered, there was no way to see inside the cell. I ordered Inmate Parrish to uncover his cell windows and turn on his cell lights. Parrish refused, and said "I'm feeling suicidal, I'm gonna kill myself. I already swallowed some metal". I ordered Inmate Parrish to uncover his cell windows and turn on his cell lights. Parrish ignored my orders and said, "I'm suicidal".

☑ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID# | DATE |
|---|---|---|---|---|---|
| | Correctional Sergeant | | | | 6/11/2010 |

| NAME AND TITLE OF REVIEWER (PRINT/ SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| G. SALAZAR<br>CORRECTIONAL LIEUTENANT | 6/11/2010 | ☑ Yes ☐ No | ☐ Yes ☑ No | 6/11/2010 |

| CRIME / INCIDENT REPORT | INCIDENT LOG NUMBER |
|---|---|
| **PARTC1 - SUPPLEMENT** | |
| CDCR 837-C1 (REV. 10/06) | SVSP-FD2-10-06-0394 |

| NAME  LAST | FIRST | MI |
|---|---|---|
| MACHUCA JR | R. | NMI |

TYPE OF INFORMATION

☑ CONTINUATION OF REPORT  ☐ CLARIFICATION OF REPORT  ☐ ADDITIONAL INFORMATION

I called to Inmate Parrish; there was no response. For fear of Inmate Parrish following through with his threats to kill himself, I called up to the top tier and instructed Officers Chavez and Spaulding to come down to cell 126. I unlocked and opened the food/cuff port. As I opened the port, Officer Powell immediately placed the shield over the open food/cuff port. I shined my flashlight into the cell through the shield, Inmate Parrish had a sheet hanging from the wall where the bunks are connected to the wall, across to the other wall covering both bunks and most of the cell. Parrish was on the other side of the sheets, there was no visual contact with Inmate Parrish. I called for Parrish, there was no response. I felt that if I waited any longer, due to no response or any type of visual contact with Parrish, he would cause harm to himself. I instructed Officer Chavez to get a set of leg restraints and assigned him as Leg Restraint Officer for an Emergency Medical Cell Extraction, I assigned Powell as Shield Officer, Sanudo as Handcuff Officer, and Spaulding as Baton Officer. I maintained my light on towards the cell door, I instructed Officer Obodozie to open the cell door. Officer Powell entered the cell with the shield up and the rest of the team followed, as I stopped at the cell door opening. I provided light from my flashlight into the cell, Inmate Parrish was on the lower bunk, Inmate Parrish jumped off the bunk and ran towards the officers hitting the shield with his left shoulder and both hands, the Shield Officer forced Inmate Parrish to the ground with the shield. At approximately 1307 hours the D2 audible Alarm sounded. Inmate Parrish was on his stomach in the prone position, with only from the middle of his back to his head under the shield. Parrish began to violently thrust his body side to side, was kicking his feet up and down and side to side, and attempting to push off the ground in an attempt to break free. I ordered Inmate Parrish to stop resisting. During the struggle a burst of O.C. accidentally discharged from one of the Extraction Team Members holster, into the cell. Responding staff arrived. The Extraction Team Members were able to subdue Inmate Parrish by applying the handcuffs and leg restraints. I instructed Officers Spaulding and Chavez out of the cell. I assigned Officers Powell and Sanudo to escort Parrish out of the cell and into the D2 Rotunda holding cell. I asked Inmate Parrish if he was going to cooperate in being assisted to his feet and escorted for a medical evaluation. Parrish agreed. I instructed Powell and Sanudo to assist Parrish to his feet and escort him to the rotunda. I followed behind the escort without any further incident. Parrish was placed into D2 rotunda holding cell #2, where PT Munn completed a CDCR 7219 Medical Report of Injury or Unusual Occurrence, noting no injuries. I completed a Staff Referral/Informational Chrono for Mental Health on Parrish. Parrish was escorted to the Correctional Treatment Center via CTF Fire Department. For further medical and psychological evaluation. An X-ray of Parrish shows that he did swallow some kind of metal (a bolt and two nuts). Parrish was placed on contraband watch.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | Staff ID # | DATE |
|---|---|---|---|---|
| | CORRECTIONAL SERGEANT | | | 6/11/2010 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| G. SALAZAR | 6/11/2010 | ☑ Yes ☐ No | ☐ Yes ☑ No | 6/11/2010 |
| Correctional Lieutenant | | | | |

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS AND REHABILITATION

## CRIME / INCIDENT REPORT
## PART C - STAFF REPORT

| | | | | INCIDENT LOG NUMBER |
|---|---|---|---|---|
| CDCR 837-C(REV. 10/06) | | Page _1_ of _2_ | | SVSP-FD2-10-06-0394 |

| NAME: LAST CHAVEZ | FIRST R. | MI NMJ | INCIDENT DATE 6-11-10 | INCIDENT TIME 1307 |
|---|---|---|---|---|

| POST # | POSITION D1 FLOOR OFFICER 1 | YEARS OF SERVICE 8 YR. 11 MO. | DATE OF REPORT 6-11-10 | LOCATION OF INCIDENT D-2 CELL 126 |
|---|---|---|---|---|

| RDO'S S/M | DUTY HOURS 0600/1400 | DESCRIPTION OF CRIME / INCIDENT OBSTRUCTING A PEACE OFFICER RESULTING IN THE USE OF PHYSICAL FORCE - CELL EXTRACTION | CCR SECTION/RULE 3005a |
|---|---|---|---|

YOUR ROLE   WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)   /INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)

| YOUR ROLE | WITNESSES | INMATES |
|---|---|---|
| ☒ PRIMARY | S) R. MACHUCA JR SGT | S) PARRISH F-15901 |
| ☐ RESPONDER | S) J. SPAULDING 4/0 | |
| ☐ WITNESS | S) B. POWELL M/o | |
| ☐ VICTIM | S) J. SANUDO C/o | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

### FORCE USED BY YOU - TYPE OF WEAPON/SHOTS FIRED/FORCE

| FORCE USED BY YOU | WEAPON: | WARNING EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL TYPE |
|---|---|---|---|---|---|
| ☐ WEAPON | ☐ N/A | | | | |
| ☒ PHYSICAL | | ☐ MINI 14 | ☐ 37MM | | ☒ N/A |
| ☐ CHEMICAL | FORCE: | ☐ .38 CAL · | ☐ L8 | | ☐ OC |
| ☐ NONE | ☐ EXPANDABLE BATON ☐ 9MM | | ☐ 40 MM | | ☐ CN |
| FORCE OBSERVED BY YOU | ☒ PHYSICAL FORCE | ☐ SHOTGUN | ☐ 40 MM MULTI | | ☐ CS |
| | ☐ X10 | | ☐ HFWRS | | ☐ OTHER |

| FORCE OBSERVED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DESCRIPTION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ WEAPON | | | | |
| ☒ PHYSICAL | ☒ N/A | ☒ N/A | | |
| ☐ CHEMICAL | | | ☐ YES | ☐ YES |
| ☐ NONE | | | ☒ NO | ☒ NO |

| EVIDENCE COLLECTED BY ☐ YES ☒ NO | DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL/CLINIC) ☒ N/A | FLUID EXPOSURE ☒ N/A | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| REPORTING STAFF INJURED ☐ YES ☒ NO | | | ☐ BODILY ☐ UNKNOWN ☐ OTHER | ☐ YES ☒ NO |

### NARRATIVE:

ON FRIDAY JUNE 11TH 2010 AT APPROXIMATELY 1307 HOURS WHILE PERFORMING MY DUTIES AS D-1 FLOOR OFFICER 1, I WAS ASSISTING OFFICER J. SPAULDING CONDUCT THE D-2 SHOWER PROGRAM IN UPPER "C" SECTION. OFFICER SPAULDING AND I WERE SUMMONED BY SERGEANT R. MACHUCA JR, TO THE FRONT OF CELL 126 WHICH IS SOLEY OCCUPIED BY INMATE PARRISH F-15901. INMATE PARRISH HAD ALL OF HIS CELL WINDOWS COVERED AND WAS NOT RESPONDING TO SERGEANT MACHUCA'S ORDERS. SERGEANT MACHUCA INSTRUCTED OFFICER B. POWELL TO PLACE THE EXTRACTION SHEILD IN FRONT OF THE FOOD/CUFF PORT AS HE OPENED IT. SERGEANT MACHUCA ATTEMPTED TO MAKE A VISUAL CONTACT OF PARRISH USING HIS FLASHLIGHT AND LOOKING THROUGH THE FOOD/CUFF PORT BUT COULD NOT SEE HIM, SERGEANT MACHUCA CALLED TO INMATE PARRISH AGAIN. PARRISH DID NOT RESPOND. SERGEANT MACHUCA INSTRUCTED ME TO GET A SET OF LEG RESTRAINTS AND INFORMED ME I WOULD BE THE LEG RESTRAINT OFFICER FOR AN EMERGENCY CELL EXTRACTION. UPON MY RETURN SERGEANT MACHUCA INSTRUCTED THE CONTROL BOOTH OFFICER TO OPEN CELL 126. AS WE ENTERED THE CELL INMATE PARRISH JUMPED OFF THE LOWER BUNK AND RAN TOWARDS THE SHEILD OFFICER, OFFICER POWELL USED THE SHEILD TO

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER. | BADGE # | ID # | DATE 6-11-10 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) R. MACHUCA Jr. Sgt | DATE RECEIVED 06-11-10 | APPROVED ☐✗ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐✗ NO | DATE 06-11-10 |
|---|---|---|---|---|

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1 - SUPPLEMENT**
CDCR 837-C1 (29/07)

PAGE ___2___ OF __2__

INCIDENT LOG NUMBER

SVSP-FD2-10-06-0394

| NAME LAST | | FIRST | MI |
|---|---|---|---|
| CHAVEZ | R | | NMI |

TYPE OF INFORMATION

X   CONTINUATION OF REPORT          CLARIFICATION OF REPORT          ADDITIONAL INFORMATION

NARRATIVE:

FORCE PARRISH TO THE GROUND, OFFICERS J. SANUDO AND J. SPAULDING WERE ATTEMPTING TO GAIN CONTROL OF INMATE PARRISH'S ARMS AS OFFICER POWELL ATTEMPTED TO MAINTAIN CONTROL OF HIS HEAD AND SHOULDER AREA, PARRISH CONTINUED TO THRASH HIS UPPER BODY AND KICK HIS LEGS FROM SIDE TO SIDE, AT THAT TIME I NOTICED THE SMELL OF O.C. PEPPER SPRAY BUT DID NOT UTILIZE MY CANISTER. OFFICERS SANUDO AND SPAULDING GAINED CONTROL OF INMATE PARRISH'S ARMS AND APPLIED HAND CUFFS, I GAINED CONTROL OF PARRISH'S LEGS JUST ABOVE THE ANKLE AND APPLIED THE LEG RESTRAINTS AT THAT POINT SERGEANT MACHUCA INSTRUCTED OFFICER SPAULDING AND I TO EXIT THE CELL

**CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C1**

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | BADGE # | | DATE 6-11-10 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) MACHUCA J. Sgt. | DATE RECEIVED 06-11-10 | APPROVED  X YES   NO | CLARIFICATION NEEDED  YES   X NO | DATE 06-11-10 |

Distribution:          Original: Incident Package          Copy: Reporting Employee          Copy: Reviewing Supervisor

# CRIME / INCIDENT REPORT
## PART C - STAFF REPORT
CDCR 837-C(REV. 10/06)

Page 1 of 2

**INCIDENT LOG NUMBER:** SVSP-FD2-10-06-0394

| NAME:LAST Powell | FIRST B. | MI C. | INCIDENT DATE 6/11/10 | INCIDENT TIME 1307 hours |
|---|---|---|---|---|

| POST # | POSITION D-2 Floor #2 | YEARS OF SERVICE 5 YR. 4 MO. | DATE OF REPORT 6/11/10 | LOCATION OF INCIDENT D-2 C-Section Cell 126 |
|---|---|---|---|---|

| RDO'S 5\m | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Obstructing a Peace Officer Resulting in the use of Physical Force - Cell Extraction | CCR SECTION/RULE 3005 - a |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☒ PRIMARY | (S) Sgt. R. Machuca Jr | (S) Parrish F-15901 |
| ☐ RESPONDER | (S) 4/o J. Sanuda | |
| ☐ WITNESS | (S) 4/o J. Spaulding | |
| ☐ VICTIM | (S) 4/o R. Chavez | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON/SHOTS FIRED/FORCE | | | | |
|---|---|---|---|---|---|
| ☐ WEAPON | ☐ N/A | WEAPON: | WARNING EFFECT: | LAUNCHER: | EFFECT #: | CHEMICAL TYPE |
| ☒ PHYSICAL | | ☐ MINI 14 | | ☐ 37MM | | ☒ N/A |
| ☐ CHEMICAL | FORCE: | ☐ .38 CAL | | ☐ L8 | | ☐ OC |
| ☐ NONE | ☐ EXPANDABLE BATON  ☐ 9MM | | | ☐ 40 MM | | ☐ CN |
| FORCE OBSERVED BY YOU | ☒ PHYSICAL FORCE  ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| | ☐ X10 | | | ☐ HFWRS | | ☐ OTHER |

| ☐ WEAPON | EVIDENCE DESCRIPTION | EVIDENCE DESCRIPTION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ PHYSICAL | ☒ N/A | ☒ N/A | | |
| ☐ CHEMICAL | | | ☐ YES | ☐ YES |
| ☐ NONE | | | ☒ NO | ☒ NO |
| EVIDENCE COLLECTED BY | | | | |

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☒ N/A | |
| REPORTING STAFF INJURED | | | ☐ BODILY | ☐ YES |
| ☐ YES | | | ☐ UNKNOWN | ☒ NO |
| ☒ NO | | | ☐ OTHER | |

**NARRATIVE:**

On Friday June 11, 2010 at approximately 1220 hours while performing my duties as D-2 Floor Officer #2, I was performing a security check in D2 C-Section when I noticed Inmate Parrish (F15901), the sole occupant of cell 126, had covered his cell windows. As I approached the cell there was a small section of the lower right window on the cell door that I was still able to see through. I asked Parrish what the problem was and he just called to his side in the lower bunk. I immediately notified Sergeant R. Machuca Jr. of Parrish's actions and he told me to monitor the situation and keep him informed. At approximately 1240 hours Sgt. R. Machuca instructed me to get the shield and follow him to D-2 C-Section cell 126. I could no longer see into cell 126 at all. Sgt. R. Machuca ordered Parrish to uncover his cell windows and turn on his cell lights. Parrish stated "I'm feeling suicidal, I'm gonna kill myself. I already swallowed some metal." Sgt. R. Machuca again ordered Parrish to uncover his cell windows and turn on his cell lights. Parrish stated "I'm suicidal." Sgt. R. Machuca called out Parrish's name and there was no response. Sgt. R. Machuca unlocked and opened the food/cuff port and I immediately

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE # | ID # | DATE 6/11/10 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) R. MACHUCA Jr. Sgt. | DATE RECEIVED 06-11-10 | APPROVED ☒ YES  ☐ NO | CLARIFICATION NEEDED ☐ YES  ☒ NO | DATE 06-11-10 |
|---|---|---|---|---|

| | Page $\underline{2}$ of $\underline{2}$ | INCIDENT LOG NUMBER |
|---|---|---|
| | | SUSP- FD2- 10- 06- 0394 |

| NAME LAST | FIRST | MI |
|---|---|---|
| Powell | B. | C. |

TYPE OF INFORMATION

☑ CONTINUATION OF REPORT     ☐ CLARIFICATION OF REPORT     ☐ ADDITIONAL INFORMATION

placed the shield over the open food/cuff port. Sgt. R. Machura shined his flashlight through the shield into the cell in an attempt to see Parrish. Sgt. R. Machura called for Parrish but there was no response. Sgt. R. Machura assigned me as the shield officer for an emergency cell extraction. Sgt. R. Machura instructed the control booth officer to open cell 126. When the cell door opened I saw a state sheet hanging in the cell from the right side wall to the left side wall completely covering the bunks entirely. I entered the cell first with the shield and saw Parrish jump up from what appeared to be the lower bunk and lunge towards me with clinched fists. Parrish's left side of his face and left shoulder hit the shield as I forced Parrish to the ground. Parrish landed on the cell floor in the prone position. I maintained control of the shield on Parrish's head and neck while Correctional Officers J. Sanudo and J. Spaulding attempted to place handcuffs on Parrish. Parrish began to flail his arms, body and legs violently up and down from side to side. I smelled O.C. pepper spray in the cell, at 1/a time did I discharge any O.C. from my MK-9. Correctional Officers Sanudo and Spaulding secured handcuffs on Parrish and I slid the shield out of the cell. After Correctional Officer R. Chavez secured leg irons on Parrish Sgt. R. Machura instructed Sanudo and myself to assist Parrish to his feet and escort him to the D-2 temporary holding cells. I grabbed Parrish's left bicep with my right hand and with the assistance of Sanudo we assisted Parrish to his feet. Sanudo and I escorted Parrish to the D-2 temporary holding cell where I performed a search of holding cell #2 with negative results prior to securing Parrish in it.

| CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | | BADGE # | DATE 6/11/10 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 06-11-10 | APPROVED ☑ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☒ No | DATE 06-11-10 |
|---|---|---|---|---|

Machura, Sgt.

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS AND REHABILITATION

## CRIME / INCIDENT REPORT
### PART C - STAFF REPORT
CDCR 837-C(REV. 10/06)

Page 1 of 2

| INCIDENT LOG NUMBER |
|---|
| SVSP-FD2-10-06-0394 |

| NAME:LAST Spaulding | FIRST J | MI | INCIDENT DATE 06/11/2010 | INCIDENT TIME 1307 |
|---|---|---|---|---|
| | | NMI | | |

| POST # | POSITION D1/2 Property | YEARS OF SERVICE 4 YR. 4 MO. | DATE OF REPORT 06/11/2010 | LOCATION OF INCIDENT D2-126 |
|---|---|---|---|---|

| RDO'S M/T | DUTY HOURS 0600/1400 | DESCRIPTION OF CRIME / INCIDENT Obstructing a Peace officer - Resulting in the use of physical force - Cell Extraction | | CCR SECTION/RULE 3005(a) |
|---|---|---|---|---|

**YOUR ROLE** — WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) — INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)

| | YOUR ROLE | WITNESSES | INMATES |
|---|---|---|---|
| ☒ | PRIMARY | (S) Sgt. R. Machuca Jr. | (S) Parrish F-15901, D2-126L |
| ☐ | RESPONDER | (S) C/o B. Powell | |
| ☐ | WITNESS | | |
| ☐ | VICTIM | | |
| ☐ | CAMERA | | |
| ☐ | SCRIBE | | |

**FORCE USED**

| FORCE USED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON/SHOTS FIRED/FORCE | | | | | |
|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ N/A | WEAPON: | WARNING EFFECT: | LAUNCHER: | EFFECT #: | CHEMICAL TYPE |
| ☒ PHYSICAL | | ☐ MINI 14 _____ _____ | ☐ 37MM _____ | | ☒ N/A | |
| ☐ CHEMICAL | FORCE: | ☐ .38 CAL _____ _____ | ☐ L8 _____ | | ☐ OC _____ | |
| ☐ NONE | ☐ EXPANDABLE BATON ☐ 9MM _____ _____ | | ☐ 40 MM _____ | | ☐ CN _____ | |
| **FORCE OBSERVED BY YOU** | ☒ PHYSICAL FORCE ☐ SHOTGUN _____ _____ | | ☐ 40 MM MULTI _____ | | ☐ CS _____ | |
| | ☐ X10 | | ☐ HFWRS _____ | | ☐ OTHER _____ | |

| ☐ WEAPON | EVIDENCE DESCRIPTION | EVIDENCE DESCRIPTION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ PHYSICAL | ☒ N/A | ☒ N/A | | |
| ☐ CHEMICAL | | | ☐ YES | ☐ YES |
| ☐ NONE | | | ☒ NO | ☒ NO |
| EVIDENCE COLLECTED BY | | | | |

| ☐ YES ☒ NO | DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL/CLINIC) ☒ N/A | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| **REPORTING STAFF INJURED** | | | ☐ BODILY ☒ N/A | ☐ YES |
| ☐ YES | | | ☐ UNKNOWN | ☒ NO |
| ☒ NO | | | ☐ OTHER _____ | |

**NARRATIVE:**

On Friday, June 11, 2010 at approximately 1307 hours while performing my duties as D1/D2 Property officer I was in D2 upper "C" section conducting shower program. Correctional Sergeant R. Machuca Jr. instructed me to come to Cell 126 which was solely occupied by Inmate Parrish (F-15901, D2-126L). Correctional Officer B. Powell had a shield placed over an open food port. The Cell windows were completely covered from the inside with papers. Machuca assigned me as baton officer for the Emergency Cell Extraction. Machuca ordered the cell door open. Parrish raised himself to his feet from behind a sheet draped over the top bunk that concealed the bottom bunk area and came towards the cell door opening. I utilized upper body strength to force my way into the cell behind Powell and used my forward momentum to help Powell force Parrish to the ground. I grasped Parrish's right forearm with both of my hands and placed his wrist behind his back into a position to be handcuffed. Parrish continued to struggle as he was placed into handcuffs. I noticed a smell of O.C. Pepper spray inside the cell, I did not utilize my MK-9 Pepper spray during this extraction. I maintained control of Parrish until Machuca instructed me to leave the cell. Parrish was escorted out of

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/o | BADGE # | ID # | DATE 06/11/2010 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) R. MACHUCA Jr Sgt. | DATE RECEIVED 06-11-10 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 06-11-10 |
|---|---|---|---|---|

Case 5:11-cv-01438-LHK   Document 1   Filed 03/18/11   Page 36 of 53

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1 - SUPPLEMENT**
CDCR 837-C1 (29/07)

INCIDENT LOG NUMBER
Susp-FD2-10-06-0344

| NAME LAST Spaulding | FIRST J | MI NMI |
|---|---|---|

TYPE OF INFORMATION

X CONTINUATION OF REPORT        CLARIFICATION OF REPORT        ADDITIONAL INFORMATION

NARRATIVE:
"C" Section to the holding cell in Building D2's rotunda. A Medical Evaluation was completed by Medical Staff and documented on a CDCR Form 7219.

**CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C1**

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # | | DATE 06/11/2010 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) R. MACHUCA Jr. Sgt. | DATE RECEIVED 06-11-10 | APPROVED X YES   NO | CLARIFICATION NEEDED YES   X NO | DATE 06-11-10 |

Distribution:        Original: Incident Package        Copy: Reporting Employee        Copy: Reviewing Supervisor        SVSP-133 (Rev. 2007)

# CRIME / INCIDENT REPORT
## PART C - STAFF REPORT
CDCR 837-C(REV. 10/06)

Page _1_ of _2_

INCIDENT LOG NUMBER: 5VSP.f02-10-06-0394

| NAME:LAST | SANUIDO | FIRST | | MI | INCIDENT DATE 0.11.2010 | INCIDENT TIME 1307 |
|---|---|---|---|---|---|---|

| POST# | POSITION Floor #2 | YEARS OF SERVICE 2 YR. 5 MO. | DATE OF REPORT 6.11.2010 | LOCATION OF INCIDENT D2 cell 126 |
|---|---|---|---|---|

| RDO'S IN | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Obstructing a Peace Officer Cell Extraction Resulting in Use of force | CCR SECTION/RULE 3005 (a) |
|---|---|---|---|

YOUR ROLE — WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)

- ☒ PRIMARY
- ☐ RESPONDER
- ☐ WITNESS
- ☐ VICTIM
- ☐ CAMERA
- ☐ SCRIBE

Sgt. R. Machuca
Ofc B. Powell
Ofc I. Spaulding

I/M Parrish F. 15901

| FORCE USED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON/SHOTS FIRED/FORCE |
|---|---|

- ☐ WEAPON
- ☒ PHYSICAL
- ☐ CHEMICAL
- ☐ NONE

FORCE OBSERVED BY YOU
- ☒ PHYSICAL FORCE
- ☐ X10

| | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT #: | CHEMICAL TYPE |
|---|---|---|---|---|---|---|
| ☐ N/A | ☐ MINI 14 | | | ☐ 37MM | | ☒ N/A |
| FORCE: | ☐ .38 CAL | | | ☐ L8 | | ☐ OC |
| ☐ EXPANDABLE BATON | ☐ 9MM | | | ☐ 40 MM | | ☐ CN |
| | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| | | | | ☐ HFWRS | | ☐ OTHER |

FORCE OBSERVED BY YOU
- ☐ WEAPON
- ☒ PHYSICAL
- ☐ CHEMICAL
- ☐ NONE

EVIDENCE COLLECTED BY

| EVIDENCE DESCRIPTION | EVIDENCE DESCRIPTION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ YES / ☒ NO | ☐ YES / ☒ NO |

| ☐ YES ☒ NO | DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL/CLINIC) ☒ N/A | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|

REPORTING STAFF INJURED
- ☐ YES
- ☒ NO

FLUID EXPOSURE ☒ N/A
- ☐ BODILY
- ☐ UNKNOWN
- ☐ OTHER

☐ YES ☒ NO

NARRATIVE:

On Friday, June 11, 2010, at approximately 1307 hrs. While performing my duties as D1 floor #2, I was informed by Officer B. Powell that Sergeant R. Machuca needed me for a possible cell extraction in D2 Building Cell 126 solely occupied by Inmate Parrish f. 15901. Upon arrival Sergeant Machuca opened Inmate's food/cuff port and Officer Powell placed the shield over the opened food/cuff port. Sergeant Machuca shined his flashlight into Cell through his shield to check on Inmate Parrish, there was no answer. Sergeant Machuca called for Inmate Parrish, there was no answer. Sergeant Machuca assigned me as handcuff officer for an emergency cell extraction. Sergeant Machuca maintained his light towards the cell door, and Instructor D2 Control Booth Officer to: open

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE # | ID # | DATE 6.11.10 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) R. MACHUCA Jr. Sgt. | DATE RECEIVED 06-11-10 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 06-11-10 |
|---|---|---|---|---|

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1 - SUPPLEMENT**
CDCR 837-C1 (29/07)

PAGE __2__ OF __2__

INCIDENT LOG NUMBER
5 VSP·FD2·10·06·039

NAME LAST   SANUDO

FIRST

MI

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT          CLARIFICATION OF REPORT          ADDITIONAL INFORMATION

NARRATIVE:

Cell Door. Officer Powell entered the cell with
the shield, followed by Officer U. Spaulding
and I. Inmate Parrish was forced to
the Ground by the shield Officer. Parrish
was faced down on floor and began violently
thrusting his body side to side, was kicking
his feet up and down and side to side,
and attempting to push off the ground. I
immediately grasped Parrish's left wrist
maintaining control of his left arm and
placing handcuffs on his left hand. Officer
Spaulding maintained control of Parrish's right
arm, I handcuffed his right hand. During the
struggle a burst of O.C. accidentally
discharged. At no time Did I discharged my
O.C. I maintained control of inmate Parrish
while Officer R. Chavez placed leg restraints
on Inmate Parrish. Sergeant J Machuca
assigned Officer Powell, HNB I as escort
Officers. Sergeant Machuca instructed Officer
Powell and I to assist Parrish to his feet
and escort him to the Rotunda on Holding
Cell #2, for a 7219 and a Medical evaluation.

CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | | DATE |
|---|---|---|---|---|
| | C/O | | | 6·11·10 |

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| R. MACHUCA Jr Sgt | 06-11-10 | ☒ YES   NO | YES   ☒ NO | 06-11-10 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## CRIME / INCIDENT REPORT

### PART C - STAFF REPORT

CDCR 837-C(REV. 10/06)

| | | Page 1 of 1 | INCIDENT LOG NUMBER |
|---|---|---|---|
| | | | SVSP-FD2-10-D6-0394 |

| NAME:LAST OBODOZIE | | FIRST L | MI E | INCIDENT DATE 06/11/10 | INCIDENT TIME 1307 Hours |
|---|---|---|---|---|---|

| POST # | POSITION D2 CONTROL | YEARS OF SERVICE 14 YR. 3 MO. | DATE OF REPORT 06/11/10 | LOCATION OF INCIDENT D2 CELL 126 |
|---|---|---|---|---|

| RDO'S SM | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT OBSTRUCTING A PEACE OFFICER RESULTING IN USE OF FORCE | CCR SECTION/RULE OBSTRUCTING A PEACE OFFICER |
|---|---|---|---|

**YOUR ROLE**

- ☐ PRIMARY
- ☐ RESPONDER
- ☒ WITNESS
- ☐ VICTIM
- ☐ CAMERA
- ☐ SCRIBE

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)

SGT. MACHUCA (S)
46 SPALDING (S)
46 CHAVEZ (S)
4/6 POWELL (S)
46 SANUDO (S)

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)

PARRISH, F15901 (S)

| FORCE USED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON/SHOTS FIRED/FORCE | | | | |
|---|---|---|---|---|---|
| ☐ WEAPON | ☒ N/A | WEAPON: | WARNING EFFECT: | LAUNCHER: | EFFECT #: | CHEMICAL TYPE |
| ☐ PHYSICAL | | ☐ MINI 14 | | ☐ .37MM | | ☐ N/A |
| ☐ CHEMICAL | FORCE: | ☐ .38 CAL | | ☐ L8 | | ☐ OC |
| ☒ NONE | ☐ EXPANDABLE BATON ☐ 9MM | | | ☐ 40 MM | | ☐ CN |
| FORCE OBSERVED BY YOU | ☐ PHYSICAL FORCE ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| | ☐ X10 | | | ☐ HFWRS | | ☐ OTHER |

**FORCE OBSERVED BY YOU**

- ☐ WEAPON
- ☒ PHYSICAL
- ☐ CHEMICAL
- ☐ NONE

| EVIDENCE DESCRIPTION | | EVIDENCE DESCRIPTION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☒ N/A | | ☒ N/A | | ☐ YES | ☐ YES |
| | | | | ☒ NO | ☒ NO |

EVIDENCE COLLECTED BY

| EVIDENCE COLLECTED BY ☐ YES ☒ NO | DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL/CLINIC) ☒ N/A | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| REPORTING STAFF INJURED ☐ YES ☒ NO | | | ☐ BODILY ☐ N/A | ☐ YES |
| | | | ☐ UNKNOWN | ☒ NO |
| | | | ☐ OTHER | |

**NARRATIVE:**

ON JUNE 11, 2010, AT APPROXIMATELY 1307 HOURS, WHILE PERFORMING MY DUTIES AS THE D2 CONTROL OFFICER, I OBSERVED SGT. R. MACHUCA, CORRECTIONAL OFFICERS CHAVEZ, SPALDING, POWELL, AND SANUDO APPROACH CELL 126 OCCUPIED BY INMATE PARRISH, F15901. INMATE PARRISH HAD COVERED HIS CELL WINDOWS. THE WERE UNSUCCESSFUL TRYING TO VISUALIZE THE POSITION OF THE INMATE INSIDE THE CELL. SGT. R. MACHUCA ORDERED ME TO OPEN THE CELL DOOR. OFFICERS CHAVEZ, SPALDING, POWELL, SANUDO, AND SGT. MACHUCA ENTERED CELL 126 WITH A PROTECTIVE SHIELD AND PLACE THE INMATE IN HANDCUFFS AND LEG RESTRAINTS. HE WAS ESCORTED OUT OF HIS CELL AND PLACED IN THE HOLDING CELL WHERE HE WAS EVALUATED BY MEDICAL STAFF.

---

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/o | BADGE # | ID # | DATE 06/11/10 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) R. MACHUCA Sr. Sgt | DATE RECEIVED 06-11-10 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 06-11-10 |
|---|---|---|---|---|

TATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CRIME / INCIDENT REPORT
'ARTC1 - SUPPLEMENT
:DCR 837-C1 (REV. 10/06)

| | | INCIDENT LOG NUMBER | 0394 Ld. |
|---|---|---|---|
| | Page __1__ of __1__ | SVSP-FDI-1D-06-D408 | |

| NAME LAST | FIRST | MI |
|---|---|---|
| OBO DOZIE | L___. ' | NMI |

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT      ☒ CLARIFICATION OF REPORT      ☒ ADDITIONAL INFORMATION

ON MY ORIGINAL 837-C DATED 06/11/2010, I WROTE, " SGT. MACHUCA ENTERED CELL 126." WHEN I OPENED THE CELL DOOR, OFFICER POWELL WAS IN FRONT WITH THE SHIELD, SGT. MACHUCA WAS THE LAST MAN. AS THE TEAM ENTERED THE CELL, SGT. MACHUCA STOPPED RIGHT AT THE CELL DOOR WITH A FLASHLIGHT ON.

CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| NATURE OF REPORTING STAFF | TITLE | | | BADGE # | DATE |
|---|---|---|---|---|---|
| | C/O | | | | 06/21/10 |
| ME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| MACHUCA J. Sgt. | | 06-23-10 | ☒ Yes ☐ No | ☐ Yes ☒ No | 06-23-10 |

| **PARTC2 - REVIEW NOTICE** CDCR 837-C2 (REV. 10/06) | Page 1 of 1 | INCIDENT LOG NUMBER SVSP-FD2-10-06-0394 | | |
|---|---|---|---|---|
| NAME  LAST OBODOZIE | FIRST L | | MI NMI | INCIDENT DATE: |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☑ PREPARE a CDCR 837-C1 Supplement report clarifying the issues listed below.

☐ PREPARE a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below.

☐ PREPARE a CDCR 837-A1 Supplement report clarifying the issues listed below.

☐ PREPARE a CDCR 837-A1 Supplement report to ammend the information regarding the issues listed below.

DUE BY:  06/23/2010          RETURN TO:  SGT. R. MACHUCA JR.

1. Clarify "Machuca entered cell 126" from your 837-C report, SVSP-FD2-10-06-0394?

☐ CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) R. MACHUCA JR. | TITLE CORRECTIONAL SERGEANT | SIGNATURE | DATE |
|---|---|---|---|

# EXHIBIT D

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:   **FEB 1 8 2011**

In re:   Kaheal Parrish, F15901
Salinas Valley State Prison
P.O. Box 1020
Soledad, CA 93960-1020

IAB Case No.: 1008483          Local Log No.: SVSP-10-02229

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner C. Hall, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that staff used excessive use of force during a cell extraction on June 6, 2010, by kicking, hitting, punching, slamming his head to the ground and using Oleoresin Capsicum spray on his face, eyes, anus and testicles. The appellant alleges he informed staff that he was suicidal and had swallowed metal and wanted to die in his cell; therefore, refused to comply with their orders to remove the paper from his cell window and turn on the lights. The appellant is requesting a public apology from the involved staff and for an investigation to be conducted. The appellant is also requesting that the person ordering the emergency cell extraction be reprimanded. He is also requesting to exhaust administrative remedies.

**II   SECOND LEVEL'S DECISION:** Upon review of the documentation, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the Second Level of Review (SLR). In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and will not be addressed with other staff, the general public or the inmate population nor will it be released to the appellant. In this case, the institution has reported that staff did not violate CDCR policy. Although the appellant has the right to submit an appeal as a staff complaint, the request for monetary compensation and/or administrative action regarding staff is beyond the scope of the appeals process; therefore, no relief is provided at the Director's Level of Review.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A. FINDINGS:** Upon review of the documentation, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff; and, an inquiry has been completed at the SLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and will not be addressed with other staff, the general public or the inmate population, and will not be released to the appellant. In this case, the institution has reported that staff did not violate CDCR policy. On January 12, 2011, this examiner reviewed the inquiry report and found that the information developed supported the findings reached by the institution. Although the appellant has the right to submit an appeal as a staff complaint, the request for monetary compensation and/or administrative action regarding staff is beyond the scope of the appeals process; therefore no relief is provided at the Director's Level of Review.

   **B. BASIS FOR THE DECISION:**
   California Penal Code Section: 832.5, 832.7, 832.8
   California Code of Regulations, Title 15, Section: 3000, 3001, 3004, 3005, 3084.1, 3084.5, 3268, 3270, 3300, 3310, 3350, 3380

   **C. ORDER:** No changes or modifications are required by the Institution.

KAHEAL PARRISH, F15901
CASE NO. 1008483
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

C. HALL, Appeals Examiner
Inmate Appeals Branch

D. FOSTON, Chief
Inmate Appeals Branch

cc:    Warden, SVSP
       Appeals Coordinator, SVSP

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
(DC 602 (12/87)

Location ___ Institution/Parole Region ___ Log No. ___ Category ___
SVSP   L   10-22231   7

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

*Misuse of force                         8/11/10 emergency*
*Cell extraction*

NAME: Kaheal Parrish    NUMBER: F15901    ASSIGNMENT: ___    UNIT/ROOM NUMBER: D.2-217

A. Describe Problem: On 6/11/2010 : Prison Guards (C/Os) Donse A Supposeiv Immediate cell extraction (Emergency Medical cell Extraction) on I/m Kaheal Parrish #F15901, who was at the time solely housed in D2-126, I/m covered his window and stratect he was suicidal and refuse to exit the cell.... This "602" is late because I/m Parrish has been on Crisis bed status and constrained watch since 6/11/2010 = 8/17/2010. He could not use pencil or pen while he was on this status, he was transfer to D.M.H CMF on 7-14-

If you need more space, attach one additional sheet.

B. Action Requested: (1) I/m Parrish would like A Public no dolaguformin C/os.
(2) A investigation done on this incident
(3) That the person or persons that Authorized the Emergency cell extraction tac to criminal. (4) exhaust administrative Remedies. ©

Inmate/Parolee Signature: KAParris    Date Submitted: 8/23/2010

*RECD AUG 24 2010*

C. INFORMAL LEVEL (Date Received: ___ )

Staff Response: ___

Staff Signature: ___    Date Returned to Inmate: ___

*INMATE APPEALS BRANCH*
*OCT 25 2010*
*RECEIVED*

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

___

Signature: ___    Date Submitted: ___

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

1008483

F15901

First Level     ☐ Granted     ☒ P Granted     ☐ Denied     ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

Staff Signature: _____          Title: _____          Date Completed: 10/2/10
Division Head Approved: _____                                    Returned
Signature: _____          Title: _____          Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____          Date Submitted: _____

Second Level     ☐ Granted     ☒ P Granted     ☐ Denied     ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned _____          Due Date: _____
☐ See Attached Letter

Signature: _____          Date Completed: 10/13/10
Warden/Superintendent Signature: _____          Date RETD OCT 1 3 2010

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.
I'M Parrish #F15901, 14 8 AMendments of the Constitutional Rights was violated under the state & federal Law (cruel and unusual Punishment) By used of "excessive force and Guard brutality, and to falsify documents. (See: SVSP-FD2-10-06-0394.) I'M Parrish is dissatisfied with the findings from the investigation on Appeal log number SVSP-L-10-2229.

Signature: _____          Date Submitted: 10.14.2010

For the Director's Review, submit all documents to: Director of Corrections
                                                    P.O. Box 942883
                                                    Sacramento, CA 94283-0001
                                                    Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted     ☐ P. Granted     ☒ Denied     ☐ Other _____
☒ See Attached Letter                                              FEB 1 8 2011
CDC 602 (12/87)                                                    Date: _____

Continue of Part A. Describe problem
Part 1.

The whole time YM was there he could not use any writing material because of his crisis status, also they didn't have any "602's available for YM Parrish needs. YM Parrish was not "Mentally competent" to write a 602 under his condition at the time, Thats the reason for this 602 being late on its 15 days time Restraint. So YM Parrish would Appreciate that this Appeal would be process through without any difficulty to pardon the time restraint.

This Appeal is done because YM Parrish 14th; Eighth Amendments of the Constitutional Rights was Violated under the state; federal law (cruel and unusual Punishment.) By used of "excessive force and guard brutality; used to Maliciously and sadistically cause harm the unnecessary and wanton inflictions of pain, by repeatedly hitting; punching, kicking, slamming YM Parrish head on the ground, and pepper spraying the YM face, eye, anus and testicle. while the YM was already restrain, face Down on the floor with 4 c/o's on top of the YM that was already handcuffed and leg restraints on.

(1)

continue of Part A. Describe problem.

Part 2.

on 6/11/2010

I/M Parrish told c/o B. Powell he was "suicidal and he swallow a piece of Metal." c/o Powell came back with A psychiatric Technician K. MUNN A Little While later during Medication pass. So I/M inform K. Munn that he was suicidal and he swallow a piece of metal. Then c/o Powell ask I/M to cuff up I/M STATED he was not Exiting the cell he wanted 2 die there. c/o Powell left again with K. MUNN to Inform the Sergeant Machuca the I/M intentions. A little while later Serq. Machuca came 2 the door of cell 126 and ordered I/M Parrish to remove the papers from the windows and turn on the cell lights. I/M P said No, I'M suicidal. I already swallowed a piece of Metal. Machuca again ordered I/M to remove the window covers and turn on the cell light. I/M stated No. Machuca called I/M again and I/M stated what? Machuca opened the food poet and shined the Light into the cell on the I/M standing in the Middle of the cell Machuca said to the other c/o's fuck it we going in.

(2)

Continue of Part A

Part 4,

The c/o's fabricated documents that he wasn't responding to the serg. when he was the whole time and they said they didn't have a visual on the 'IM when they open the food port; when they did because 'IM Parrish was standing in the middle of the cell the whole time. No time was he on the bunk. They used the Emergency cell extraction Excuse so they would not have a call in or used the Camcorder and take pictures because they wanted to "assault" the 'IM like they did without anyone seeing to get away with it. because the serg. threaten the 'IM a few weeks earlier about a (I&I) and the 'IM received another (IEX) 115 that morning of this incident. thats why they assaulted the 'IM for retaliation.

Respectfully submitted,

K.J. P————   8/22/2010

(3)

Attachment E-3

State of California

# Memorandum

Date :    October 7, 2010

To    :    Kaheal Parrish, F-15901
           Facility D, Building 2, Cell 217L

Subject:    **STAFF COMPLAINT RESPONSE - APPEAL LOG # SVSP-L-10-02229**

**APPEAL:** Inmate Parrish F-15901, states on June 6, 2010 he informed Office B. Powell he was suicidal and had swallowed a piece of metal.   Parrish states Powell returned with Psychiatric Technician K. Munn during the medication pass and informed her he was suicidal and had swallowed a piece of metal.  Parrish states Powell ordered him to cuff-up, but Parrish states he would not exit the cell because he wanted to die there.  Parrish states Sergeant R. Machuca came to his door and ordered him to remove the papers from his windows and turn on the lights.  Parrish states he said "No, I want to die in my cell".  Parrish states Machuca again ordered him to remove the window coverings and turn on the cell light. Parrish states he again refused.  Parrish states Machuca opened the food port and shined his flashlight into the cell.   Parrish states he was standing in the middle of the cell, but staff reports state they could not see him.  Parrish states staff entered the cell and used excessive force by repeatedly hitting, punching, kicking, slamming his head on the ground, and pepper spraying his face, eye, anus and testicles while already restrained, face down on the floor. Parrish states four Officers were on top of him while he was on the floor in handcuffs and leg restraints.  Parrish states staff used the excuse of an Immediate Cell extraction so they would not have to video tape the extraction.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

☒  PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐  REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the ·
    conclusion of any Internal Affairs investigation.

**SUMMARY FOR APPEAL INQUIRY:** You were interviewed on September 22, 2010.   In your appeal you state Sergeant R. Machuca Jr. alone with other Officers used excessive force on you during an Immediate Cell Extraction.  The following witnesses were questioned: Sergeant R. Machuca Jr., Officer J. D. Spaulding, Officer J. A. Sanudo, Officer R. C. Chavez, and Officer B. C. Powell. The following information was reviewed as a result of your allegations of staff misconduct: Appeal Log Number SVSP-L-10-2229, submitted by Inmate Parrish F-15901, and Copy of Crime/Incident Report Log Number SVSP-FD2-10-06-0394.

## INTERVIEW/EFFECTIVE COMMUNICATION:

The appellant was interviewed on September 22, 2010, by Lt. Salazar.

**Inmate Parrish, F-15901**

**SVSP-L-10-02229**

**Page 2 of 2**

A review of the Test of Adult Basic Education (TABE) list reveals the appellant has a Reading Grade Point Level above 4.0 and has a no physical impairment that would limit effective communication. Therefore, during the interview, the appellant was asked to restate each part of his appeal in his own words. The appellant's answers and interactions with the interviewer convinced the interviewer that the appellant understood the issues of the appeal.

**FINDINGS FOR AN APPEAL INQUIRY:**

Your appeal is PARTIALLY GRANTED at the ☐ First level ☒ Second level:

☒ An inquiry into your allegation has been conducted.

☐ An investigation is being conducted by the Office of Internal Affairs

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. However, you have the right to be notified if after a review of your allegations, it is determined that staff violated CDCR policy. In this case:

☐ The (inquiry / investigation) is not yet complete

☒ The inquiry is complete. Staff did not violate CDCR policy.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

A. SOLIS
Chief Deputy Warden
Salinas Valley State Prison

STATE-OF-CALIFORNIA
.RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858 (Rev. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer] FOR ANY IMPROPER POLICE [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmates'/parolees'] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED |
|---|---|---|
| Kaheal Parrish | KA Po | 8/24/2010 |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER   DATE SIGNED |
| Kahial Parrish | KA P | F15901  8·24·10 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

STATE OF CALIFORNIA.
COUNTY OF MONTEREY

(C.C.P. SEC. 466 & 2015.5, 28 U.S.C. SEC. 1746)

I, __K. PACCiSH__ declare under penalty of perjury that: I am the __PlaintiFF__ in the above entitled action; I have read the foregoing documents and know the contents thereof and the same is true of my own knowledge, except as to matters stated therein upon information and belief and as to those matters I believe they are true.

Executed this __7TH__ day of __March__, 20 11, at Salinas Valley State Prison, Soledad, CA 93960-1050.

Signature: X _____
DECLARANT/PRISONER

-----------------------------------------------------------------------------------------------------------

PROOF OF SERVICE BY MAIL
(C.C.P. SEC. 1013 (a) & 2015.5, 28 U.S.C. SEC. 1746)

I __K. PACCiSH__, am a resident of California State Prison, in the County of Monterey, Sate of California; I am over the age of eighteen (18) years and am/am not a party of the above entitled action. My state prison address is: P.O. Box 1050, Soledad, CA 93960-1050.

On __March 7__, 20 11, I served the foregoing: __Civil Rights Complaint Pursuant to 42 U.S.L. # 1583__

(Set forth exact title of document(s) served)

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with postage thereof fully paid in the U.S. Mail, in a deposit box so provided at Salinas Valley State Prison, Soledad, CA 93960-1050. __U. S. District Court, Eastern District of Calif__
__2500 Tulare Str__
__Fresno, Lalif 93721__

(List parties served)

There is delivery service by U.S. Mail at the place so addressed and/or there is regular communication by mail between the place of mailing and the place so addressed.

__P.D. Box 1050, Soledad, Lalif 93560__

I declare under penalty of perjury that the foregoing is true and correct.

DATED: __March 7, 2011__    X _____
DECLARANT/PRISONER