Kaheal Parrish #F-05901
Salinas Valley State Prison
PO Box 1050
Soledad,California 93960
    In Pro se

1

2                                    **F I L E D**

3                                    JUN 2 2 2012

4                                    RICHARD W. WIEKING
                                     CLERK, U.S. DISTRICT COURT
                                     NORTHERN DISTRICT OF CALIFORNIA
                                     SAN JOSE

5              UNITED STATES DISTRICT COURT
6            NORTHERN DISTRICT OF CALIFORNIA

7   Kaheal Parrish,               Case No.C-11-1438-LHK-(PR)

8            Plaintiff,           Honorable Lucy H.Koh

9

10      v.                        PLAINTIFF'S OPPOSITION TO THE
                                  DEFENDANTS' MOTION AND MOTION
11                                FOR SUMMARY JUDGEMENT;MEMORANDUM
                                  OF POINTS AND AUTHORITIES AND
12   A.Solis,et al.,              DECLARATION OF KAHEAL PARRISH
            Defendants.           IN SUPPORT THEREOF
13

14

15

16      TO THE HONORABLE LUCY H.KOH, UNITED STATES DISTRICT JUDGE,

17   TO ALL PARTIES, AND TO THEIR ATTORNEY OF RECORD:

18      Pursuant to the Court's May 23,2011, Order and Rule 56 of

19   the Federal Rules of Civil Procedure,(Fed.R.Civ.Proc.,),

20   Plaintiff hereby oppose defendants' motion for summary judgement

21   and move that the Court deny defendants' motion in its entirety.

22      The Motion and request will be made on the ground that a

23   genuine issue of material fact of law exist making quite clear

24   that defendants' are not entitled to qualified immunity because

25   such an immunity only protects good-willed and competent prison

26   officials acting in good faith.

27      The Motion will be based on this Notice, Memorandum of

28   Points and Authorities, Declaration of Kaheal Parrish, on all

                             1.

the papers and records on file in this matter, and on all other
such evidence as the Court may consider.


Dated: May 28,2012



Kaheal Parrish-Plaintiff
In Pro se

2.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   INTRODUCTION

About December 5,2011, defendants' moved for summary judgement on the ground that they are entitled to qualified immunity however, even in light of the fact that Plaintiff has been denied not just the right to discovery but also the right to compel the same, Plaintiff contend that defendants' are surely not entitled to qualified immunity, as there are disputed facts and evidence to warrant denial of defendants' summary judgement motion in accordance with Matusita Electrical Industrial Co.,LTD., v. Zenith Radio Corp., 475 U.S. 574-587, 106 S.Ct.1348(1986); see also Hathway v. Coughlin, 841 F.2d 48,50(2nd Cir.1988); Smith v. Maschner, 899 F.2nd 940,949(10th Cir.1990)(Circumstantial evidence could create in issue of material fact barring summary judgement), Wilson v. City of Chicago, 707 F.Supp.379 881-82 (N.D.Ill 1989).

At the summary judgement stage, a Judge's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine issue for trial. Anderson v. Liberty Lobby,Inc., 477 U.S, 242 249, 106 S. Ct.2005, 91 L.Ed.2d 202(1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law.(see Anderson,477 U.S. at 248). Also Balint v. Carson City, 180 F.3d 1047,1054(9th Cir 1999)(En Banc).

Here, defendants move for summary judgement based on claim of qualified immunity, relying on evidence which is not only refuted by that introduced by Plaintiff, but also contradicted

//

3.

by itself. Accordingly, Defendants' may not be granted summary
judgement by means of such contradictory evidence as already set
forth by Kennedy v. Allied Mut.,Ins.Co., 952 F.2d 262, 266-67
(9th Cir.1991), for additional reasons as follows.

II.  THE BULK OF DEFENDANTS' CLAIM FOR SUMMARY JUDGEMENT RESTS
     ON QUALIFIED IMMUNITY WHICH  MUST BE DENIED AS A MATTER OF
     LAW AND IN THE INTEREST OF JUSTICE

     The ground for defendants' motion for summary judgement
rests on a claim of qualified immunity in defense to the issues
upon which complaint is made however, the defense of qualified
immunity protects "government officials from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known." Harlow v. Fitzgerld, 457
U.S. 800,818, 102 S.Ct. 2727,2738, 73 L.Ed.2d 396(1982). The rule
of qualified immunity provides ample to all but the plainly
incompetent of those who knowingly violate the law. Burns v.
Reed, 500 U.S. 478, 494-95, 111 S.Ct. 1934,1944, 114 L.Ed.2d 547
(1991)(quoting Malley v. Briggs, 475 U.S. 335,341, 106 S.Ct. 1092
89 L.Ed.2d(1985). Therefore, regardless of whether the
constitutional violation occurred, the officer(s) should prevail
if the right asserted by the Plaintiff was not 'clearly
established' or the officer could have reasonably belived that
his particular conduct was lawful. Romaro v. County, 931 F.2d
624,627(9th Cir.1991). Furthermore, [t]he entitlement is an
immunity from suit rather than a mere defense to liability.....
//

4.

it is effectively lost if a case is erroneously permitted to go to trial. Mitchell v. Forsyth, 474 U.S. 511,526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411(1985).

Here, defendants' have no grounds to make an argument on qualified immunity because Plaintiff's rights asserted within Plaintiff's verified complaint were clearly established law during the time the deprivations are claimed in this action.

A.   PLAINTIFF'S SUICIDAL TREND AND ATTEMPT

Defendants' take the position that Plaintiff's suicide trend and attempt on June 11,2010, caused them to 'genuinely fear for Plaintiff's life,* and that in response to such a genuine fear for Plaintiff's life, defendant's followed Salinas Valley State Prison(SVSP) 'Suicide Prevention and Use of Force Regulations;' (see defendants' motion for summary judgement) however, material fact in dispute exist because Defendant's R.Machuca and Powell created and set in motion the suicidal trend and attempt suffered by Plaintiff, thereby intimidating and threatening Plaintiff previously with physical harm should Plaintiff suffer another charge for indecent exposure.(see Plaintiff's Verified Complaint on file with the Court).

Defendant's R.Machuca and Powell both submitted evidence by form of declarations, declaring that they each "perceived Plaintiff was a threat to himself" as a direct result of Plaintiff's actions which consist of a. covering up cell windows and turning off lights inside cell quarters to prevent defendant's from seeing inside Plaintiff's cell; b. Plaintiff conveying to a psychiatric technician his desire to committ

//

5.

suicide which include Plaintiff's admission to Defendant Powell relative to metal swallowed by Plaintiff in effort to carry out the suicide attempt; and c. Plaintiff's refusal to respond to defendant's efforts at removing Plaintiff from his cell for medical/suicide evaluation, yet this purported belief asserted by Defendant's R.Machuca, Powell, and Sanudo are contradicted by the fact that defendant's, specifically Defendant Powell, initia-ted disciplinary action against Plaintiff for this very event, charging Plaintiff with a Rules Violation Report(RVR) alleging that the entire suicide attempt in itself "Obstructed a Peace Officer in Performance of Duties,"(see Declaration of Defendant Muniz at Exhibit E In support of defendants' motion for summary judgement).

Clearly established law referenced by the California Department of Corrections & Rehabilitation(CDCR) California Code of Regulations.,Title 15(CCR.Title 15) at section 3317 states in part that "An inmate shall be referred for a mental health evaluation prior to documenting misbehavior on a CDC Form 115, Rules Violation Report, in any case where the inmate is suspected of self mutilation or attempted suicide. If the mental health evaluation determines that it was an actual suicide attempt, a CDC Form 115 shall not be written and the behavior shall be documented on a CDC Form 128B,General Chrono, for inclusion in the inmate's central file," thus, defendants' cannot initiate and arrange for Plaintiff to be subjected to disciplinary action on misbehavior directly related to Plaintiff's suicide attempt within SVSP in a manner which clearly demonstrate that the

//

6.

suicide attempt in dispute was not a 'genuine suicide attempt' but argue in defense to this lawsuit that their conduct was justified because they genuinely feared for Plaintiff's safety and perhaps saved Plaintiff's life because if defendant's belief were indeed true, and defendant's truely believed that Plaintiff suicide attempt was genuine, then Plaintiff would have not been subjected to RVR disciplinary proceedings or found guilty of a CDCR violation at a prison disciplinary hearing on this matter.

This is a material fact in itself warranting the denial of defendants' motion for summary judgement, as summary judgement may not be granted by means of such contradictory evidence. see Kennedy v. Allied Mut.,Ins.Co., supra.

Additionally, it is well established CDCR law referenced at CCR.Title 15 Section 3315(a)(3)(W), that "Self mutilation or attempted suicide for the purpose of manipulation" is a serious Rules Violation requiring disciplinary sanction, Plaintiff was never charged for such a violation by defendant's, and while Plaintiff lay housed in Mental Health Crisis Bed(MHCB) unable to participate in the Mental Health Assessment because of suicide prevention housing status, neither defendant acted in good faith to clarify that Plaintiff's suicide attempt was not for purposes of manipulation, for to do so would have prevented Defendant Powell's RVR from subjecting Plaintiff to disciplinary sanctions for the charge of obstructing a peace officer while in the performance of duty, another contradiction which cannot be ignored so that defendants' may prevail on summary judgement.

//
//

B.   DEFENDANT R.MACHUCA AND POWELL'S FOLLOW THROUGH ON THREAT TO
     IMPOSE PHYSICAL HARM TO PLAINTIFF DURING EMERGENCY CELL
     EXTRACTION WHERE EXCESSIVE FORCE CAUSED THE DEPRIVATIONS
     UPON WHICH COMPLAINT IS MADE IN BREACH OF WELL ESTABLISHED
     RIGHTS KNOWN TO DEFENDANTS'

Defendant's Solis, Salazar, Machuca, Muniz, Powell, and
Sanudo have each submitted declarations in support of motion for
summary judgement declaring that Salinas Valley State Prison(SVSP
Operational Procedures(OP's) to include SVSP Use of Force and
suicide prevention policies were adhere to, that defendant's did
not threaten, retaliate against, strike, kick, nor use racial
slurs or epithets during Plaintiff's cell extraction, that
Defendant A.Machuca was not present at any time during the cell
extraction and most imporantly, no one denied Plaintiff medical
care following the cell extraction in dispute however, as pre
discussed by Kennedy v. Allied Mut.,Ins.Co.,supra, Defendants'
may not be granted summary judgement by means of contradictory
evidence as follows:

Defendant's allege that only defendant's Powell, and Sanudo
entered Plaintiff's cell for the extraction with the aide of
officer's Chavez and Spaulding while Plaintiff claim that
Defendant's R.Machuca, A.Machuca, Powell, and Sanudo were present
inside Plaintiff's cell, and after being forced to the ground and
handcuffed by defendant Powell's batterram shield which had
already knocked the wind from Plaintiff's timid body, defendant
Powell lay stradled on Plaintiff's upper back interrupting flow
of breath as Defendant R.Machuca pulled down the back of
Plaintiff's underwear to douse with O.C.Pepper spray.(see
//

8.

Statement of Claim in Plaintiff's Verified Complaint at paragraph
12-13). Followed by O.C.Pepper spray directly to Plaintiff's
face as defendant's A.Machuca, R.Machuca, and Sanudo persist to
kick Plaintiff's leggs, buttox, and lower back while defendant
Powell then took about five punches with a closed fist to
Plaintiff's head, all while yelling racial obscenities.

The California Department of Corrections & Rehabilitation
(CDCR) 837 Crime/Incident Report attached at Exhibit C to
Defendant Muniz declaration in support of Defendants' motion
for summary judgement purports that once subdued, Plaintiff began
to violently thrust his body side to side, kicking feet up and
down and side to side, and attempting to push off the ground in
an attempt to break free. This same report prepared by Defendant
Salazar also states that "there was an accidental discharge of
O.C.Pepper spray during the extraction. It was not determined
who had the accidental discharge. Reports note a sent of O.C.
in the cell and on the CDCR-7219 on Inmate Parrish. Parrish was
not sprayed directly and the exposure did not require
decontamination procedures," however, Plaintiff's CDCR-7219
<u>attached at Exhibit A Herein</u> clearly show that Plaintiff was
suffering injury from obvious exposure to O.C.Pepper spray in
the entire face and head area. This disputed fact alone creats a
issue of material fact barring summary judgement, as defendants'
own evidence contradict the claims and defense being asserted by
not just Plaintiff but defendants' them self. This factual
dispute is material to affect the outcome of this suit under
governing law.(see Anderson, 477 U.S. at 248),.

9.

1   Defendant's continue refer to Plaintiff's exposure to the
2   O.C.Pepper spray as merely some 'accidental discharge' "not
3   determined who had the accidental discharge,"  and defendants',
4   specifically Defendant Salazar, utterly ignored the CDCR-7219
5   Medical Report of Injury completed by RN Denise and Kevin Munnr
6   immediately following the disputed emergency cell extraction
7   which not only records Plaintiff's exposure to O.C.Pepper spray
8   but also necessitous need for decontamination procedures denied
9   thereafter, as defendants', specifically Defendant Salazar, made
10  no effort to investigate the discharge of the O.C.Pepper spray as
11  so Plaintiff's exposure may go on unnoticed, falsely reported as
12  'minor injuries,' and appear justified in light of circumstances
13  however, defendants' tell two different stories, one of which is
14  blatantly contradicted by the record, so that no reasonable jury
15  could believe it, thus, a Court should not adopt this version of
16  facts asserted by the defendants' for purposes of ruling on the
17  instant motion for summary judgement. see Scott v. Harris, 550
18  U.S. 372, 380-83(2007).
19  The CDCR-837 reports filed by defendants' which include
20  the declarations being relied on in support of defendants' motion
21  for summary judgement all deny any injuries sustained by
22  Plaintiff and further deny defendant's involvement in any such
23  excessive force imposed after Plaintiff had been subdued  yet at
24  page 15 line 16-18, of defendants' notice of motion and motion
25  for summary judgement defendants' plead for the record that
26  "Parrish injuries consisted of some pain in his lefy eye from
27  exposure to OC spray and possibly from when he rushed into Powell
28  //

10.

as Powell entered his cell," an omission which further creats a material fact of law in dispute because such omission clearly contradict the record before the Court.

The same is too said relative to the declaration in support of defendants' motion for summary judgement submitted by Defendant R.Machuca where defendant purports to have never entered Plaintiff's cell during the disputed cell extraction however, the CDCR-837 authored by officer L.Obodozle who was the control tower operator attached at Exhibit C to defendant Muniz declaration in support of defendants' motion for summary judgement reports in part that "Sgt.R.Machuca ordered me to open the cell door. Officers Chavez, Spalding, Powell, Sanudo, and SGT.Machuca entered cell 126 with a protective shield and placed the inmate in handcuffs and leg restraints," clearly placing Defendant R.Machuca inside the cell where the issues upon which complaint is made occurred. Again, defendants' conflicting facts and own evidence contradict the claim and defense asserted in this action, another factual dispute material to affect the outcome of this suit under governing law.

Additionally, there is no evidence offered by defendants' motion for summary judgement that a qualified psychologist was consulted or even present during the disputed cell extraction or that the SVSP's video camera procedure was followed as required by the OP's attached at Exhibit's A and B to defendant Muniz declaration in support of defendants' motion for summary judgement, thus, a material dispute of fact and law exist which bar defendants' request for summary judgement.

//

11.

1    Because Plaintiff's rights were clearly established at the
2    time the deprivations are claimed in this lawsuit and because
3    Defendants', and each of them, surely could have believed  that
4    their conduct was unlawful during the times thereto, the
5    defendants' are not entitled to qualified immunity and therefore
6    the motion for summary judgement must be denied in its entirety.
7    III. DEFENDANTS' HAVE NOT SUBMITTED AN ADEQUATE FACTUAL CASE

8    In addition to the above, defendants' have moved for
9    summary judgement without submitting an adequate evidentiary
10   basis for it, and have too failed to establish the necessary
11   facts in the manner required by the rules. There has been no
12   discovery answered, provided, or disclosed in this action. The
13   defendants' only now have the conflicting to include
14   contradictory declarations filed in support of defendants' motion
15   for summary judgement to rely on in aide of an argument for
16   qualified immunity, again, creating a genuine issue of material
17   fact as to each element of this case. see Celotex Corp. v.
18   Catrett, 477 U.S.317, 322-23, 106 S.Ct.2548(1986).

19   IV. DEFENDANTS' ARGUMENT RELATIVE TO PLAINTIFF'S MEDICAL RECORDS
20       IS FLAWED BECAUSE IT TOO IS CONTRADICTED BY EVIDENCE ON THE
21       RECORD

22   Defendants' have submitted yet another declaration by
23   C.McCann in support of defendants' motion for summary judgement
24   detailing Plaintiff's medical and mental health history during
25   relevant times following the emergency cell extraction now in
26   dispute, stretching as far to mislead the Court at paragraph 43
27   which defendants' purport, "For the first and only time, Parrish
28   //

alleged on November 2,2010, that he had migraine headaches caused by the force used during his cell removal.(Id.at AGO 0048.) But on November 20, he stated that his migraine headaches were caused by being outside in bright light. (Id.at AGO 0058.).''

Plaintiff has attached the true and correct copy of defendants' AGO 0048 which is recognized as CDCR Form 7362 at Health Care Services Request Form(HCSRF) number 9743611(see Declaration of Kaheal Parrish) at Exhibit B Herein. Plaintiff has also attached another CDCR Form 7362 HCSRF number 9995581, dated September 13,2010, where Plaintiff complained, "I need 2 see the doctor because I have severe migraines everyday from being beatin in the head repeatedly by the C/O's on 6.11.2010.I need medication for the headaches. The migraines come when I am under bright lights/sun or loud sounds." see Exhibit C Herein which is a true and correct copy of Plaintiff's submitted CDCR-7362.(see Declaration of Kaheal Parrish.).

Defendants' have mislead the Court with misstated facts contradicted by evidence before the record, even evidence being relied on by defendants' create a genuine issue of material fact which cannot be shield by a claim of qualified immunity, therefor defendant motion for summary judgement should not be granted.

V.   ADDITIONAL FACTS AND EVIDENCE IN THE POSSESSION OF
     DEFENDANTS' PRECLUDED FROM DISCLOSURE IN SUPPORT OF THE
     INSTANT OPPOSITION DUE TO DENIAL OF DISCOVERY REQUESTS

Additional facts and evidence in the possession of defendant (s) sought by Plaintiff's First Set Of Interrogatories propounded to Defendant's R.Mauchuca, Powell, Salazar, and A.Mauchuca to
//

13.

include Plaintiff's Request for The Production of Documents, set one, propounded to Defendant'Solis have been precluded from the record in support of the instant opposition due to Plaintiff not being provided discovery responses or permitted by the Court to compel relevant responses thereto. A Court should not grant summary judgement against a party who has not had an opportunity to pursue discovery or whose discovery requests have not been answered. Ingle v. Yelton, 439 F.3d 191,196(4th Cir.2006)(denial of Rule 56(f) motion "is particularly inappropriate when...'the materials sought are the object of outstanding discovery''" (citations omitted)); Leigh v. Warner Bros.,Inc.,212 F.3d 1210, 1219(11th Cir.2000)(summary judgement is generally inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests); Klingele v. Eikenberry, 849 F.2d 409, 412-13(9th Cir.1988)(where plaintiff had no evidence to support his municipal liability claim, but had made a discovery request for the defendant officers' disciplinary and complaint records, court denied summary judgement pending compliance with the discovery requests).

VI. **RULE 56(e) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

A Verified Complaint may be used as an opposing affdavit under Rule 56. Mcelyea v. Babbitt,833 F.2d 196, 997-98(9th Cir. 1987). To function as an opposing affidavit however, the verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence. Fed.R.Civ.Proc., 56(e); Mcelyen, 833 F.2d at 197; Lew v. Kona Hosp., 754 F.2d 1420,1423(9th Cir.1985). Here, Plaintiff's allegations are not

//

1   based purely on belief. Columbia Pictures Indus.,Inc., v.

2   Professional Real Estate Investors Inc., 944 F.2d 1525,1529

3   (9th Cir.1991).

4   VII.   CONCLUSION

5       As to Defendants' overall claim of qualified immunity,

6   courts must follow a two-part test. First, the court must

7   determine whether the law prohibiting the conduct, as alleged

8   by the plaintiff, was clearly established. Anderson v. Creighton,

9   483 U.S.635(1987); Harlow v. Fitzgerald, 457 U.S. 800,818(1982).

10      Second, the court must determine whether, under the clearly

11  established law, a reasonable official could have believed the

12  conduct was lawful. Ssaucier v. Katz, 121 S.Ct.2151,2156(2001);

13  Mendoza v. Block, 27 F.3d 1357,1360(9th Cir.1994). Whether an

14  official could have reasonably believed that their conduct was

15  lawful must be assessed from the particular circumstances of the

16  case. Thompson v. Souza, 111 F.3d 694,698(9th Cir.1997). In

17  performing this particularized assessment of reasonableness on

18  summary judgement, however, the court must begin its analysis by

19  assuming the facts as presented by the Plaintiff. Saucier, 121

20  S.Ct.at 2156. Properly drawing all reasonable inferences in

21  favor of Plaintiff, none of the Defendants' could have reasonably

22  believed that their conduct was lawful after Plaintiff was subdue

23  in handcuffs followed by leg restraints.

24      Defendants' nonetheless contend that they are entitled to

25  qualified immunity because defendant Machuca may have saved

26  Plaintiff life by authorizing an emergency cell extraction.

27      Plaintiff does not allege that defendant's emergency cell

28  //

15.

extraction violated any right, neither does Plaintiff make a constitutional claim relative to the cell extraction in dispute which includes defendant R.Machuca's decision to impose said emergency cell extraction.

Defendants' also misstate the specificity with which law prohibiting their conduct must have been clearly established. In Anderson v. Creighton, 483 U.S.635(1987), the Supreme Court explained that in order for the law to be "clearly established," it is not required that "the very action in question have previously been held unlawful." Instead, "the contours of the right must be sufficiency clear that a reasonable official would understand that what he is doing violates that right." Here, defendants' well knew that Plaintiff right to be free from cruel and unusual punishment was established before, during, and after Plaintiff was subdue, therefore qualified immunity does not shield defendants' liability relative to the issues upon which complaint is made.

Dated: May 28,2012

Kaheal Parrish-Plaintiff
In Pro se

Declaration of Kaheal Parrish In Support of Opposition To Defendants' Motion For Summary Judgement:

(1.) I Kaheal Parrish do hereby declare that I am the Plaintiff In this action and if called as a witness to the following facts which are of my own personal knowledge I would and could competently testify thereto.

(2.) Attached at Exhibit B herein is a true and correct original copy of CDCR Form 7362 Form HC&RF number 974361 referenced by Defendants' Motion For Summary Judgement.

(3.) Attached at Exhibit C herein is a second true and correct original copy of CDCR Form 7362 Form HC&RF 999558 submitted by Plaintiff about September 13, 2012, contrary to Defendants' argument in the Summary Judgement Motion, as Plaintiff did seek medical aide for migraine headaches as a direct result of excessive force imposed by Defendants'.

(4.) Because I was unable to conduct discovery and prevented by the court from compelling relevant response thereto, I am unable to put forth additional fact and evidence in opposition to Defendants'

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1 motion For summary Judgement. As such,
2 it would be improper For the court to
3 grant DEFENDANTS' request in this
4 matter, especially so since qualified
5 immunity does not protect the
6 DEFENDANTS' From issues upon which
7 complaint is made.
8 (5.)    While DEFENDANTS' are quick to
9 point out Plaintiff's history oF mental
10 illness, indecent exposure, and Salinas
11 valley state prison (SVSP) disciplinary
12 methods in addressing acts oF indecent
13 exposure DEFENDANT'S Solis, Hedrick,
14 and muniz make no mention oF a court
15 mandate well established since March 9,
16 2007, where the court ordered
17 specialized procedures and treatment
18 For male adult prisoners' charged with
19 indecent exposure or diagnosed with
20 exhibitionism. SEE Exhibit D HErein .
21      Instead, DEFENDANT'S Solis, Hedrick,
22 and muniz leFt plaintiff to be targeted,
23 threatened, antagonized, and then
24 victimized by DEFENDANT'S R. mauchula,
25 A. mauchula, Powell, and Sanudo ganglike
26 group as retribution For acts oF indecent
27 exposure .

COURT PAPER

(6.) additionally, Considering the Fact that Plaintiff only weigh 148 pounds and that Defendant Powell is over six foot tall and weighs close to Two hundred and Fifty pounds in Full gear, it would of been near impossible For Plaintiff to resist, in any way, Defendant's after being hit by the Force and weight of Defendant Powell and the Stern plastic shield used to enter Plaintiff's cell.

I declare under the penalty of perjury under the laws of the State of California that the Foregoing is true and correct this 28th day of may 2012, at Soledad, California.

KAHEAL PARRISH - DECLARANT
Plaintiff/ In pro se:

19.

EXHIBIT 

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| SVSP | D-2 | (USE OF FORCE)  INJURY  UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 6/11/2010 |

| | NAME | LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| THIS SECTION FOR INMATE ONLY | | Parrish | | F15901 | D2 126 | |
| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST  MIDDLE | DOB | OCCUPATION | |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE | |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) | | | |
|---|---|---|---|---|---|
| D2 126 | 6/11/2010 1310 | Powell CWAVB2 | | | |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) | | AGE | RACE | SEX |
|---|---|---|---|---|---|---|---|
| 1305 | 1315 | Powen Kwavb2 | LITTER  WHEELCHAIR  AMBULATORY  ON SITE | | 29 | B | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"Fuck them"

| INJURIES FOUND? | YES / NO | |
|---|---|---|
| Abrasion/Scratch | | 1 |
| Active Bleeding | | 2 |
| Broken Bone | | 3 |
| Bruise/Discolored Area | | 4 |
| Burn | | 5 |
| Dislocation | | 6 |
| Dried Blood | | 7 |
| Fresh Tattoo | | 8 |
| Cut/Laceration/Slash | | 9 |
| O.C. Spray Area | | (10) |
| Pain | | (11) |
| Protrusion | | 12 |
| Puncture | | 13 |
| Reddened Area | | 14 |
| Skin Flap | | 15 |
| Swollen Area | | 16 |
| Other | | 17 |
| | | 18 |
| | | 19 |

| | |
|---|---|
| O.C. SPRAY EXPOSURE? | (YES) / NO |
| DECONTAMINATED? | (YES) / NO |
| Self-decontamination instructions given? | (YES) / NO |
| Refused decontamination? | YES / NO |
| 15 min. checks | 1330  1345 |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| 1315 Denise | |

TIME/DISPOSITION
RTC holding cell 1315

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| Kevin Munur   RN | | Sun  Mon |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

DCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

SALINAS VALLEY STATE PRISON
## HOLDING CELL LOG

DATE: 6-11-10   FACILITY: D   HOLDING CELL #: 2

INMATE: Parrish   CDC NUMBER: F-15901   CELL: 126L

PLACEMENT ORDERED BY: Sgt Machuca
_Print Name_   _Signature_

REASON FOR PLACEMENT: Emergency Cell Extraction

STAFF PLACING INMATE IN HOLDING CELL: C/o Powell
_Print Name_   _Signature_

C/o Samudo
_Print Name_   _Signature_

HOLDING CELL SEARCHED BY: C/o Powell
_Print Name_   _Signature_

RESULTS OF SEARCH: Negative
JUMPSUIT ISSUED   YES ☐   NO ☒

TIME PLACED IN HOLDING CELL: 1315

The inmate's welfare will be checked every **15-MINUTES**. The inmate will be offered access to water and toilet facilities at reasonable intervals not to exceed one hour.

| TIME CHECKED | PRINT STAFF NAME | SIGNATURE | COMMENTS |
|---|---|---|---|
| 1. 1330 | J. Spaulding | | |
| 2. 1345 | J. Spaulding | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

STAFF RELEASING INMATE  C/o J. Spaulding
FROM HOLDING CELL   _Print Name_   _Signature_

C/o J. Streeper
_Print Name_   _Signature_

TIME RELEASED FROM HOLDING CELL: 1350   TOTAL TIME IN CELL: 35 min

MEDICAL EXAM   YES ☒   NO ☐   LVN MUNN, K
_Print Name_   _Signature_

COMMENTS ON INMATE'S BEHAVIOR/DISPOSITION: _____

SUPERVISOR'S SIGNATURE UPON RELEASE OF INMATE:
R. MACHUCA Jr.
_Print Name_   _Signature_   _TITLE_ Sgt.

**MANAGER/AOD APPROVAL** IF FOUR (4) HOUR TIME LIMIT IS EXCEEDED.

_Print Name_   _Signature_   _TITLE_

REASON FOR EXCEEDING TIME LIMIT:

# EXHIBIT  B

STATE OF CALIFORNIA
CDC 7362 (REV. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*
*If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.*

REQUESTER:    MEDICAL ☒    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☒

| NAME Kaheal Parrish | CDC NUMBER F15901 | HOUSING D7-124 |
|---|---|---|
| PATIENT SIGNATURE *KAP* | | DATE 11-03-10 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES (Describe Your Health Problem And How Long You Have Had The Problem)

I have severe Migraines from being beaten by the c/os
on 10-11-2010. I was taking Migraine Medication until I went to CTC
2 weeks ago and I ran out so I need a refill.
           Thank you.

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

EXHIBIT   C

**9995581**

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:  MEDICAL ☒    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| Kaheal Parrish | F15901 | D2-217 |

| PATIENT SIGNATURE | DATE |
|---|---|
| KAP | 9-13-2010 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I need 2 see the Doctor because I have Severe migraines everyday from being beating in the head repeatedly by the CO's on 6-11-2010 I need medication for the headaches. The Migraines come when I am under Bright lights/sun or loud sounds.

Thank you for your time    KAP

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

# EXHIBIT  D

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11            Plaintiffs,          No. CIV S-90-0520 LKK JFM P

12        vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,
14
               Defendants.              ORDER
15   _____/

16            On December 14 and 15, 2006, the special master filed a sixteenth monitoring

17   report.  The court has reviewed the report and the recommendations contained therein and has

18   made orders in response to the first recommendation.  (See Orders filed December 15, 2006 and

19   February 7, 2007.)  The sixteenth round monitoring report includes a second recommendation to

20   which no objection has been interposed.  It will therefore be made an order of the court.

21            In accordance with the above, IT IS HEREBY ORDERED that defendants shall

22   review their "Procedures for Mental Health Assessment of Inmate Indecent Exposure and

23   Treatment for Exhibitionism," dated October 10, 2004.  Defendants shall consider the

24   concentration of the CDCR's inmates with exhibitionism or a paraphilia associated with

25   exhibitionist behaviors in a smaller number of regional institutions in order to focus staff with

26   requisite training and skills to provide the treatment services not presently available in many

1

1   CDCR institutions.  Institutions shall be provided with specific direction on the appropriate

2   security measures that need to be adopted, including, if deemed necessary, a requirement for the

3   creation of an internal high-level custody and mental health committee to review local residents

4   involving indecent exposure or exhibitionism.  Defendants shall inaugurate a re-thought, fully

5   staffed program for inmates with exhibitionism or a paraphilia associated with exhibitionist

6   behaviors in at least three institutions by July 1, 2007.

7   DATED:   March 9, 2007.

8

9

10                              LAWRENCE K.  KARLTON
                                SENIOR JUDGE
11                              UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

State of California                                    California Department of Corrections and Rehabilitation

# Memorandum

Date       :   August 31, 2007

To         :   Associate Directors, Division of Adult Institutions
               Regional Administrators, Division of Correctional Health Care Services
               Wardens
               Health Care Managers
               Chiefs of Mental Health
               Classification Staff Representatives
               Classification and Parole Representatives
               Correctional Counselor IIIs, Reception Centers

Subject    :   **AMENDED HOUSING POLICY FOR ADULT MALE INMATES REFERRED FOR
               TREATMENT OF EXHIBITIONISM**

               This supersedes the memorandum issued July 2, 2007, that announced the housing
               policy for adult male inmates diagnosed with exhibitionism.

               Pursuant to a *Coleman* court order issued March 9, 2007, the California Department
               of Corrections and Rehabilitation (CDCR) is required to implement a specialized
               group Exhibitionism Treatment Program for inmates in the Mental Health Services
               Delivery System (MHSDS) who have been identified as requiring treatment for
               exhibitionism. The *Coleman* order required that group treatment be provided in at
               least three institutions by July 1, 2007. A mental health interdisciplinary treatment
               team (IDTT) will provide a CDCR Form 128-MH8 Chrono, Mental Health IDTT
               Housing/Program Recommendation (sample attached), documenting that the inmate
               meets clinical criteria requiring treatment of exhibitionism. A CDCR Form 128-C,
               Medical, Psych, Dental Chrono may be used temporarily while institutions are in the
               process of implementing form 128-MH8. Treatment is required when an inmate has
               had at least one episode of indecent exposure in the last six months (at the time of
               the IDTT), and is either diagnosed with Exhibitionism, or meets the following
               alternate criteria.

               Alternate criteria: The Exhibitionism diagnosis requires that the patient experiences
               "fantasies, sexual urges, or behaviors involving the exposure of one's genitals to an
               unsuspecting stranger." An inmate who meets all criteria for the diagnosis of
               Exhibitionism, **except** that the victim was not an "unsuspecting stranger" but was a
               staff member or inmate who did not consent to or encourage the behavior, must be
               referred for treatment of exhibitionism. A diagnosis of Exhibitionism is not required
               for inmates who meet the alternate criteria.

               Inmate-patients meeting the clinical criteria shall be transferred to one of the three
               locations, based on the following custody criteria.

CDC 1617 (3/89)

Associate Directors, Division of Adult Institutions
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Chiefs of Mental Health
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs, Reception Centers
Page 2

**Pelican Bay State Prison (PBSP)-Psychiatric Services Unit (PSU)**
**California State Prison, Sacramento (SAC) – PSU**

- Inmates currently serving Security Housing Unit (SHU) terms and who are at the Enhanced Outpatient Program (EOP) level of care.
- Inmates on Administrative Segregation Unit (ASU) status with pending SHU terms at their current location and who are at the EOP level of care.

**California State Prison, Corcoran (COR) SHU**

- Inmates currently serving SHU terms and who are at the Correctional Clinical Case Management System (CCCMS) level of care.
- Inmates on ASU status pending SHU terms at their current location and who are at the CCCMS level of care.

Inmates that are eligible for COR SHU who are susceptible to developing Coccidiomycosis (Valley Fever) organism will go to SAC PSU.

In April 2007 institutions were surveyed by the Division of Correctional Health Care Services (DCHCS) to determine the number of male inmates who meet clinical criteria requiring treatment of exhibitionism. On July 2, 2007, institutions were provided a listing of inmates at their facilities who have been clinically diagnosed with exhibitionism. CDCR 128-Cs documenting the diagnosis for each inmate were faxed to the respective institutions on July 10, 2007. Institutions were instructed to review these cases in accordance with the housing criteria outlined above and refer the cases to the Institutional Classification Committee for action. Eligible cases shall be expedited for endorsement by the Classification Staff Representative (CSR) and transferred to the appropriate facility.

The CSR endorsement should be as follows:

- PBSP-PSU for Exhibitionism Treatment Program
- SAC-PSU for Exhibitionism Treatment Program
- COR-SHU for Exhibitionism Treatment Program

Associate Directors, Division of Adult Institutions
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Chiefs of Mental Health
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs, Reception Centers
Page 3


## HOUSING POLICY

Once clinically diagnosed with Exhibitionism or determined to meet the alternate criteria, the case will be reviewed by an Institutional Classification Committee and Interdisciplinary Treatment Team (ICC/IDTT). The ICC/IDTT will evaluate the inmate's case factors to determine whether he can safely program in a group therapy setting in one of the three programs listed above. In addition to the required documentation outlined in the California Code of Regulations, Title 15, Section 3375, "Classification Process", the CDCR Form 128-G, Classification Chrono, shall document the following:

- The date of placement and initial reason for placement in segregated housing.
- Whether a Rules Violation Report (RVR) was issued and, if so, its disposition. Identify the outcome if adjudicated. Note whether the case was referred to the District Attorney (DA) and, if so, the status of the referral.
- Any subsequent RVRs the inmate has received and their status (adjudicated, pending DA referral, etc).
- Whether the inmate has a pending RVR and, if so, annotate that the sending institution will retain responsibility for the adjudication of all pending RVRs.
- Whether the inmate is currently serving a SHU term and, if so, whether it is determinate or indeterminate, and the Minimum Eligible Release Date (MERD), if applicable.
- If the inmate is pending a SHU term, document the projected MERD date.
- Review of potential enemy concerns.
- Any security concerns the committee may have as a result of the inmate's case factors.
- If suitable for placement, indicate the specific exhibitionism treatment program the inmate is being recommended for transfer.
- If not suitable for placement, provide specific reasons why the inmate is not eligible.

Inmates with pending RVRs and/or court proceedings may be transferred to the program. After the inmate is transferred, the sending institution will retain responsibility for the adjudication of all pending RVRs and be responsible for

Associate Directors, Division of Adult Institutions
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Chiefs of Mental Health
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs, Reception Centers
Page 4

transporting the inmate to and from all necessary court proceedings. The sending institution will be responsible for notifying the receiving institution when the inmate must be transported for court proceedings.

Inmates whose SHU terms are within 90 days of expiring and who have no subsequent disciplinary related issues pending will **not** be transferred to the treatment program. Inmates whose SHU terms will not expire within 90 days or have additional SHU terms pending are eligible for transfer.

Inmates that are in ASU with pending or projected SHU terms of greater than 90 days are eligible for transfer. Inmates with projected MERDs of less than 90 days will not be transferred to the program.

Therefore, any inmate with a SHU or projected SHU term of less than 90 days is not eligible for placement in the Exhibitionism Treatment Program.

Inmates previously housed on Sensitive Needs Yards (SNY) who are currently placed in ASU or are serving SHU terms will be reviewed on a case-by-case basis by the current institution's ICC/IDTT for placement consideration to determine whether the individual can safely participate in a group treatment program in close proximity to non-SNY inmates. This information will be documented on the CDCR 128-G. If determined appropriate for placement in an Exhibitionism Treatment Program, the receiving institution will conduct an ICC/IDTT to determine how best to provide for the inmate's safety while housed in the treatment program, and document such provisions on the CDCR 128-G.

Inmates scheduled for transfer to the Exhibitionism Treatment Program at one of the participating institutions will not supersede the established mental health priority transfer agreement as it relates to PSU and SHU beds. The CSR will fax a copy of the endorsement chrono to the DCHCS, Health Placement Unit, at (916) 324-1795, for tracking purposes.

The Exhibitionism Treatment Program is voluntary; however, pursuant to the court order, inmates meeting the criteria for inclusion will be transferred to one of the three

Associate Directors, Division of Adult Institutions
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Chiefs of Mental Health
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs, Reception Centers
Page 5

institutions providing this group treatment. If a qualifying inmate refuses to enter the program, he shall be put up for transfer to one of the participating institutions. Once at the institution, mental health staff will intervene to encourage the inmate to participate. The inmate will remain at the institution until he either: (1) voluntarily enters the Exhibitionism Treatment Program; (2) has not committed a qualifying offense for a six-month period; or (3) his SHU term has been completed.

Upon release from the Exhibitionism Treatment Program, an inmate who commits a qualifying offense that meets program criteria will be eligible for placement back in the program.

Wardens shall ensure appropriate staff is aware of these procedures.

If you have any questions or require additional information from the Division of Adult Institutions, please contact Eric Arnold, Chief, Classification Services Unit (CSU), at (916) 322-2544. For health care issues, contact Shama Chaiken, Chief Psychologist, Mental Health Program, DCHCS, at (916) 445-4114.

**Original Signed by**
**Teresa Schwartz for:**                     **Original Signed by:**

SCOTT KERNAN                             ROBIN DEZEMEBR
Chief Deputy Secretary                     Director
Adult Operations                            Division of Correctional Health Care Services

Attachment

cc: K.W. Prunty          Stephen Kessler          Scott Kernan
    Richard Hawkins      Bernard Warner           Thomas Hoffman
    Steve Alston         Tracy Johnson            Kathy Prosper
    Catherine Bernstein  Bonnie Kolesar           Shama Chaiken
    Teresa Schwartz      George Giurbino          Linda Barnett
    Ombudsman's Office   Eric Arnold              Facility Captains, CSU
    Doug McKeever        Chief Psychologists      Chief Psychiatrists
    Rick Johnson         Lee Ann Chrones

STATE OF CALIFORNIA
COUNTY OF MONTEREY

(C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC. 1746)

I, __K.Parrish_____ declare under penalty of perjury that: I am
the __Plaintiff_____ in the above entitled action; I have read the foregoing documents
and know the contents thereof and the same is true of my own knowledge, except as to matters
stated therein upon information, and belief, and as to those matters, I believe they are true.

Executed this __28__ day of __May_____, 20 __12____, at Salinas Valley State
Prison, Soledad, California 93960-1050.

(Signature)_____
DECLARANT/PRISONER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROOF OF SERVICE BY MAIL
(C.C.P. SEC 1013(a) & 2015.5; 28 U.S.C. SEC. 1746)

I, __K.Parrish_____, am a resident of California State Prison, in the County of
Monterey, State of California; I am over the age of eighteen (18) years and am/am not a party of
the above entitled action. My state prison address is: P.O. Box 1050, Soledad, California 93960-
1050.

On __May 28,_____, 20 __12____, I served the foregoing: __Plaintiff's Opposition__
__To The Defendants' Motion and Motion for Summary Judgement;__
__Memorandum of Points and Authorities and Declaration of Kaheal__
__Parrish In Support Thereof__
(Set forth exact title of document(s) served)

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with
postage thereof fully paid, in the United States Mail, in a deposit box so provided at Salinas
Valley State Prison, Soledad, California 93960-1050.   U.S.Department of Justice
U.S.District Court                                      Office of Attorney General
Northern District of Calif                              Emily L.Brinkman,Deputy AG
Honorable Lucy H.Koh                                    455 Golden Gate Ave#11000
280 S.First Str#3035                                    San Francisco,Calif 94102
San Jose,Calif 95113

(List parties served)

There is delivery service by United States Mail at the place so addressed, and/or there is regular
communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: __May 28_____, 20 __12____,        _____
                                               DECLARANT/PRISONER