IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAHEAL PARRISH,<br><br>  Plaintiff,<br><br> v.<br><br>A. SOLIS, et al.,<br><br>  Defendants. | No. C 11-1438 LHK (PR)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM<br><br>(Docket No. 41.) |

Plaintiff, a state prisoner proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983, arguing that Defendants used excessive force upon him, in violation of the Eighth Amendment. On December 5, 2011, Defendants filed a motion for summary judgment. Plaintiff has filed an opposition, and Defendants have filed a reply.[1] Having carefully considered the papers submitted, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

---

[1] On July 16, 2012, the Court offered Plaintiff the opportunity to file a supplemental opposition, in light of *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012). Plaintiff has not filed a supplemental opposition.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
G:\PRO-SE\SJ.LHK\CR.11\Parrish438msjdeny.wpd

## BACKGROUND

Plaintiff filed this action, alleging that Defendants used excessive force against him, which resulted in Plaintiff's injuries. In response, Defendants argue that they are entitled to summary judgment because they were justified in their use of force to prevent Plaintiff from committing suicide, and because they are entitled to qualified immunity

The following facts are taken in the light most favorable to Plaintiff.

Plaintiff was housed at Salinas Valley State Prison ("SVSP"), and is a person with a qualified disability within the meaning of the Americans with Disabilities Act. (Compl. at 3.)[2] He was a participant in the California Department of Corrections and Rehabilitation's ("CDCR") Mental Health Delivery Services ("MHDS") program at the Enhanced Outpatient ("EOP") level of care. (*Id.*) This means he was gravely mentally disabled and/or unable to care for himself. (*Id.*)

In May 2010, Plaintiff was housed in administrative segregation, which is designed for inmates who are EOP and have disciplinary charges pending. (*Id.* at 6.) Defendant R. Machuca warned Plaintiff that the next time Plaintiff was charged with indecent exposure, Plaintiff would "feel the Green Wall." (*Id.* at 7.) Defendant R. Machuca explained to Plaintiff that a partial window covering would be placed over his cell in order to limit his ability to expose himself. (Decl. R. Machuca at ¶ 7.)

On June 11, 2010, Plaintiff was charged with indecent exposure, and it was reported to Defendant Machuca. (Compl. at 7; Decl. R. Machuca at ¶ 6.) Around thirty minutes later, Defendant Powell came to the cell door and told Plaintiff that Defendant R. Machuca already warned him about what would happen the next time Plaintiff exposed himself, and told Plaintiff that "your [sic] getting fucked up so you got a ass kicking comming." (Compl. at 7.)

Defendant Powell's threat caused Plaintiff such distress, fear, and suicidal thoughts that Plaintiff reported to Psychiatric Technician K. Munn that he was feeling suicidal, and Plaintiff requested crisis care. (*Id.* at 8.) After reading Plaintiff's suicidal report, Defendant Powell told

---

[2] Citations to Plaintiff's complaint will correspond with the pagination in ECF.

K. Munn that "we'll take care of it." (*Id.*) Minutes later, Defendant Powell returned with Defendant R. Machuca, and ordered that Plaintiff submit to handcuffing. (*Id.*) Defendant R. Machuca observed that Plaintiff had completely covered his windows and turned off his cell light. (Decl. R. Machuca at ¶ 10.) Defendant R. Machuca ordered Plaintiff to uncover his windows and turn on the light. (*Id.*) Plaintiff refused to do so, and stated that he was feeling suicidal and had already swallowed some metal. (*Id.*) Defendant R. Machuca repeated the order, and again, Plaintiff stated that he was suicidal but did not comply with the order. (*Id.*)

Plaintiff told Defendants several times that he did not want Defendants to "kick his ass," and was scared to submit to handcuffing. (Compl. at 8.) Defendant R. Machuca told him, "I told you this would happen next time you played with your dick so let's go or we're coming in there." (*Id.*) Plaintiff felt paralyzed while his cell door opened, and Defendant Powell charged into Plaintiff's cell with a 4-5 foot plastic shield in front of him, and rammed the shield into Plaintiff's body, knocking Plaintiff down to the cell floor. (*Id.* at 8-9.) Defendant Powell slammed the shield on top of Plaintiff's body, slammed his own body on top of the shield, and placed Plaintiff in handcuffs. (*Id.* at 9.) Another officer placed handcuffs on Plaintiff's ankles while Plaintiff was lying on the ground. (*Id.*)

Defendant R. Machuca began talking to his brother, Defendant A. Machuca, in Spanish, while Defendant Powell straddled Plaintiff's upper back. (*Id.*) Plaintiff found it hard to breathe. (*Id.*) Defendant R. Machuca then pulled down the back of Plaintiff's underwear and discharged pepper spray to Plaintiff's anus, testicles, and face. (*Id.*) Defendants R. Machuca, A. Machuca, and Sanudo began kicking Plaintiff in the legs, lower back, and buttocks. (*Id.* at 9-10.) Defendant Powell hit Plaintiff with a closed fist in the back of the head approximately five times while calling him names. (*Id.* at 10.) Defendant R. Machuca was kicking Plaintiff. After 3 to 4 minutes of punching and kicking Plaintiff, Defendant R. Machuca told A. Machuca to leave because A. Machuca "shouldn't be [t]here." (*Id.*)

Afterward, both Defendants A. and R. Machuca left, and were replaced by non-Defendants Officers Spaulding, R. Chavez, and Reyes. (*Id.*) Defendant Powell pushed

Plaintiff's face into the floor just before getting off of Plaintiff's back, causing Plaintiff to cut his lower lip with his teeth. (*Id.*) Plaintiff was escorted to a holding cage for evaluation of his injuries. (*Id.*) Defendant R. Machuca told the medical examiner to only record the injuries where the pepper spray impacted Plaintiff. (*Id.*)

Defendant Salazar was the incident commander who authorized and instructed Defendants to extract Plaintiff from his cell. (*Id.* at 10-11.) Defendant Salazar also instructed Defendant R. Machuca to keep the record of Plaintiff's injuries "to a minimum" and not allow Plaintiff to decontaminate from the effects of the pepper spray. (*Id.* at 11.) Despite Plaintiff's repeated requests for a shower, all Defendants refused, based on Defendant Salazar's orders. (*Id.*) Defendant Salazar then falsified the crime incident reports to state that Plaintiff attempted to attack Defendant Powell by charging at him with clenched fists, and all injuries were the result of an "accidental discharge of pepper spray." (*Id.*)

Until August 17, 2010, Plaintiff was kept in crisis care on suicide watch when his mental health status was upgraded. (*Id.* at 11-12.) While in crisis care, Plaintiff continued to suffer from burning skin, eyes and lungs, swollen eyes, painful and bruised legs and torso, swollen cut lip, pained back, head and extensive migraine headaches. Plaintiff also suffered mental, emotional, and psychological trauma. (*Id.* at 12.)

## ANALYSIS

I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over material facts, and "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

II.     Legal Claim

The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Id.* at 6-7. In determining whether the use of force was for the purpose of maintaining or restoring discipline,

1 or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for
2 application of force, the relationship between that need and the amount of force used, the extent
3 of any injury inflicted, the threat reasonably perceived by the responsible officials, and any
4 efforts made to temper the severity of a forceful response. *Id.* at 7. In reviewing these factors,
5 courts must accord prison administrators wide-ranging deference in the adoption and execution
6 of polices and practices to further institutional order and security. *Jeffers v. Gomez*, 267 F.3d
7 895, 917 (9th Cir. 2001).

8 Taking the evidence in the complaint as true, and drawing all inferences therefrom in
9 Plaintiff's favor, there is a genuine issue of material fact as to whether Defendants' use of force
10 was excessive. According to Plaintiff, Defendants R. Machuca, B. Powell, A. Machuca, and J.
11 Sanudo intended to punish Plaintiff for a second indecent exposure incident. Plaintiff's version
12 of events differs greatly from Defendants' version of events. Accepting Plaintiff's account as
13 true, as this Court must, an inference could certainly be drawn that these Defendants assaulted
14 Plaintiff for the purpose of causing harm.

15 Plaintiff alleged that Defendant Salazar authorized and actively prevented Plaintiff's full
16 injuries from being reported, and prohibited Plaintiff from being decontaminated. Plaintiff also
17 claims that Defendant Salazar falsified the crime incident report to cover-up the actions of
18 Defendants R. Machuca, B. Powell, A. Machuca, and J. Sanudo. Although Defendants dispute
19 Plaintiff's accusations, Plaintiff raises a genuine dispute of material fact regarding Defendant
20 Salazar's role and his actions sufficient to survive a motion for summary judgment. *See, e.g.*,
21 *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (a supervisor who signed an
22 internal affairs report dismissing complaint against officer despite evidence of the officer's use
23 of excessive force may be liable for damages).

24 On the other hand, Plaintiff's allegations against Defendants Solis, Muniz, and Hedrick
25 are too conclusory. He merely alleges that they supported or initiated a "deficient policy."
26 (Compl. at 11.) Specifically, that policy was authorizing Green Wall prison guard gang
27 members to act against EOP inmates. (*Id.* at 13.) Plaintiff also claims that other EOP inmates
28

have previously complained that Defendants R. Machuca and Defendant Powell have used excessive force upon them, and in response, Defendants Solis, Muniz, and Hedrick transfer those inmates to another prison. (*Id.*) Supervisor defendants are entitled to qualified immunity where the allegations against them are simply "bald" or "conclusory" because such allegations do not "plausibly" establish the supervisors' personal involvement in their subordinates' constitutional wrong, *Ashcroft v. Iqbal*, 556 U.S. 662, 675-84 (2009) (noting no vicarious liability under Section 1983 actions).

Here, although Plaintiff implies that Defendants Solis, Muniz, and Hedrick knew about, and supported, alleged constitutional violations against other inmates, Plaintiff does not specifically claim that Defendants Solis, Muniz, and Hedrick had any personal knowledge of the underlying alleged constitutional violation challenged here, or that they had any direct responsibility to train or supervise Defendants R. Machuca, B. Powell, A. Machuca, and J. Sanudo. *See, e.g.*, *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (recognizing that a claim for supervisory liability must plead specific allegations).

Recently, in *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012), the Ninth Circuit observed that the plaintiff had made "no allegation of a specific policy implemented by the Defendants or a specific event or events instigated by the Defendants that led to these purportedly unconstitutional searches." *Id.* at 942. As a result, the Ninth Circuit held that the plaintiff had failed to allege supervisory liability claims. *Id.* Here, as in *Hydrick*, Plaintiff does not allege any specific past incidents of the use of excessive force by subordinates of Defendants Solis, Muniz, and Hedrick. Neither does Plaintiff allege any specific incident during which Defendant Solis, Muniz, or Hedrick was given notice of a subordinate's unconstitutional conduct. Plaintiff's allegations are generally conclusory recitals. *Hydrick* makes clear that general allegations failing to describe specific incidents or policies are not enough to survive the *Iqbal* standard of pleading for a supervisory liability. Thus, Defendants Solis, Muniz, and Hedrick are entitled to summary judgment, and are DISMISSED from this action.

Having concluded that genuine issues of material fact exist as to whether Defendants

Salazar, R. Machuca, B. Powell, A. Machuca, and J. Sanudo used excessive force against Plaintiff in violation of the Eighth Amendment, the Court next addresses whether they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A Court considering a claim of qualified immunity must determine whether the Plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Regarding the first prong, the threshold question must be, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

The Court finds granting summary judgment on the ground of qualified immunity is improper in this case. A dispute of fact exists as to what occurred when Defendants entered Plaintiff's cell. Resolving all factual disputes in favor of Plaintiff, the Court concludes Defendants violated Plaintiff's clearly established right to be free from excessive force. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's use of excessive force was clearly established by 1994"). Granting summary judgment on the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Here, under Plaintiff's version of the facts, no reasonable officer could believe that Defendants' actions were permitted under the Eighth Amendment.

1    In sum, accepting Plaintiff's allegations as true, there is a genuine issue of fact as to
2 whether Defendants violated Plaintiff's constitutional rights. Accordingly, Defendants Salazar,
3 R. Machuca, B. Powell, A. Machuca, and J. Sanudo are not entitled to summary judgment, nor
4 are they entitled to qualified immunity.

5 III.    Referral to Pro Se Prisoner Settlement Program

6    Prior to setting this matter for trial and appointing pro bono counsel to represent Plaintiff
7 for that purpose, the Court finds good cause to refer this matter to Judge Vadas pursuant to the
8 Pro Se Prisoner Settlement Program for settlement proceedings on the claim set forth above.
9 The proceedings will consist of one or more conferences as determined by Judge Vadas. The
10 conferences shall be conducted with Defendants, or their representative, attending by
11 videoconferencing if they so choose. If these settlement proceedings do not resolve this matter,
12 the Court will then set this matter for trial and consider a motion from Plaintiff for appointment
13 of counsel.

## CONCLUSION

15    1.    Defendants' motion for summary judgment is GRANTED in part and DENIED in
16 part. Defendants Solis, Muniz, and Hedrick are DISMISSED.

17    2.    The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner
18 Settlement Program for settlement proceedings on the remaining claim in this action, as
19 described above. The proceedings shall take place within **one-hundred twenty (120) days** of
20 the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement
21 conference with all interested parties or their representatives and, within **ten (10) days** after the
22 conclusion of the settlement proceedings, file with the Court a report regarding the prisoner
23 settlement proceedings. If these settlement proceedings to do not resolve this matter, Plaintiff
24 can file a renewed motion for appointment of counsel, and the Court will then set this matter for
25 trial.

26    3.    The Clerk of the Court shall mail a copy of the Court file, including a copy of
27 this order, to Judge Vadas in Eureka, California.

28

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
G:\PRO-SE\SJ.LHK\CR.11\Parrish438msjdeny.wpd    9

1    4.   The instant case is STAYED pending the settlement conference proceedings.

2    IT IS SO ORDERED.

3    DATED: 8/27/12

_____
LUCY H. KOH
United States District Judge