JAMES E. LYONS (State Bar. No. 112582)
James.Lyons@probonolaw.com
CHRISTINE HUNG (State Bar No. 266364)
Christine.Hung@probonolaw.com
TATYANA SHMYGOL (State Bar No. 267104)
Tatyana.Shmygol@probonolaw.com
KERRY S. KUMABE (State Bar No. 273552)
Kerry.Kumabe@probonolaw.com
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

Attorneys for Plaintiff
KAHEAL PARRISH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| KAHEAL PARRISH,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>A. SOLIS; R. HEDRICK; W. MUNIZ; GREGORIO R. SALAZAR; RAUL MACHUCA, JR.; BRANDON C. POWELL; ADRIAN MACHUCA; JASON A. SANUDO; MAURICE EMANUEL HALDEMAN,<br><br>　　　　　　　Defendants. | CASE NO.: 11-CV-01438-LHK<br><br>FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>1. Civil Rights Act of 1871, 42 U.S.C. § 1983: Excessive Use of Force ;<br><br>2. Civil Rights Act of 1871, 42 U.S.C. § 1983: Violation of First Amendment Rights;<br><br>3. Civil Rights Act of 1871, 42 U.S.C. § 1985(2): Conspiracy to Interfere with Civil Rights.<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

1    Plaintiff Kaheal Parrish, by and through his undersigned attorneys, alleges, upon personal

2  knowledge as to himself and his own acts and upon information and belief following reasonable

3  inquiry as to all others matters, as follows:

## I.    INTRODUCTION

5    "A nation should not be judged by how it treats its highest citizens, but its lowest."

6    Nelson Mandela

7    1.    Plaintiff Kaheal Parrish, an inmate of the California Department of Corrections and

8  Rehabilitation ("CDCR") formerly housed at Salinas Valley State Prison ("SVSP"), brings this

9  action for damages and injunctive relief to redress Defendants' systematic and continuous

10  violations of Parrish's civil rights protected by the Civil Rights Act of 1871.  Flouting their sworn

11  duty to respect the rights guaranteed to Parrish under the United States Constitution, certain

12  Defendants determined to employ cruel and unusual punishments by meting out unjustified

13  extrajudicial beatings to Parrish in violation of the Eighth Amendment and interfered with Parrish's

14  First Amendment right to petition the government for redress of this grievance.  These Defendants

15  then joined with others in an illegal conspiracy to cover up these Constitutional violations through

16  the obstruction of justice, false accusations of prison rule violations and the use of intimidation and

17  threats of additional punishments, all for the purpose of dissuading Parrish from exercising his

18  constitutionally protected rights.

19    2.    CDCR operates one of the largest prison systems in the world and during the time of

20  the allegations in this Complaint housed more than 170,000 inmates.  This large prison population

21  resulted in severe overcrowding in CDCR's 37 correctional facilities throughout California,

22  including SVSP.  The consequences of this severe overcrowding included the lack of adequate

23  management controls over the actions of correctional personnel in their dealings with inmates, the

24  failure to discipline correctional officers for well-grounded complaints of officer misconduct filed

25  by inmates or third parties, and a prison medical and mental health system that was broken beyond

26  repair.  As a result, the United States Supreme Court determined that the California state prison

27  system practiced serious constitutional violations that have persisted for years.  *Brown v. Plata*,

28  131 S.Ct. 1910, 1922 (2011).

---

**FIRST AMENDED COMPLAINT**                                    **CASE NO. 11-CV-01438-LHK**

3.      CDCR's inability to deliver minimally adequate mental health care and medical treatment, and provide proper oversight to address correctional officers' acts of misconduct, directly affected Parrish.  Parrish suffers from serious mental disorders and as a result CDCR placed him in the Enhanced Outpatient Program ("EOP") at SVSP, which is specifically designed to provide mental health care to treat Parrish's mental condition.  But at the times alleged in this Complaint, SVSP was vastly overcrowded, holding an inmate population that was over 155 percent of design capacity, including one of the largest populations of EOP inmates in the state.  This severe overcrowding contributed to SVSP's history of criminal conduct by a vigilante group of SVSP correctional officers known as the "Green Wall" gang, who assaulted inmates gratuitously, vandalized property of inmates and other SVSP employees, and intimidated SVSP personnel from coming forward to expose their Green Wall activities all the while protecting themselves with a Code of Silence.

4.      Suffering from his mental disorder while incarcerated at SVSP, in 2010 Parrish committed non-violent acts of indecent exposure that SVSP determined required the imposition of disciplinary punishments and additional psychiatric treatments.  Rather than permit the disciplinary process and the EOP to address Parrish's conduct and treat his mental disorders, Defendants Raul Machuca, Powell, Adrian Machuca and Sanudo (several of whom were associated with the Green Wall gang) determined to exact retribution against Parrish through the medieval use of physical violence in stark violation of his civil rights.  Using the pretext of a suicide attempt by Parrish and acting in violation of CDCR and SVSP regulations, these Defendants entered Parrish's cell, beat, punched and kicked Parrish for several minutes, and sprayed Parrish with a chemical disabling agent, all the while shouting racist slurs and vulgar insults at Parrish.  Defendants' real purpose in this unjustified attack was to inflict physical and emotional injuries maliciously and sadistically through a vicious assault of Parrish.

5.      Believing that the Green Wall gang's Code of Silence was not sufficient to protect them from answering for their illegal acts, Defendants Raul Machuca, Powell, Adrian Machuca and Sanudo conspired to cover up of the true purpose and scope of the beating by filing false reports with superiors in violation of CDCR regulations requiring the truthful reporting and documentation

1  of all use of force incidents.  When Parrish requested an investigation of these Defendants' conduct

2  as permitted by CDCR rules and later filed this lawsuit as permitted by federal law, these

3  Defendants and their co-conspirators further engaged in a methodical scheme of harassment to

4  threaten and intimidate Parrish, including the use of false allegations of rule violations and the

5  seizure and destruction of Parrish's personal property, for the purpose of coercing him into

6  abandoning his claims.  Defendants' illegal conduct even extended to a conspiracy through

7  Defendant Haldeman to plant half a pair of scissors in Parrish's personal legal file in order to frame

8  Parrish on a trumped-up charge that Parrish possessed a weapon.

9       6.     Parrish seeks damages to compensate him fairly for the physical and emotional

10  injuries he has suffered, in an amount to be determined at trial, plus punitive damages based upon

11  Defendants' malicious and oppressive conduct.  In addition, Parrish requests that the Court issue a

12  permanent injunction against Defendants restraining each of them from further illegal acts against

13  Parrish in violation of his rights under the United States Constitution.

14  <center>**II.**      **JURISDICTION AND VENUE**</center>

15       7.     Parrish brings these claims against Defendants pursuant to 42 U.S.C. § 1983,

16  42 U.S.C. § 1985(2) and the First, Eighth and Fourteenth Amendments to the United States

17  Constitution.  This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 and 1343

18  because this action arises under the Constitution and laws of the United States and alleges claims

19  for the deprivation of Parrish's civil rights pursuant to acts of individuals and conspirators.

20       8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all or most

21  Defendants reside in this District and a substantial part of the events or omissions giving rise to the

22  claims asserted by Parrish occurred in this District.

23  <center>**III.**      **PARTIES AND RELEVANT NON-PARTIES**</center>

24  **A.**     **Plaintiff**

25       9.     Plaintiff Parrish is an inmate in the prison system operated by CDCR currently

26  housed at California State Prison, Sacramento.  From 2006 until 2013, Parrish was principally

27  incarcerated at SVSP.  While at SVSP, Parrish received therapeutic treatment for mental disorders

28  that left him functionally impaired.

<center>3</center>

**B.       Defendants**

            **1.       The Dismissed Defendants**

10.     Defendant A. Solis is employed as Chief Deputy Warden at SVSP and is being sued in his individual and official capacity for ratification of policies that violated Parrish's civil and Constitutional rights.

11.     Defendant B. Hedrick is the Associate Warden at SVSP and is being sued in her individual and official capacity for ratification of policies which violated Parrish's civil and Constitutional rights.

12.     Defendant W. Muniz is the Facility Captain at SVSP and is being sued in his individual and official capacity for the ratification of policies that violated Parrish's civil and Constitutional rights.

13.     By Order dated August 28, 2012, this Court granted summary judgment dismissing Defendants Solis, Hedrick and Muniz from this action.  Parrish will not seek any relief against Solis, Hedrick and Muniz without the further order of the Court.

            **2.       The Assault Defendants**

14.     Defendant Gregorio R. Salazar is a Correctional Lieutenant at SVSP and is being sued in his individual and official capacity for actions, and for ratification of the policies, that violated Parrish's civil and Constitutional rights.

15.     Defendant Raul Machuca, Jr. is a Correctional Sergeant at SVSP and is being sued in his individual and official capacity for actions, and for ratification of policies, that violated Parrish's civil and Constitutional rights.

16.     Defendant Brandon C. Powell is a Correctional Officer at SVSP and is being sued in his individual and official capacity for the violation of Parrish's civil and Constitutional rights.

17.     Defendant Adrian Machuca is a Correctional Officer at SVSP and is being sued in his individual and official capacity for the violation of Parrish's civil and Constitutional rights. He is the brother of Raul Machuca.

18.     Defendant Jason A. Sanudo is a Correctional Officer at SVSP and is being sued in his individual and official capacity for the violation of Plaintiff's civil and Constitutional rights.

4

19.     Defendants Salazar, Raul Machuca, Powell, Adrian Machuca and Sanudo are referred to collectively as the "Assault Defendants." The Assault Defendants directed or participated in the use of excessive force during the June 11, 2010, cell extraction of Parrish, and in the subsequent efforts to conceal the truth about that event. The Assault Defendants also conspired with others named herein to retaliate against Parrish for the filing of this lawsuit.

### 3.     Defendant Haldeman

20.     Defendant Maurice Emanuel Haldeman is a Correctional Officer at SVSP and is being sued in his individual and official capacity for the violation of Parrish's civil and Constitutional rights.  Haldeman participated in illegal actions to intimidate and retaliate against Parrish for bringing this lawsuit and testifying in federal court.  In particular, Haldeman conspired with some or all of the Assault Defendants and the non-party co-conspirators to accuse Parrish falsely of possession of a weapon, which resulted in the unjustified conviction and punishment of Parrish.

### 4.     The Non-Party Co-Conspirators

21.     Certain other non-party individuals, referred to collectively as the "non-party co-conspirators," participated in illegal actions to harass, threaten and intimidate Parrish in order to prevent him from testifying in this case and to retaliate against him for seeking to protect his constitutional rights in federal court. These individuals, all of whom are friends or relatives of one or more of the Assault Defendants, are employed as correctional officers at SVSP:

a.     Martin O. Valenzuela is a Correctional Sergeant at SVSP.

b.     Arturo Villalobos is a Correctional Officer at SVSP.

c.     Roberto Correa Machuca is a Correctional Officer at SVSP.  He is the brother of Defendants Raul Machuca and Adrian Machuca.

22.     Some or all of the Assault Defendants, Defendant Haldeman and the non-party co-conspirators were members of the Green Wall gang at SVSP.  Parrish believes that their membership in the Green Wall gang will be proven after a reasonable opportunity for further investigation or discovery.  Beginning at a point presently unknown to Parrish, the Assault

5

1   Defendants, Defendant Haldeman, and the non-party co-conspirators engaged in a common course

2   of conduct and acted in concert with, or as agents for, each other to perform the acts averred herein

3   for the purpose of denying Parrish his rights guaranteed to him by the United States Constitution.

**IV.   FACTS**

**A.   The Massive Overcrowding in CDCR Facilities, Including SVSP**

6        23.   CDCR is the largest prison system in the United States, rivaling in size and numbers

7   the prison systems of most other countries. *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK

8   JFM P, Order and Opinion of Three Judge Court (E.D. Cal. and N.D. Cal., August 4, 2009) (the

9   "Order") at 39.  On December 31, 2008, CDCR had a total adult institution population of 171,085

10   in thirty-seven facilities throughout the state.  Because the CDCR system was designed to hold

11   about 84,000 inmates, the inmate population was more than 200 percent of design capacity at the

12   end of 2008.  In its 2009 Order, the court determined California's inmate population had far

13   exceeded the design capacity of the state's prison system for over twenty-five years.  (Order at 42.)

14        24.   The consequences of housing far more inmates than the design capacity of the

15   facilities were severe.  In its 2009 Order, the court noted that the severe overcrowding in the CDCR

16   system has caused substantial risk to the health and safety of correctional staff and inmates.  The

17   court also found that overcrowding adversely affected every aspect of prison administration and

18   created numerous barriers to the provision of medical and mental health care that met minimal

19   constitutional standards.  (Order at 57.)  Among the many impacts of overcrowding was the

20   increased difficulty in monitoring the performance of correctional officers to ensure each complied

21   with his or her legal obligations to inmates, including the obligation to refrain from any cruel,

22   corporal or unusual punishment and to report truthfully any use of force on an inmate.

**B.   Parrish's Assignment to SVSP**

24        25.   SVSP also had a history of housing inmate populations far in excess of design

25   capacity. By December 31, 2008, SVSP had 4,014 inmates, or more than 168 percent of design

26   capacity.

27        26.   In 2006, Parrish was assigned to SVSP.  In 2007, Parrish was diagnosed with severe

28   mental disorders and became a participant in CDCR's Mental Health Services Delivery System.

6

Parrish was placed in the Department of Mental Health at SVSP and assigned to the EOP level of care.  Inmates assigned to the EOP are those who suffer severe mental disorders and who are unable to function in the general prison population but do not require twenty-four hour nursing care or inpatient hospitalization.  Parrish was also prescribed several psychiatric drugs in the course of treatment.

27.     On August 5, 2009, Parrish was transferred to the California Medical Facility, an institution operated by CDCR to provide specialized medical and psychiatric treatment for inmates beyond that generally available at other institutions, including SVSP.  While there, Parrish was diagnosed with major depressive disorder, which was severe and recurrent, with psychotic features. This is a mental disorder that requires professional treatment rather than physical punishment. He was therefore prescribed psychiatric medications to treat his severe depression and psychosis.  On October 21, 2009, Parrish returned to SVSP and was assigned to Cellblock D-2.

**C.     The Green Wall Gang**

28.     In January 2003, the Office of Inspector General ("OIG") in the California Department of Justice, after a full investigation, found that a group of correctional officers at SVSP had formed an alliance that they called the "Green Wall," after the color of their uniforms.  The Green Wall gang also defaced SVSP property with markings of "GW" and "7/23", which stood for the seventh (G) and twenty-third (W) letters of the alphabet.  The OIG determined that the Green Wall gang engaged in numerous incidents of excessive force against inmates, the vandalizing of property, retaliation and intimidation against inmates and staff, and fostering a Code of Silence to conceal their wrongdoings in violation of CDCR regulations.

29.     In February 2004, the acting Director of Corrections of the CDCR issued a memorandum to all employees announcing a "zero tolerance regarding the 'Code of Silence.'" The Director noted that the Code of Silence operates to conceal wrongdoing and arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those who report

**FIRST AMENDED COMPLAINT**                                     **CASE NO. 11-CV-01438-LHK**

1 wrongdoing.  According to the Director, the Code of Silence also fostered a failure to act when
2 there is an ethical and professional obligation to do so.[1]

3       30.    At about the same time, the Warden at SVSP issued a Corrective Action Plan to
4 address the existence of the Green Wall gang at the prison and the prevalence of the Code of
5 Silence among staff.  The Warden described the Green Wall gang as a subculture among
6 correctional officers at SVSP.  According to the Warden:

> 7 "Inherent in this subculture is a belief that they are duty bound to each other to
> 8 protect each other's interests at all costs from any attack.  Their sense of loyalty
> 9 will therefore go to protecting a fellow member from any disciplinary action or
> 10 criminal action by either passively or actively concealing evidence, withholding
> 11 evidence, or outright dishonesty with investigators.  The Code of Silence is an
> 12 integral part of what is created by the Green Wall subculture."

13       31.    Despite efforts by CDCR and the SVSP Warden to eradicate it, the Green Wall gang
14 and its accompanying Code of Silence remained active at SVSP throughout the time Parrish was
15 incarcerated there.  In particular, the Green Wall gang was active in Cellblock D-2 when Parrish
16 was housed there.

17 **D.    The Unjustified and Gratuitous Beating of Parrish**

18       32.    On February 24, 2010, Parrish was accused of a non-violent act of indecent
19 exposure while housed in Cellblock D-2.  As a result of the indecent exposure charge, correctional
20 officers covered Parrish's cell windows with yellow paper, as provided in CDCR regulations.  In
21 April, 2010, Parrish was found guilty of the violation and assessed sixty-one days forfeiture of
22 behavioral credits.  In May 2010, after a hearing to remove the window coverings from Parrish's
23 cell, Defendant Raul Machuca confronted Parrish with threats of retribution and physical violence
24 as a result of the finding that Parrish had engaged in indecent exposure.  In particular, Raul
25 Machuca stated that if Parrish were ever charged with indecent exposure again, Parrish would "feel
26
27 ───────────────────
28 [1]   See Exhibit A, attached.

1  the Green Wall." This was an admission by Raul Machuca that he was a member of the Green

2  Wall gang.

3      33.    During this period, EOP personnel continued to diagnose Parrish as suffering from

4  severe depression. At about 10 am on June 11, 2010, Parrish was charged with indecent exposure

5  against an SVSP licensed clinical social worker who reported the incident to Defendant Raul

6  Machuca. Raul Machuca reported the allegation to Defendant Salazar, who was the Correctional

7  Lieutenant on duty at the time. Shortly after the indecent exposure incident Defendant Powell

8  came by Parrish's cell and told Parrish "Sergeant Machuca said he already told you next time you

9  expose yourself, you're getting fucked up, so you got an ass-kicking coming." This was an

10 admission by Powell that he was also a member of the Green Wall gang or acted in agreement with

11 Raul Machuca.

12     34.    Powell's reminder of the threat previously made by Defendant Raul Machuca

13 caused Parrish distress and fear, and triggered suicidal thoughts in him. At about 10:30 am, in

14 response to the charge of indecent exposure, Defendants Powell and Adrian Machuca came to

15 Parrish's cell and covered the cell windows with yellow paper, except for a small section at the top

16 of the windows so the guards could see into the cell. As a direct result of threats of physical harm

17 made by Defendants Raul Machuca and Powell, Parrish reported feeling suicidal and in need of

18 crisis care and informed Defendants Powell and Adrian Machuca that he had swallowed metal.

19 While Powell and Adrian Machuca were covering Parrish's windows from the outside, Parrish had

20 also covered the inside of his cell windows with paper. Powell and Adrian Machuca reported

21 Parrish's suicide threat and his covering of cell windows to Raul Machuca, who in turn reported

22 these events to Defendant Salazar. Salazar was the Incident Commander on duty at the time.

23     35.    When Psychiatric Technician ("PT") Kevin Munn made the usual medication

24 delivery to Parrish at about 12 noon, Parrish once again reported feeling suicidal and that he had

25 swallowed metal. Defendant Powell accompanied PT Munn during Munn's noon-time delivery of

26 medication to Parrish. In response to Parrish's report of suicidal feelings, Powell told Munn, in a

27 voice loud enough for Parrish to hear, that "we'll take care of it."

28

9

36.     At about 1 pm, Defendants Raul Machuca and Powell approached Parrish's cell 126 in Cellblock D-2, looked into the cell at Parrish through the food port and ordered Parrish to uncover his windows and submit to being handcuffed.  Parrish, who stood in the middle of his cell plainly visible to Machuca and Powell, was too frightened to submit to handcuffing.  He told Raul Machuca and Powell that he wanted to speak to a Captain in person and stated repeatedly that he did not want to have Defendants "kick his ass."  Defendant Raul Machuca responded, "I told you this would happen next time you played with your dick, so let's go or we're coming in there." Raul Machuca then gathered Defendants Powell, Adrian Machuca, and Sanudo for the purpose of a forcible cell extraction and received authorization for the cell extraction from Salazar.  Powell, who is over six feet tall and weighs 240 pounds, was assigned to carry a 4.5 foot plastic shield to lead the forcible entry of Parrish's cell.

37.     At about 1:07 pm, the cell door opened.  As Parrish stood paralyzed by fear, Defendant Powell charged into the cell with his plastic shield in front of him.  Powell rammed the shield against the left side of Parrish's face and upper body, immediately knocking the wind from Parrish's 5'8", 140 pound body and sending Parrish crashing to the cell floor.  Raul Machuca, Adrian Machuca and Sanudo followed Powell into the cell.

38.     Defendant Powell slammed the shield down onto Parrish's fallen body, followed by Powell's body, and secured Parrish face down in handcuffs while another correctional officer placed metal leg restraints on Parrish's ankles.  Defendant Raul Machuca began speaking to his brother, Defendant Adrian Machuca, in Spanish as Parrish lay on his stomach in a defenseless prone position, completely handcuffed with Defendant Powell using his body weight to force Parrish's head and upper torso to the floor, making it hard for Parrish to breathe.

39.     Defendant Raul Machuca then pulled down the back of Parrish's underwear shorts and discharged Oleoresin Capsicum ("O.C.") pepper spray into Parrish's anus and testicles, and also sprayed Parrish in the face. O.C. pepper spray is a debilitating chemical agent whose use on EOP inmates must be approved by a licensed health care professional.  SVSP Use of Force Policy ("SVSP Policy") at 3.  In addition, an inmate exposed to O.C. pepper spray risks asphyxia, which

**First Amended Complaint**                                                                 **Case No. 11-CV-01438-LHK**

1  could lead to death, and must not be held down on the stomach after being sprayed and handcuffed.

2  SVSP Policy at 7.  The Assault Defendants knowingly violated these policies.

3       40.    While Raul Machuca was illegally exposing Parrish to O.C. pepper spray, Adrian

4  Machuca and Sanudo began kicking Parrish repeatedly in the legs, lower back, and buttocks.  After

5  discharging the pepper spray, Raul Machuca joined in the beating and kicking of Parrish.  Powell

6  hit Parrish with a closed fist in the back of his head about five times, while saying "Stupid nigger,

7  stupid nigger."  While kicking Parrish, Raul Machuca also yelled at him "Fucking pervert" over

8  and over.  After about three or four minutes of Parrish being punched and kicked, Raul Machuca

9  told his brother Adrian in English to "leave" because "you shouldn't be here."

10      41.    Both Machuca brothers then exited the cell and were replaced by three other

11 correctional officers.  Powell then pushed Parrish's face into the cell floor seconds before removing

12 himself from Parrish's back, causing Parrish's lower lip to cut into his teeth.

13      42.    Parrish was escorted to a holding cell in Cellblock D for evaluation of injuries by

14 PT Munn.  After consulting with Defendant Salazar, who was also present, Defendant Raul

15 Machuca instructed Munn not to record all the injuries.  Although Parrish also had injuries to his

16 head, back, arms and legs, and was covered in O.C. pepper spray, Munn (acting on instructions of

17 Salazar and Raul Machuca) recorded only a few of the injuries to Parrish's face.  Also acting on

18 these Defendants' instructions, and despite Parrish's repeated requests for a shower, Munn did not

19 authorize a full decontamination to treat Parrish's exposure to pepper spray, which is the required

20 procedure for dealing with exposure to this toxic chemical.  15 C.C.R. §3268(l)("Any inmate

21 exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as

22 practical.")

23      43.    As a direct result of the unjustified and gratuitous use of force against Parrish by the

24 Assault Defendants, Parrish suffered the following injuries:

25           (a)    Parrish's left eye was swollen shut;

26           (b)    Parrish was cut above his left eye;

27           (c)    Parrish's bottom lip was cut and swollen and his head, hands, back and legs

28           suffered cuts and bruises;

11

(d)     Parrish's migraine headaches intensified and became more frequent;

(e)     Toxic O.C. pepper spray covered his entire body, including his face, anus and testicles and his skin, eyes and lungs were burned.  Parrish was not allowed to shower for seven days after exposure to the pepper spray; and

(f)     Parrish suffered severe mental, emotional and psychological distress from the Assault Defendants' acts, which were meant to terrorize.

44.     In addition, while Parrish was contained in the holding cell, the Assault Defendants (or those acting on their behalf) destroyed much of Parrish's personal property, including his television, personal photographs, shower shoes and stamps.

**E.     The Assault Defendants' Concerted Efforts to Conceal Their Wrongdoing**

45.     On or about June 11, 2010, each of the Assault Defendants entered into an agreement to conceal their individual responsibility for their illegal beating of Parrish in violation of his Constitutional rights prohibiting cruel and unusual punishment.  To accomplish the object of this conspiracy, the Assault Defendants, acting individually or in concert with each other, determined to cover up their unconstitutional use of excessive force by filing materially false and misleading reports in violation of CDCR and SVSP regulations requiring the truthful and accurate reporting of use of force incidents.

46.     It is CDCR and SVSP policy to accomplish custodial and correctional functions with minimal reliance on the use of force.  SVSP Policy at Introduction. CDCR policy permits the controlled use of force when the inmate's presence or conduct poses a threat to safety or security and the inmate is in a controlled area, such as a cell (also known as "calculated use of force"). 15 C.C.R. §3268 (a) (5).  Cell extractions are the most common form of calculated use of force. SVSP Policy at 2.  SVSP Policy requires that all calculated use of force be videotaped.  SVSP Policy at 12.

47.     When a cell extraction involves an inmate housed in EOP units (such as Parrish) a licensed health care employee designated by the Health Care Manager shall be consulted who will decide whether to proceed with the extraction or whether some alternative method should be used.

12

1   SVSP Policy at 3.  Mental health staff is also required to provide intervention prior to the

2   preplanned cell extraction of any EOP inmate. SVSP Policy at 10.

3        48.     It is fundamental that all use of force incidents by CDCR staff be reported

4   accurately and in writing.  15 C.C.R. §3268.1(a).  Among other things, the written report shall

5   include a truthful description of the events, witnesses and type of force used, including whether

6   chemical agents were employed.  Each participant or witness must prepare a separate report and, to

7   endure accuracy, staff members should not cooperate with each other in the preparation of the

8   report.

9        49.     The Assault Defendants agreed with each other to violate these requirements in

10  reporting the events of Parrish's cell extraction by employing a series of steps designed to conceal

11  the truth and their own wrongdoing.  In particular:

12           (a)     The Assault Defendants did not videotape Parrish's cell extraction in order

13       to avoid a record that would have documented their excessive use of force;

14           (b)     The Assault Defendants did not involve a health care professional in the

15       decision to go forward with the cell extraction, who would have intervened to cool down

16       the situation or would have determined that there were less violent alternatives available to

17       their excessive use of force;

18           (c)     The Assault Defendants cooperated in the preparation of their reports on the

19       cell extraction in order to coordinate their stories and conceal their wrongdoing;

20           (d)     The Assault Defendants filed materially false and misleading reports on the

21       cell extraction which failed to disclose (among other things):  (1) the participation of Adrian

22       Machuca; (2) that the use of force was calculated and preplanned and not an emergency; (3)

23       that Parrish was not hiding behind a bed sheet as claimed in their reports, but was in the

24       middle of the cell and at all times visible; (4) that Parrish did not charge at Powell as the

25       reports claimed;  (5) that the Assault Defendants hurled racist slurs and vulgar insults at

26       Parrish during the cell extraction, and (6) that the discharge of O.C. pepper spray was not

27       "accidental" as claimed by the Assault Defendants, but was an intentionally violent act

28       designed to punish Parrish without justification.

13

1   50.   The Assault Defendants' unjustified excessive use of force caused severe

2   psychological trauma in Parrish, increasing his thoughts of depression and exacerbating his mood

3   swings.  As a result, Parrish suffered from depression and suicidal thoughts, and was placed on

4   suicide watch.  On July 14, 2010, Parrish was transferred to the Department of Mental Health at

5   CMF in Vacaville, California.  CMF confirmed Parrish's diagnosis of major depressive disorder,

6   which was severe and recurrent, accompanied by psychotic features.  He was prescribed psychiatric

7   drugs to reduce his psychosis and stabilize his mood swings.

8   51.   On August 23, 2010, shortly after his return to SVSP from CMF, Parrish submitted

9   a staff complaint on CDCR Inmate Appeal Form 602 alleging that he was the victim of an

10  excessive use of force in violation of his Constitutional rights in the June 11, 2010, cell extraction.

11  In his Form 602, Parrish requested an investigation of the June 11 cell extraction, a reprimand of

12  the person authorizing the cell extraction and an apology from the correctional officers involved in

13  the incident.  Under CDCR regulations, such allegations of employee misconduct must be

14  investigated objectively, with a truthful written report prepared and reviewed by appropriate

15  parties.  SVSP Policy at 28.

16  52.   To ensure the objective and unbiased investigation of claims by inmates of

17  excessive use of force by correctional staff, CDCR regulations require that

18      (a)   Correctional staff involved in the claimed excessive use of force not be

19  involved in conducting the investigation (15 C.C.R. § 3084.7(d)(1));

20      (b)   A video recording of the inmate be made when the inmate has made an

21  allegation of excessive use of force (15 C.C.R. § 3268.1(d)(2));

22      (c)   All interviews of witnesses should be tape recorded whenever possible. If tape

23  recording is not possible, complete written notes of each interview should be made and

24  preserved (SVSP Policy at 31);

25      (d)   A list should be made of all points to be discussed in each interview and of all

26  questions to be asked of each witness (SVSP Policy at 31); and

27      (e)   All evidence and information gathered in the investigation should be

28  safeguarded and preserved (SVSP Policy at 32).

14

53.     As a continuation of their concerted efforts to cover up their own wrongdoing, the Assault Defendants arranged for a corrupted investigation of Parrish's claims of excessive use of force that resulted in a biased and falsified report exonerating their illegal conduct.  A principal component of the Assault Defendants' cover up was the wholesale violation of CDCR and SVSP regulations in investigating Parrish's claims.  In particular:

(a)     Salazar arranged to be appointed the chief investigator of Parrish's claims, despite Parrish's allegations that Salazar was intimately involved in the excessive use of force by authorizing the cell extraction and by instructing Raul Machuca to limit the reporting of Parrish's injuries.  Parrish specifically objected to Salazar conducting the investigation, but Salazar ignored the objection;

(b)     Parrish's interview alleging the excessive use of force was not videotaped or otherwise recorded;

(c)     No interviews of witnesses were recorded by audio or video tape;

(d)     No written notes of witness interviews were preserved;

(e)     No records of interview points or interview questions were preserved; and

(f)     Other evidence material to the investigation was destroyed.

54.     Salazar issued his report on October 7, 2010.  The report concluded that Defendants Raul Machuca, Powell and Sanudo (among others) acted appropriately and did not engage in any misconduct.  The report is materially false and misleading, and omits to state material facts, in at least the following ways:

(a)     The report fails to disclose that the cell extraction was conducted in violation of CDCR and SVSP regulations;

(b)     The report fails to mention the involvement of Defendant Adrian Machuca;

(c)     The report fails to disclose Salazar's role in the cell extraction, including that he authorized the cell extraction and that he directed Raul Machuca to limit the reporting of injuries suffered by Parrish;

(d)     The report fails to disclose that the cell extraction and resulting use of force was preplanned in retribution for Parrish's act of indecent exposure;

(e)     The report fails to disclose that certain Assault Defendants hurled racist slurs and vulgar insults at Parrish during the cell extraction;

(f)     The report fails to disclose that the Assault Defendants coordinated their written reports of the cell extraction in order to conceal their wrongdoing; and

(g)     The report fails to disclose that Salazar did not follow CDCR and SVSP regulations in investigating and preparing the report, as more fully described in Paragraph 52.

**F.     Defendant Haldeman and the Non-Party Co-Conspirators Enter the Conspiracy**

55.     On March 11, 2011, Parrish filed the complaint in this action, which Parrish verified under oath. On December 5, 2011, the Assault Defendants (and other named defendants) moved for summary judgment dismissing all claims against them.  At a point in time presently unknown, but no later than March 1, 2012, Defendant Haldeman, each of the non-party co-conspirators and some or all of the Assault Defendants entered into an agreement with the objective to convince Parrish to abandon his lawsuit, refuse to testify and forego using the federal court to redress his legitimate grievances.  This conspiracy was carried out through a campaign of intimidation and harassment against Parrish by, among other things, threats of retaliation, unjustified denial of inmate services, improperly invasive searches of Parrish's person, destruction of his personal property and the filing of false disciplinary charges against Parrish.

56.     On or about March 1, 2012, non-party co-conspirators Valenzuela and Villalobos, known as close personal friends of Defendant Raul Machuca, informed Parrish that his request to move to a new cell was denied.  Valenzuela stated that Parrish would not be moved because he had filed this lawsuit.  At about the same time Villalobos stated to Parrish, "You keep filing lawsuits, you have problems."  Villalobos also threatened that Parrish could be the subject of fabricated disciplinary charges if he did not abandon his lawsuit, including the bringing of a false charge of cell phone use.  The possession or use of a cell phone by an inmate at SVSP is a serious disciplinary charge.  By this conduct, Valenzuela and Villalobos evidenced their agreement to conspire with the Assault Defendants to pressure Parrish into dismissing his lawsuit, refusing to testify and abandoning redress of his legitimate grievances in federal court.

57.     On March 27, and April 13, 2012, Parrish filed statements with the Court under oath in opposition to the motion for summary judgment.  These filings triggered or resulted in additional acts of harassment by the non-party co-conspirators to stop Parrish from further attending court or testifying in this matter.  On April 6, 2012,  non-party co-conspirator Roberto Machuca falsely alleged that Parrish was in possession of a cell phone.  Valenzuela, Roberto Machuca's superior, acting in response to a charge that Valenzuela knew to be false, directed that Parrish be subjected to a degrading unclothed strip and cavity search for the cell phone in a public area of Cellblock D that was witnessed by other inmates.  Valenzuela said to Parrish, "You wouldn't be having this problem if you didn't have this lawsuit."  Under the direction of Valenzuela and Roberto Machuca, correctional officers also conducted a search of Parrish's cell.  No cell phone was found.  During the cell search, Roberto Machuca said to Parrish, "Stop your litigation and your program here will run smooth."  By this conduct Roberto Machuca evidenced, and Valenzuela confirmed, their memberships in the conspiracy to pressure Parrish into dismissing his lawsuit, refusing to testify and abandoning redress of his legitimate grievances in federal court.

58.     On August 28, 2012, the Court granted summary judgment for Defendants Solis, Muniz and Hedrick, but denied summary judgment as to Defendants Salazar, Raul Machuca, Powell, Adrian Machuca and Sanudo.  The Court ordered the parties to attend a settlement conference at Solano State Prison on November 28, 2012, and granted a writ of habeas corpus to permit Parrish to attend the conference in person.  On November 20, 2012, Parrish left SVSP for the settlement conference.  In accordance with SVSP policy, on that day correctional officers thoroughly searched Parrish before he was allowed to leave.  The correctional staff also searched and made a complete written inventory of all of Parrish's possessions, which were then placed in storage in a SVSP warehouse.

59.     Parrish attended the settlement conference on November 28, but the parties were unable to settle their dispute.  At all times during his stay at Solano State Prison, Parrish was housed in a secure cell and under guard.  During the settlement conference, Parrish was shackled at the wrists and under guard.

**FIRST AMENDED COMPLAINT**                                                      **CASE NO. 11-CV-01438-LHK**

1    60.    Parrish returned to SVSP on December 5, 2012, under armed guard.  At about 3:30

2    pm that day, Parrish was in the Receiving and Releasing area of SVSP, where Defendant

3    Haldeman was on duty.  Parrish's personal possessions, which had been warehoused at SVSP since

4    November 18, were being returned to him through the Receiving and Releasing area.  While

5    Haldeman was conducting a search of Parrish's warehoused possessions, Parrish was discussing

6    his lawsuit with another inmate.  Haldeman told Parrish to "shut the fuck up." Haldeman also said

7    to Parrish, "Nobody wants to hear about your fucking civil lawsuit against my officers.  You

8    should have settled you stupid fuck."  Haldeman was standing a few feet away from Parrish when

9    he spoke these words.

10    61.    Parrish then saw Haldeman, attempting to act surreptitiously, take an object from his

11    left pants' pocket and place it inside one of the envelopes in a box of Parrish's legal materials.

12    After a few moments, Haldeman then looked in the envelope and dramatically pulled out a half

13    pair of scissors, saying "This is what I was looking for."  By this conduct, Haldeman evidenced his

14    membership in the conspiracy to pressure Parrish into dismissing his lawsuit, refusing to testify and

15    abandoning redress of his legitimate grievances in federal court.

16    62.    Although the half pair of scissors was not his and was not placed in the legal

17    materials by him, Parrish was immediately sent to an isolation cell and charged with possession of

18    a weapon, which is a very serious charge to bring against an inmate.  On January 10, 2013, despite

19    Parrish's statement that the half pair of scissors was not his and was planted by Haldeman, Parrish

20    was found guilty of the charge and was assessed 360 days forfeiture of behavioral credits.

21    63.    On April 10, 2013, Parrish was transferred to CSP-Sacramento.  Parrish has been

22    placed in the Security Housing Unit, a form of solitary confinement, for an indefinite period of

23    time as the result of his conviction at SVSP for possession of a weapon.

24

25

26

27

28

18

**FIRST CLAIM FOR RELIEF**

(For Violation of Parrish's Eighth and Fourteenth Amendment Right Protected by 42 U.S.C. §1983 Against the Assault Defendants)

64.     Parrish repeats and realleges the allegations contained in paragraphs 1 to 63 as if set forth fully herein.

65.     Section 1983, a part of the Civil Rights Act of 1871, prohibits any person acting under color of state law to deprive any United States citizen of the rights, privileges and immunities secured by the Constitution of the United States.  Among the rights protected by this section is the right under the Eighth and Fourteenth Amendments to the Constitution to be free from the infliction of cruel and unusual punishments.

66.     Defendants Salazar, Raul Machuca, Powell, Adrian Machuca, and Sanudo, as employees of the State of California and CDCR, acted under the color of state law in engaging in the activities described above to deprive Parrish, a citizen of the United States, of the rights secured to him by the Eighth and Fourteenth Amendments to the Constitution to be free from the infliction of cruel and unusual punishments.

.     67.     As an inmate under the control and protection of the CDCR, Parrish has the right to be free from the gratuitous use of physical punishment unnecessary to maintain or restore discipline.  In beating Parrish during the June 11, 2010, cell extraction, the Assault Defendants used force maliciously and sadistically to cause harm to Parrish, and not as part of a good-faith effort to maintain or restore discipline.

68.     The Assault Defendants slammed, beat, kicked, punched and pepper-sprayed Parrish, and used racist slurs and vulgar insults, solely in retaliation for his act of indecent exposure.  The Assault Defendants gratuitously used excessive force and their official authority to punish Parrish through the unnecessary and wanton infliction of pain that was intentional, unjustified, brutal and offensive to human dignity.  These actions were all done in violation of the prohibition against cruel and unusual punishment in the Eighth and Fourteenth Amendments to the Constitution.

69.     As the result of the conduct of the Assault Defendants, Parrish has been damaged in an amount to be determined by the Court, but which in any event is not less than $20,000 per individual defendant named in this claim for relief.  In addition, Parrish is entitled to receive punitive damages in an amount to be determined by the Court because the Assault Defendants' conduct was oppressive, fraudulent and malicious, or was undertaken in reckless disregard of Parrish's Constitutional rights.  Parrish is further entitled to appropriate equitable relief to enjoin permanently similar conduct by the Assault Defendants in the future that violate Parrish's Constitutional rights.

## SECOND CLAIM FOR RELIEF

(For Violation of Parrish's First and Fourteenth Amendment Right Protected by 42 U.S.C. §1983 Against the Assault Defendants and Defendant Haldeman)

70.     Parrish repeats and realleges the allegations contained in paragraphs 1 to 63 and 65 to 69 as if set forth fully herein.

71.     Section 1983, a part of the Civil Rights Act of 1871, prohibits any person acting under color of state law to deprive any United States citizen of the rights, privileges and immunities secured by the Constitution of the United States.  Among the rights protected by this section is the right under the First and Fourteenth Amendments to the Constitution to petition the government for a redress of grievances.

72.     Defendants Salazar, Raul Machuca, Powell, Adrian Machuca, Sanudo and Haldeman, as employees of the State of California and CDCR, acted under the color of state law in engaging in the activities described above to deprive Parrish, a citizen of the United States, of the rights secured to him by the First and Fourteenth Amendments of the Constitution to petition the government for a redress of grievances.

.     73.     Pursuant to his First and Fourteenth Amendment right to petition the government for a redress of grievances, Parrish is entitled to file this lawsuit to redress the violation of his Constitutional rights and the injuries he has suffered by the Assault Defendants.  As more fully described above, the Assault Defendants violated Parrish's First and Fourteenth Amendment right

20

1   to petition for redress of grievances by agreeing to cover up their malicious and sadistic assault of

2   Parrish.  They accomplished this goal through the filing of materially false and misleading reports

3   in violation of CDCR and SVSP regulations.

4          74.      Acting individually and in concert with the Assault Defendants, Haldeman violated

5   Parrish's First and Fourteenth Amendment right to petition for redress of grievances by framing

6   Parrish for the false charge of possession of a weapon in retaliation for Parrish bringing his action

7   against the Assault Defendants.  Haldeman planted a half pair of scissors in Parrish's legal

8   materials to commence falsely a disciplinary proceeding against Parrish that eventually resulted in

9   Parrish's indefinite confinement in the Security Housing Unit.  Haldeman undertook this deliberate

10  and fraudulent scheme (i) to intimidate and coerce Parrish into abandoning this lawsuit filed in

11  federal court against the Assault Defendants and (ii) to interfere with Parrish's First and Fourteenth

12  Amendment right to petition the government for a redress of grievances.  By this conduct,

13  Haldeman has denied, substantially impaired and impeded Parrish's Constitutional right to petition

14  for redress of grievances.

15         75.      As the result of the conduct of the Assault Defendants and Haldeman, Parrish has

16  been damaged in an amount to be determined by the Court, but which in any event is not less than

17  $20,000 per individual defendant named in this claim for relief.  In addition, Parrish is entitled to

18  receive punitive damages in an amount to be determined by the Court because the conduct of the

19  Assault Defendants and Haldeman was oppressive, fraudulent and malicious, or was undertaken in

20  reckless disregard of Parrish's Constitutional rights.  Parrish is further entitled to appropriate

21  equitable relief to enjoin permanently similar conduct by the Assault Defendants and Haldeman in

22  the future that violate Parrish's Constitutional rights.

23

24                          **THIRD CLAIM FOR RELIEF**

25              (For Violation of 42 U.S.C. §1985(2) Against the Assault Defendants and
                Defendant Haldeman)

26

27         76.      Parrish repeats and realleges the allegations contained in paragraphs 1 to 63, 65 to

28  69 and 71 to 75 as if set forth fully herein.

21

77.      Section 1985(2), a part of the Civil Rights Act of 1871, forbids any two or more persons in any state from conspiring to deter by force, intimidation or threat any party from attending any court of the United States or from testifying fully, freely and truthfully in such court proceedings. Section 1985(2) also forbids two or more persons from conspiring to injure any party on account of his having so attended or testified in any United States court.

78.      Each of the Assault Defendants, Defendant Haldeman, and non-parties Valenzuela, Villalobos and Roberto Machuca, acting together pursuant to an agreement among themselves, conspired with each other to use force, intimidation and threats to deter Parrish from attending this Court and from testifying fully, freely and truthfully in this action. In addition, these Defendants and the non-party co-conspirators, acting together pursuant to an agreement among themselves, conspired to injure Parrish in his person or property by reason of Parrish (1) having attended this Court through the filing of his lawsuit and (2) having testified in this Court in the course of his lawsuit. As more fully set forth above, to accomplish the object of this conspiracy, these Defendants and the non-party co-conspirators maliciously denied inmate services to Parrish, improperly undertook unjustified searches of Parrish's person and possessions, illegally destroyed Parrish's personal property, and falsely accused Parrish of possession of a weapon, which resulted in his unjustified conviction and punishment.

79.      As a result, Parrish has suffered damages in an amount to be determined by the Court but which is not less than $20,000 per individual defendant named in this claim for relief. In addition, Parrish is entitled to receive punitive damages in an amount to be determined by the Court because these Defendants' conduct was oppressive, fraudulent and malicious, or was undertaken in reckless disregard of Parrish's Constitutional rights. Parrish is further entitled to appropriate equitable relief to enjoin permanently similar conduct by the Assault defendants and Haldeman in the future to retaliate against Parrish for the exercise of his Constitutional rights.

WHEREFORE, Parrish prays for judgment against Defendants Salazar, Raul Machuca, Powell, Adrian Machuca, Sanudo, and Haldeman, jointly and severally where appropriate, as follows:

22

I.   **FOR THE FIRST AND SECOND CLAIMS FOR RELIEF**

A.   Compensatory damages in an amount to be determined by the Court, but not less than $20,000 per Defendant:

B.   Punitive damages in an amount to be determined by the Court; and

C.   An Order permanently enjoining the Assault Defendants and Haldeman from any further conduct in violation of Parrish's rights under the Eighth Amendment or to deter Parrish from the exercise of his First Amendment rights.

II.   **FOR THE THIRD CLAIM FOR RELIEF**

A.   Compensatory damages in an amount to be determined by the Court, but not less than $20,000 per Defendant;

B.   Punitive damages in an amount to be determined by the Court; and

C.   An Order permanently enjoining Defendants from taking any action to threaten, intimidate or punish Parrish for the exercise of his Constitutional rights.

III.   **FOR ALL CLAIMS FOR RELIEF**

A.   The costs of this action, together with reasonable attorneys' fees; and

B.   Any such further relief as this Court may deem just and proper.

DATED:   November 21, 2013


James E. Lyons
Christine Hung
Tatyana Shmygol
Kerry S. Kumabe

Attorneys for Plaintiff KAHEAL PARRISH
525 University Ave., Suite 1400
Palo Alto, CA 94301

23