1  JAMES E. LYONS (State Bar. No. 112582)
   James.Lyons@probonolaw.com
2  CHRISTINE HUNG (State Bar No. 266364)
   Christine.Hung@probonolaw.com
3  TATYANA SHMYGOL (State Bar No. 267104)
   Tatyana.Shmygol@probonolaw.com
4  525 University Avenue, Suite 1400
   Palo Alto, California 94301
5  Telephone: (650) 470-4500
   Facsimile:  (650) 470-4570
6
   Attorneys for Plaintiff
7  KAHEAL PARRISH

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11 KAHEAL PARRISH,                    )  CASE NO.: 11-CV-01438-LHK
                                      )
12              Plaintiff,            )  PLAINTIFF'S MEMORANDUM OF
                                      )  POINTS AND AUTHORITIES IN
13      v.                            )  OPPOSITION TO DEFENDANTS'
                                      )  MOTION TO DISMISS UNDER RULE
14 A. SOLIS; R. HEDRICK; W. MUNIZ;    )  12(b)
   GREGORIO R. SALAZAR; RAUL          )
15 MACHUCA, JR.; BRANDON C. POWELL;   )
   ADRIAN MACHUCA; JASON A. SANUDO;   )
16 MAURICE EMANUEL HALDEMAN,          )  Date:        May 15, 2014
                                      )  Time:        1:30 p.m.
17              Defendants.           )  Courtroom:   8, 4th Floor
                                      )  Judge:       The Honorable Lucy H. Koh
18                                    )
                                      )
19                                    )
                                      )
20                                    )
                                      )
21 _____ )

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          CASE NO. 11-CV-01438-LHK

1

# **TABLE OF CONTENTS**

2
**Page**

3
ISSUES PRESENTED.................................................................................................1

4
PRELIMINARY STATEMENT ................................................................................1

5
STATEMENT OF FACTS .........................................................................................4

6
          A.      The Plaintiff. ...........................................................................4

7
          B.      The Green Wall Gang and the Code of Silence...........................5

8
          C.      The Defendants. .......................................................................6

9
          D.      The Defendants' Illegal and Unconstitutional Acts...................7

10
ARGUMENT .............................................................................................................13

11
     I.      Legal Standard On Defendants' Motion To Dismiss for Failure to State a
              Claim...........................................................................................13

12
     II.     Defendants Violated Parrish's First Amendment Right to Petition for
              Redress of Grievances as Alleged in His Second Claim. .......................14

13

14
          A.      Parrish States a Claim for Violating his First Amendment Right to
                Petition. ....................................................................................15

15
          B.      Parrish States a First Amendment Retaliation Claim Against All
                Defendants. ..............................................................................16

16

17
          C.      Parrish Fully Complied with the PLRA by Exhausting All Available
                Administrative Remedies Before Filing his Second Claim ......................19

18
CONCLUSION...........................................................................................................25

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

**Cases**

3

*Abbott v. Tootell,*
4      2012 WL 5497999 at *3 ................................................................4, 14, 17, 19

5   *Ashcroft v. Iqbal,*
        129 S. Ct. 1937, 1949 (2009)..................................................................... 14
6

*Bell Atlantic Corp. v. Twombly,*
7      550 U.S. 544, 570 (2007)........................................................................... 14

8   *Brodheim v. Cry,*
        584 F.3d 1262, 1271 (9th Cir. 2009) ......................................................... 18
9

*Cherer v. Williams,*
10     No. EDCV 08-771-AG, 2010 WL 7697474 (C.D. Cal. July 27, 2010) at *6............................. 14

11  *Espinal v. Goord,*
        558 F.3d 119, 128 (2d Cir. 2009)............................................................... 20
12

*Fehl v. Manhattan Ins. Grp.,*
13     11-CV-02688-LHK, 2012 WL 1831584 (N.D. Cal. May 18, 2012) ......................... 18

14  *Frederick v. Cal. Dep't of Corrections and Rehabilitation,*
        08-CV-2222 MMC(PR), 2012 WL 1143836, at *6 (N.D. Cal. Mar. 30, 2012) ................. 20, 21
15

*Griffin v. Arpaio,*
        557 F.3d 1117, 1120 (9th Cir. 2009) ......................................................... 20

16  *Hemphill v. State of New York,*
        380 F.3d 680, 688 (2d Cir. 2004)............................................................... 23
17

*Hudson v. McMillian*
18      503 U.S. 1, 9 (1992)..........................................................................2, 14, 20

19  *Huskey v. City of San Jose,*
        2014 F.3d 893, 899-900 (9th Cir. 2000) ..................................................... 17
20

*Jones v. Bock,*
21     549 U.S. 199, 218 (2007)......................................................... 19, 21, 22

22  *Kaba v. Stepp,*
        458 F.3d 678, 685-6 (7th Cir.2006) ........................................................... 23

23  *Michalek v. Lunsford,*
        No. 4:11CV00685–JMM–JTR, 2012 WL 1454162, *3-4 (E.D. Ark. Apr. 5, 2012)................. 24
24

*Norwood v. Robinson,*
25     436 Fed. Appx. 799, 800 (9th Cir. June 8, 2011) ......................................... 19

26  *OSU Student Alliance v. Ray,*
        699 F.3d 1053, 1078 (9th Cir. 2012) ......................................................... 14
27

*Rhodes v. Robinson,*
28     408 F.3d 559, 567 (9th Cir. 2005) ..................................................15, 16, 18

ii

*Richardson v. Reyes,*
   Case No. 12–cv–00310–JST, 2013 WL 5800769 at *5 (N.D. Cal. Oct. 28, 2013) ............... 17, 25

*Ryland v. Shapiro,*
   708 F.2d 967, 971-72 (5th Cir. 1983) ..................................................................... 15

*Sapp v. Kimbrell,*
   623 F.3d 813, 823 (9th Cir. 2010) ......................................................................... 22

*Solid 21, Inc. v. Breitling USA, Inc.,*
   512 F. App'x 685, 687 (9th Cir. 2013) ................................................................. 18

*Sorrano's Gasco, Inc. v. Morgan,*
   874 F.2d 1310, 1314-15 (9th Cir. 1989) .............................................................. 17

*Tuckel v. Grover,*
   660 F.3d 1249, 1252-53 (10th Cir. 2011) ........................................................... 23

*Turner v. Burnside,*
   541 F.3d 1077, 1083 (11th Cir. 2008) ....................................................21, 23, 24

*Usher v. City of Los Angeles,*
   828 F.2d 556, 561 (9th Cir. 1987) ......................................................................... 14

*Watkins v. City of Oakland,*
   145 F.3d 1087, 1093 (9th Cir. 1998) ..................................................................... 16

**Statutes**

42 U.S.C. § 1983 .......................................................................................................... 1, 15

42 U.S.C. § 1997e (a) ................................................................................................1, 19, 22

42 U.S.C. § 1985(2) ........................................................................................................... 1

Cal. Penal Code § 141(b) ................................................................................................ 19

**Rules**

Fed. R. Civ. P. 15(a) (2) ................................................................................................... 25

Fed. R. Civ.P. 12(f) .......................................................................................................... 20

**Regulations**

15 C.C.R. § 3084.2(a) ................................................................................................. 19, 22

15 C.C.R. § 3084.9(i)(3)(B)(1) ......................................................................................... 21

15 C.C.R. § 3268(l) ............................................................................................................. 9

15 C.C.R. § 3268.1(a) ....................................................................................................... 10

15 C.C.R. § 3268.1(d) (1) ................................................................................................... 9

15 C.C.R. § 3268.1(d) (2) ................................................................................................. 11

15 C.C.R.§ 3084.5(e) ........................................................................................................ 10

**ISSUES PRESENTED**

1.  Whether in his Second Claim for Relief in his First Amended and Supplemental Complaint ("FAC") Plaintiff Kaheal Parrish has stated a retaliation claim under 42 U.S.C. § 1983 against Defendants[1] for violation of his rights under the First Amendment of the U.S. Constitution.

2. Whether Parrish has exhausted all available administrative remedies before bringing the Second  Claim for Relief in conformance with Section 1997e (a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a).

**PRELIMINARY STATEMENT**

Plaintiff Kaheal Parrish, an inmate of the California Department of Corrections and Rehabilitation ("CDCR") formerly housed at Salinas Valley State Prison ("SVSP"), respectfully submits this memorandum of points and authorities in opposition to the motion by Defendants to dismiss some of the allegations in this prisoner civil rights action. First, Defendants incorrectly argue that the FAC does not state "retaliation" claims against them in the Second Claim for Relief in the FAC. Second, Defendants argue that Parrish failed to exhaust SVSP's grievance procedures regarding his Second claim before filing his FAC on November 21, 2013. Although Section 1997e (a) of the PLRA requires prisoners bringing an action with respect to prison conditions to exhaust "such administrative remedies as are available," Parrish in fact complied strictly with this requirement. The Court should deny Defendants' motion.

Parrish has brought this action for damages and injunctive relief to redress Defendants' systematic and continuous violations of his constitutional and civil rights in violation of 42 U.S.C. §§ 1983 and 1985(2), and the First and Eighth Amendments to the Constitution. Defendants are correctional officers at SVSP and members of a violent vigilante group of prison guards known as the Green Wall gang. While at SVSP, Parrish was diagnosed with a severe mental disorder that left him functionally impaired and was receiving therapeutic treatment for his mental condition.  On June 11, 2010, Parrish committed a non-violent act of indecent exposure. Defendant Raul Machuca had warned Parrish earlier that if he committed such an act, Parrish would "feel the Green Wall."

---

[1]  "Defendants" are Gregorio Salazar, Raul Machuca, Brandon Powell, Adrian Machuca, Jason Sanudo and Maurice Haldeman.

1

1    Carrying through on their threat, and acting without justification in violation of CDCR and SVSP

2    regulations and Parrish's civil and constitutional rights, Defendants Raul Machuca, Powell, Adrian

3    Machuca and Sanudo stormed into Parrish's cell later that day, beat, punched and kicked Parrish

4    for several minutes, and sprayed Parrish with a chemical disabling agent, all the while shouting

5    racist slurs and vulgar insults. Defendant Salazar authorized this vicious retaliatory attack.

6    Defendants' real purpose in this unjustified assault was to inflict physical and emotional injuries on

7    Parrish maliciously and sadistically. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (the Eighth

8    Amendment prohibition against cruel and unusual punishment is violated "[w]hen prison officials

9    maliciously and sadistically use force to cause harm").

10        Defendants then embarked on a campaign of retaliation and cover-up to conceal the scope

11   of their crimes. Raul Machuca, Powell, Adrian Machuca and Sanudo filed materially untruthful

12   reports in an effort to justify their attack on Parrish, falsely claiming that they acted in an

13   emergency to stop Parrish from committing suicide. They also lied in their reports to conceal the

14   participation of Adrian Machuca and falsely claimed that Parrish's exposure to debilitating pepper

15   spray was "accidental." Defendant Salazar arranged to "investigate" Parrish's grievance arising

16   from the cell assault, although CDCR and SVSP regulations forbid Salazar from playing such a

17   role because he authorized the assault. Predictably, Salazar concluded in his final report that

18   Parrish's grievance lacked merit.

19        Defendants then conspired with others to retaliate against Parrish for bringing this lawsuit

20   in March 2011. Defendants and their co-conspirators harassed and threatened Parrish by, among

21   other things, bringing false charges of rules violations, seizing and destroying his personal property

22   and subjecting him to a humiliating strip and cavity search without justification. Defendant

23   Haldeman, acting in concert with the other Defendants, then framed Parrish on a false weapon

24   possession charge by planting a half-pair of scissors in Parrish's legal materials. Parrish was

25   convicted of this charge through the false testimony of Haldeman and has been placed in

26   Administrative Segregation (a form of solitary confinement) for the past year.

27        In the FAC, Parrish alleges three claims for relief: (i) the First Claim alleging that

28   Defendants (except Haldeman) violated Section 1983 and the Eighth Amendment by the gratuitous

2

1   use of excessive force in the June 11, 2010, cell extraction; (ii) the Second Claim alleging that

2   Defendants violated Section 1983 and the First Amendment right to petition for redress of

3   grievances by covering up their malicious attack through falsified documents and a corrupted

4   investigation and by punishing Parrish through the false weapon possession charge; and (iii) the

5   Third Claim alleging Defendants violated Section 1985(2) by conspiring among themselves and

6   with others to deter Parrish by force, intimidation or threat from pursuing this action and from

7   testifying truthfully in this action.  Defendants do not move to dismiss the First Claim or Third

8   Claim but argue that the Second Claim is deficient for failing to plead "retaliation" adequately and

9   for failing to exhaust administrative remedies.

10      Defendants' motion to dismiss fails as a matter of law for these reasons:

11      1. The Second Claim properly alleges that Defendants violated Parrish's First Amendment

12   right to petition for redress of grievances. The Second Claim for Relief alleges that Defendants

13   acted to deprive Parrish of his right under the First Amendment to petition for redress of grievances

14   by agreeing to cover up their malicious and sadistic assault of him through filing materially false

15   and misleading reports and by framing Parrish on a false weapon charge to punish and deter him

16   for bringing this action. These allegations state a proper claim under Section 1983. Defendants'

17   argument that Parrish fails to plead a retaliation claim is meritless since Defendants' illegal conduct

18   chilled Parrish's exercise of his First Amendment rights. Defendants' assertion that they had a non-

19   retaliatory purpose for their conduct raises a fact issue that cannot be resolved on this motion. In

20   addition, despite their assertions to the contrary, Defendants' mendacious, deceitful and (with

21   respect to Haldeman) criminal conduct cannot serve any legitimate correctional goal.

22      2. Parrish exhausted all available administrative remedies before bringing the Second Claim

23   for Relief. Defendants misread the FAC in claiming that Parrish failed to exhaust administrative

24   remedies with respect to (i) Defendants' destruction of his property; (ii) their conduct of a corrupt

25   investigation of his grievance; (iii) their denial of his request for a cell move; (iv) their degrading

26   strip and cell search of Parrish; and (v) their conspiracy to deter Parrish from pursuing this lawsuit.

27   Parrish does not bring separate claims or seek separate relief for the conduct described in item (i)

28   through (iv), but cites it in support of his claim that Defendants acted maliciously and sadistically

3

1  in their unjustified beating of him on June 11, 2010. These actions also are evidence that

2  Defendants acted to chill Parrish's First Amendment rights to complain about prison conditions

3  and to file this lawsuit. Parrish is not required to exhaust administrative remedies for "actions" he

4  has not brought.

5         In any event, Defendants' motion shows that Parrish has adequately exhausted

6  administrative remedies for the claims he brings. In grievance No. SVSP-10-02229, which is the

7  basis of his excessive use of force claim in his First Claim for Relief, Parrish specifically alleged

8  that Defendants (except Haldeman) "falsif[ied] documents" and "fabricated documents," which

9  together with the property destruction support his claim that Defendants acted maliciously and

10  sadistically. Parrish did not appeal denial of his cell move because SVSP later granted it. Parrish

11  was excused from exhausting his grievance regarding his body and cell search because Defendants'

12  threats of physical violence and his medical condition made exhaustion unavailable. Finally,

13  Parrish had no obligation to exhaust a separate grievance alleging a conspiracy among Defendants

14  because: (i) Parrish alleged in grievance No. SVSP-10-02229 that defendants acted together and in

15  grievance No. SVSP-13-0340 that Haldeman framed Parrish on the false weapon charge in

16  retaliation for filing this lawsuit in order to assist the other Defendants and (ii) Parrish has no

17  obligation to grieve specific legal theories.

18                              **STATEMENT OF FACTS[2]**

19  **A.      The Plaintiff.**

20         Plaintiff Parrish is an inmate in the prison system operated by CDCR currently housed at

21  California State Prison-Sacramento. From 2006 until May 2013, Parrish was mainly incarcerated at

22  SVSP and was placed in the Enhanced Outpatient Program ("EOP"), a part of the Mental Health

23  Services Delivery System ("MHSDS"), which provides mental health care to treat mental disorders

24  that afflict inmates. He was assigned to Cellblock D-2, where EOP inmates are housed. (FAC ¶¶ 9,

25

26     [2]    The facts are taken from the well-pleaded allegation of the FAC, which for the purposes of this

27  motion must be accepted as true. *Abbott v. Tootell*, No. C-11-0183 LHK, 2012 WL 5497999 at
*2 (N.D. Cal., Nov. 13, 2012). The facts are also taken from the Parrish Declaration ("Parrish

28  Decl.") submitted herewith and the documents submitted with Defendants' motion. Cited SVSP
and CDCR regulations are found in the Appendix of Authorities ("App. Ex." 1-4).

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**        **CASE NO. 11-CV-01438-LHK**

26-27.) Professional staff at SVSP diagnosed Parrish with major depressive disorder, recurrent and severe with psychotic features. (*Id.* ¶ 27.)

**B.     The Green Wall Gang and the Code of Silence.**

In January 2004, the Office of Inspector General ("OIG") in the California Department of Justice, after a full investigation, found that a group of correctional officers at SVSP had formed an alliance that they called the "Green Wall," after the color of their uniforms. The Green Wall gang was found to have also defaced SVSP property with markings of "GW" and "7/23," which stood for the seventh (G) and twenty-third (W) letters of the alphabet. The OIG determined that the Green Wall gang engaged in numerous incidents of excessive force against inmates, the vandalizing of property, retaliation and intimidation against inmates and staff, and fostering a Code of Silence to conceal their wrongdoings in violation of CDCR regulations. (FAC ¶ 28.)

In February 2004, the acting Director of Corrections of the CDCR issued a memorandum to all employees announcing a "zero tolerance regarding the 'Code of Silence.'" (FAC Ex. A.) The Director noted that the Code of Silence operates to conceal wrongdoing by correctional staff and arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those who report wrongdoing. The Code of Silence also is an integral part of Green Wall gang culture. (*Id.* ¶¶ 29-30.)

Parrish became aware of the Green Wall gang while he was housed in Cellblock D-2. Parrish heard, witnessed and experienced actions of the Green Wall gang, including the use of physical attacks and threats to intimidate SVSP inmates and to retaliate against inmates for perceived rule violations.  (Parrish Decl. ¶ 4.) The Green Wall gang  enforces the Code of Silence through threats and intimidation . (*Id.*)

Green Wall gang members in Cellblock D  stand out by their actions and are well known to Parrish and other inmates. For example, Green Wall gang members' uniforms  are  a darker green than those of other guards at SVSP. Green Wall members also wear a black or dark green T-shirt under their uniforms. Green Wall members also wear gloves as an act of intimidation, because the guards put on gloves in anticipation of physical violence. In addition, many gang members boast about their membership in the Green Wall, including several of the Defendants. Parrish has also

1    observed Green Wall gang members use a particular hug and handshake when greeting each other,

2    which they do not use with guards who are not Green Wall gang members. (Parrish Decl. ¶ 5.)

3    **C.    The Defendants.**

4         Defendant Salazar is a Correctional Lieutenant at SVSP and has a reputation of being a

5    Green Wall gang member. (Parrish Decl. ¶ 8.) Defendant Raul Machuca is a Correctional Sergeant

6    at SVSP and was the direct operational superior of Defendants Powell, Adrian Machuca and

7    Sanudo, who are Correctional Officers at SVSP and at the relevant time were assigned to Cellblock

8    D. Defendant Haldeman is a SVSP Correctional Officers assigned to the Receiving and Releasing

9    area. (FAC ¶¶ 14-18, 20, 60.)

10        Raul Machuca is infamous for threatening and intimidating other MHSDS inmates at SVSP,

11   as well as authorizing Powell to impose excessive force on MHSDS inmates. Parrish believes Raul

12   Machuca and his brothers Adrian and Roberto Machuca to be part of the Green Wall gang because

13   of their reputation, their actions, and the way they dress with the darker green uniform and dark T-

14   shirt. They also wear gloves from time to time in order to intimidate inmates in the fashion of the

15   Green Wall gang. In May 2010, Raul Machuca stated to Mr. Parrish that if he were charged again

16   with indecent exposure, he would "feel the Green Wall." (Parrish Decl. ¶ 10.)

17        Defendant Powell is reputed to be a Green Wall gang member. Powell dresses with the

18   distinctive darker green uniform and dark T-shirt those gang members wear. Powell also wears

19   gloves to intimidate inmates. Before his cell extraction, Parrish heard Powell brag in Cellblock D

20   that he is part of the Green Wall. During Powell's beating of an inmate in a cell next door to

21   Parrish, he heard Powell say, "That is how the Green Wall do it." (Parrish Decl. ¶ 11.) Powell has

22   used demeaning racial slurs toward Parrish, which was done in the presence of Raul Machuca,

23   Adrian Machuca and Sanudo. None made any effort to stop or correct Powell. (*Id.* ¶ 12.) [3]

24

25

26   _____

27   [3]   The use of racial slurs and vulgar language is a violation of CDCR regulations. Department
     Operations Manual ("DOM") § 33030.19 (D)(1) (prohibiting discourtesy toward inmates) (15-
28   16) (prohibiting insults pertaining to, or harassment based on, the race or color of an inmate).
     (App. Ex. 1.)

6

1    Sanudo has the reputation of being a member of the Green Wall gang, evidenced by the  darker

2    green uniform and T-shirt he has worn in Cellblock D-2.  Sanudo also wears gloves  to intimidate

3    inmates. Parrish has witnessed Sanudo and Powell beat inmates. (Parrish Decl. ¶ 13.)

4    **D.      The Defendants' Illegal and Unconstitutional Acts.**

5               **1.      The Malicious and Sadistic Cell Extraction.**

6              On February 24, 2010, Parrish was accused of a non-violent act of indecent exposure while

7    housed in Cellblock D-2. Because of the indecent exposure charge, correctional officers covered

8    Parrish's cell windows with yellow paper, as provided in CDCR regulations. DOM § 52100.4.

9    (App. Ex. 1.) In April 2010, Parrish was convicted of the violation. In May 2010, after a hearing to

10   remove the window coverings, Raul Machuca threatened  Parrish by stating that if he were ever

11   charged with indecent exposure again, Parrish would "feel the Green Wall." (FAC ¶ 32.)

12             Despite his medical treatments and drug therapy, Parrish continued to suffer from severe

13   depression. At about 10 a.m. on June 11, 2010, a SVSP social worker charged Parrish with

14   indecent exposure and reported the incident to Raul Machuca. Raul Machuca reported the

15   allegation to Salazar, who was the Correctional Lieutenant on duty at the time. Shortly after the

16   indecent exposure incident, Powell told Parrish, "Sergeant Machuca said he already told you next

17   time you expose yourself, you're getting fucked up, so you got an ass-kicking coming." (FAC ¶ 33.)

18   At about 10:30 a.m., in response to the charge of indecent exposure, Powell and Adrian Machuca

19   covered Parrish's cell windows with yellow paper. As a direct result of threats of physical harm

20   made by Raul Machuca and Powell, Parrish reported feeling suicidal and in need of crisis care. He

21   informed Powell that he had swallowed metal. Powell and Adrian Machuca reported Parrish's

22   suicide threat to Raul Machuca, who in turn reported these events to Salazar. (*Id*. ¶ 34.)

23             At 12 noon, Psychiatric Technician ("PT") Kevin Munn, accompanied by Powell, made the

24   usual medication delivery to Parrish and Parrish once again reported feeling suicidal and that he

25   had swallowed metal. In response to Parrish's report of suicidal feelings, Powell told Munn, in a

26   voice loud enough for Parrish to hear, that "we'll take care of it." (FAC ¶ 35.)

27             At about 1 p.m., Raul Machuca and Powell approached Parrish's cell (D2-126), looked into

28   the cell through the food port and ordered Parrish to uncover his windows and submit to being

                                                                          7

1    handcuffed. (Parrish had earlier covered his cell windows with tissue paper from the inside.)

2    Parrish, who stood in the middle of his cell plainly visible to Raul Machuca and Powell, told

3    Machuca and Powell that he wanted to speak to a Captain and stated that he did not want to have

4    Defendants "kick his ass." Raul Machuca responded, "I told you this would happen next time you

5    played with your dick, so let's go or we're coming in there." Raul Machuca then gathered Powell,

6    Adrian Machuca and Sanudo for a forcible cell extraction and received authorization for the cell

7    extraction from Salazar. Powell, who is over six feet tall and weighs 240 pounds, was assigned to

8    carry a 4.5-foot plastic shield to lead the forcible entry of Parrish's cell. (FAC ¶ 34, 36.)

9          At 1:07 p.m. – more than 2 ½ hours after Powell first told Raul Machuca of Parrish's

10   suicide threat – Powell, Raul Machuca, Adrian Machuca and Sanudo entered the cell and

11   proceeded to attack Parrish. Powell, who outweighs Parrish by 100 pounds, slammed into him with

12   the riot shield and forced him to the ground face down on his stomach, knocking the wind from

13   Parrish and making it hard for him to breathe. (FAC ¶¶ 36-38.) After Parrish was put in restraints,

14   Raul Machuca pulled down the back of Parrish's underwear shorts and discharged Oleoresin

15   Capsicum ("O.C.") pepper spray into his anus and testicles, and sprayed Parrish in the face. (FAC

16   ¶¶ 37-39.) O.C. pepper spray is a debilitating chemical agent whose use on EOP inmates must be

17   approved by a licensed health care professional. SVSP Use of Force Policy ("SVSP Policy") at 3

18   (App. Ex. 2). In addition, an inmate exposed to O.C. pepper spray risks asphyxia, which could lead

19   to death, and must not be held down on the stomach after being sprayed and handcuffed. *Id.* at 7.

20         While Raul Machuca was illegally exposing Parrish to O.C. pepper spray, Adrian Machuca

21   and Sanudo began kicking Parrish repeatedly in the legs, lower back and buttocks. After

22   discharging the pepper spray, Raul Machuca joined in the beating and kicking of Parrish. Powell

23   hit Parrish with a closed fist in the back of his head about five times, while saying "Stupid nigger,

24   stupid nigger." While kicking Parrish, Raul Machuca also yelled at him "Fucking pervert" over and

25   over. After about three or four minutes of Parrish being punched and kicked, Raul Machuca told

26   his brother Adrian to "leave" because "you shouldn't be here." Both Machuca brothers then exited

27   the cell and other correctional officers replaced them. Powell then pushed Parrish's face into the

28   cell floor, causing Parrish's lower lip to cut into his teeth. (FAC ¶¶ 40-41.)

1    Officers then escorted Parrish to a holding cell in Cellblock D for evaluation of injuries by

2  PT Munn. After consulting with Defendant Salazar, who was also present, Raul Machuca

3  instructed Munn not to record all the injuries. Although Parrish also had injuries to his head, back,

4  arms and legs, and was covered in O.C. pepper spray, Munn (acting on instructions of Salazar and

5  Raul Machuca) recorded only a few of the injuries to Parrish's face. Munn also did not authorize a

6  full decontamination to treat Parrish's exposure to pepper spray as required by CDCR regulations.

7  15 C.C.R. § 3268(l)("Any person exposed to a chemical agent shall be afforded an opportunity to

8  decontaminate as soon as practical."). (App. Ex. 4.) (FAC ¶ 42.)

9    Because of the gratuitous violence of the cell extraction and the failure to permit adequate

10 decontamination, Parrish's injuries were significant. They included: (a) Parrish's left eye was later

11 swollen shut; (b) he was cut above his left eye; (c) his bottom lip was cut and swollen and his head,

12 hands, back and legs suffered cuts and bruises; (d) his migraine headaches intensified and became

13 more frequent; (e) toxic O.C. pepper spray covered his entire body, including his face, anus and

14 testicles and his skin, eyes and lungs were burned; (f) he was not allowed to shower for seven days

15 after exposure to the pepper spray; and (g) he suffered severe mental, emotional and psychological

16 distress from the Defendants' acts, which were meant to terrorize. (FAC ¶ 43.) While Parrish was

17 in the holding cell, Defendants (or those acting on their behalf) destroyed much of his personal

18 property, including his television, personal photographs, shower shoes and stamps. (*Id*.¶ 44.)

19             **2.       Defendants Act to Cover-up Their Crimes.**

20    The Defendants' plan to conceal their wrongdoing and violations of CDCR policy began

21 with their false effort to characterize the cell extraction as an "emergency" and to fail to videotape

22 the event. Under CDCR policy, all preplanned cell extractions must be videotaped. *See* 15 C.C.R. §

23 3268.1(d) (1). (App. Ex. 4.) On the other hand, an emergency cell extraction, which "involves the

24 imminent loss of life or great bodily injury," need not be videotaped. SVSP Policy at 3. (App. Ex.

25 2.) Although Defendants were only a few minutes from Parrish's cell, they waited as much as 2½

26 hours to extract Parrish from his cell after learning of his suicide ideation. This extraordinary delay

27 shows that Defendants did not consider it an emergency under SVSP regulations. Defendants

28 merely wanted to avoid the objective record of a videotape. (FAC ¶ 49.)

1    In order to avoid the risk that professional staff would prevent Defendants' unjustified use
2    of force against Parrish, Defendants did not consult a health care professional before assaulting
3    Parrish in his cell. When a cell extraction involves an inmate housed in EOP units (such as Parrish),
4    a licensed health care employee designated by the Health Care Manager must be consulted who
5    will decide whether to proceed with the extraction or whether some alternative method should be
6    used. SVSP Policy at 3. (App. Ex. 2.) Defendants did not do this. (FAC ¶¶ 47, 49.)

7    Defendants then conspired to falsify their reports of the incident. It is fundamental that the
8    participants must report all use of force incidents by CDCR staff accurately and in writing.
9    15 C.C.R. § 3268.1(a). (App. Ex. 4.) Among other things, the written report shall include a truthful
10   description of the events, witnesses and type of force used, including whether chemical agents were
11   employed. Each participant or witness must prepare a separate report and, to ensure accuracy, staff
12   members should not cooperate with each other in the preparation of the report. SVSP Policy at 23-
13   4. (App. Ex. 2.) Defendants violated these rules in numerous ways.

14   First, Raul Machuca, Powell and Sanudo cooperated in preparing their reports in order to
15   coordinate their stories and conceal their wrongdoing. Second, Defendants concealed the role of
16   Adrian Machuca. Finally, Defendants falsified their reports.[4] (FAC ¶ 49.)

17   Defendants' effort to cover up their illegal use of force continued with the so-called
18   "investigation" of Parrish's inmate grievance, which he filed on August 23, 2010. (FAC ¶ 51.)
19   Although Salazar approved the cell extraction and prepared a report concluding that Defendants
20   acted appropriately, he  conducted the investigation of  Parrish's grievance in violation of 15
21   C.C.R.§ 3084.5(e) (2009) (staff involved in the claimed excessive use of force cannot be involved
22   in the investigation). (App. Ex. 3.) Salazar also violated numerous other regulations designed to
23   ensure an unbiased and objective investigation by (a) failing to videotape his interview of  Parrish

24

25   [4]   Defendants failed to disclose in their reports that (1) the use of force was calculated and
     preplanned and not an emergency; (2) Parrish was not hiding behind a bed sheet as claimed in
26   their reports, but was in the middle of the cell and at all times visible; (3) Parrish did not charge
     at Powell as the reports claimed; (4) Defendants hurled racist slurs and vulgar insults at Parrish
27   during the cell extraction, and (5) the discharge of O.C. pepper spray was not "accidental" as
     claimed by Defendants, but was an intentionally violent act designed to punish Parrish without
28   justification. (FAC ¶ 49.)

10

1  because he had made an allegation of excessive use of force (15 C.C.R. § 3268.1(d) (2)) (App. Ex.

2  4); (b) failing to tape record witness interviews whenever possible or, if not possible, to make and

3  preserve complete written notes of each interview (SVSP Policy at 31) (App. Ex. 2); (c) failing to

4  make a list of  points  discussed in each interview and of  questions  asked of each witness (*Id.*);

5  and (d) failing to safeguard and preserve all evidence and information gathered in the investigation

6  (*Id.* at 32). Salazar's confidential final report on his investigation exonerated the Defendants'

7  conduct, despite the fact that it is riddled with falsehoods and material omissions. (FAC ¶¶ 52-54.)

8              **3.      Defendants Threaten and Harass Parrish for Bringing this Action.**

9        On March 11, 2011, Parrish filed his complaint in this action and on December 5, 2011,

10  Defendants Raul Machuca, Powell, Adrian Machuca and Sanudo (and others) moved for summary

11  judgment. Defendants and others conspiring with them determined to threaten and harass Parrish

12  into abandoning his claims. (FAC ¶ 55.)

13        On or about March 1, 2012, Sgt. Martin Valenzuela and correctional officer Arturo

14  Villalobos, both SVSP staff members and close  friends of Raul Machuca reputed to be Green Wall

15  gang members, informed Parrish that his request to move to a new cell was denied. Valenzuela

16  stated that Parrish would not be moved because he had filed this lawsuit.[5] At about the same time

17  Villalobos stated to Parrish, "You keep filing lawsuits, you have problems." Villalobos also

18  threatened that Parrish could be the subject of fabricated disciplinary charges if he did not abandon

19  his lawsuit, including the bringing of a false charge of cell phone use.  The possession or use of a

20  cell phone by an inmate at SVSP is a serious disciplinary charge. (FAC ¶ 56-57; Parrish Decl. ¶ 15-

21  16.) Valenzuela and Villalobos acted in retaliation for Parrish filing this action. (FAC ¶55.)

22        At about the time Parrish was filing papers in opposition to Defendants' motion for

23  summary judgment, on April 6, 2012, Roberto Machuca (a SVSP officer and the brother of Raul

24  and Adrian Machuca) falsely claimed that Parrish was in possession of a cell phone. Valenzuela,

25  knowing Roberto Machuca's charge to be false, ordered that Parrish be the subject of a degrading

26  and embarrassing strip and cavity search in front of other Cellblock D inmates. After the search

27  _____

28  [5]   Parrish's request for a new cell move was later granted. (Parrish Decl. ¶ 17.)

1    (which found nothing), Valenzuela told Parrish, "You wouldn't be having this problem if you

2    didn't have this lawsuit." Roberto Machuca also directed a search of Parrish's cell, which resulted

3    in the cell being ransacked and his property being thrown all around, but did not find a cell phone.

4    During the search, Roberto Machuca said to  Parrish, "Stop your litigation and your program will

5    run smooth." (FAC ¶ 57; Parrish Decl. ¶ 18.) These acts were also in retaliation for this lawsuit.

6    (FAC ¶ 57.)

7           Parrish filed a grievance against Roberto Machuca for the false allegation of cell phone

8    possession. Medina Decl. Ex. G (SVSP-12-01449). In his grievance, Parrish stated that Roberto

9    Machuca had targeted Parrish "with this dishonest ruse . . . in retaliation for a pending lawsuit

10   against both his brothers." (*Id.*) Parrish did not exhaust his administrative remedies regarding this

11   grievance because he was afraid of further acts of retaliation and violence from Roberto.  (Parrish

12   Decl. ¶ 21.)  Parrish also was unable to pursue this grievance further because he no longer had

13   access to an inmate who wrote the original grievance for him and his medication made Parrish

14   physically and emotionally unable to complete the grievance process on his own. (*Id. ¶* 22-23.)

15          Defendants, acting through Roberto Machuca, Valenzuela and Villalobos, continued a

16   campaign of harassment and intimidation against Parrish for bringing this lawsuit. Roberto

17   confiscated Parrish's legal file and refused to return it with the words, "you're not getting shit; now

18   go do your paperwork." (Parrish Decl.¶ 19.) Roberto, Valenzuela and other Green Wall members,

19   lined up and laughing as if they were at a sporting event, were also present when Parrish was the

20   victim of a physical attack by another inmate. Parrish was frightened that the guards would permit

21   his attacker to be near enough to him that it would result in him being stabbed. (*Id.* ¶ 24.)

22          **4.      Haldeman Frames Mr. Parrish on a False Weapon Charge.**

23          After the Court denied summary judgment for Defendants (Haldeman was not then a party),

24   Parrish left SVSP to attend a settlement conference as ordered by the Court. Before SVSP allowed

25   Parrish to leave, officer Medina conducted a thorough search of Parrish and his property and

26   prepared an inventory of his possessions, noting nothing unusual. Medina placed the possessions in

27   a SVSP warehouse for storage until Parrish's return. (FAC ¶ 58; Parrish Decl. ¶ 25.)

28

1   While Parrish was attending the settlement conference, Defendants hatched a plot to frame

2   him on the very serious charge of possession of a weapon. When Parrish returned to SVSP on

3   December 5, 2012, he went to the Receiving and Releasing, where Haldeman was on duty and

4   where Parrish was to receive the return of his stored possessions. Haldeman is reputed to be  a

5   Green Wall gang member. (*Id.* ¶ 25; FAC ¶ 60.)

6   While Haldeman was conducting a search of Parrish's possessions, Parrish told a nearby

7   inmate that he had refused to settle his case at the settlement conference. Haldeman overheard

8   Parrish and told him to "shut the fuck up." He then said to Mr. Parrish, "Nobody wants to hear

9   about your fucking civil lawsuit against my officers. You should have settled you stupid fuck."

10  Parrish then saw Haldeman take an object from his left pants pocket in a sneaky manner and place

11  inside one of the envelopes in a box containing Parrish's legal files. After a few moments,

12  Haldeman looked in the envelope and dramatically pulled out a half pair of scissors, saying, "This

13  is what I was looking for." Parrish was charged with possession of a weapon and sent to an

14  isolation cell. (FAC ¶¶ 60-62; Parrish Decl. ¶¶ 26-27.)

15  Possession of a weapon is a very serious rules violation by an inmate. Parrish did not have

16  any half pair of scissors in his files or in his possession and the scissors "found" by Haldeman did

17  not belong to Parrish. He had never seen those scissors before and did not put them in his files.

18  Haldeman lied about finding those scissors in Parrish's file and planted those scissors in retaliation

19  for the filing of this lawsuit and Parrish's refusal to settle. Despite his complete denials of

20  Haldeman's fabricated charge, Mr. Parrish was convicted of the charge of possession of a weapon.

21  Parrish's transfer to CSP-Sacramento in April 2013, prison officials used this conviction to

22  sentence Mr. Parrish indefinitely to Administrative Segregation (a form of solitary confinement).

23  (FAC ¶¶ 61-63.) Parrish is still in Administrative Segregation. (Parrish Decl. ¶ 27.)

24                                      **ARGUMENT**

25  **I.   Legal Standard On Defendants' Motion To Dismiss for Failure to State a Claim.**

26  For purposes of evaluating Defendants' Rule 12 (b) (6) motion to dismiss the FAC's

27  Second claim, the Court "must presume all factual allegations of the complaint to be true and draw

28  all reasonable inferences in favor of the nonmoving party." *Usher v. City of L. A.*, 828 F.2d 556,

13

1    561 (9th Cir. 1987). A complaint must plead "enough facts to state a claim to relief that is plausible

2    on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1960 (2009) (citation omitted). A claim is plausible

3    "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

4    that the defendant is liable for the misconduct alleged." *Id.* at 1949; *see also OSU Student Alliance*

5    *v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (a plausible claim means "something more than a sheer

6    possibility, but less than a probability") (internal quotation marks and citations omitted). "All that

7    matters . . . is that the allegations" create an inference that "nudge[s]" the claim "across the line

8    from conceivable to plausible." *Id.* (citation omitted).

9         Defendants' Rule 12 (b) motion to dismiss for failure to exhaust administrative remedies

10   permits the Court to look beyond the pleadings and to decide disputed issues of fact. *Abbott v.*

11   *Tootell,* 2012 WL 5497999 at *3. However, Defendants have the burden to prove failure to exhaust

12   and where Defendants do not "squarely refute" Plaintiffs' showing regarding exhaustion,

13   Defendants fail to meet their burden.  *Cherer v. Williams,* No. EDCV 08-771-AG, 2010 WL

14   7697474  at *6 (C.D. Cal. July 27, 2010)(citations omitted).

15   **II.      Parrish's Second Claim Is Properly Alleged.**[6]

16        Parrish has properly stated his Second Claim for violation of his First and Fourteenth

17   Amendment right to petition government for a redress of grievances. Defendants' submission and

18   Parrish's Declaration demonstrate that Parrish has adequately exhausted remedies for the claims he

19   brings. Moreover, Parrish was excused from exhausting his grievances regarding the body and cell

20   search because Defendants' threats of physical violence and Parrish's medical condition made

21   exhaustion unavailable.

22

23

---

24   [6]   Defendants do not move to dismiss Parrish's First Claim under Section 1983 alleging
25   excessive use of force or his Third Claim under Section 1985(2) alleging a conspiracy to
     deter and intimidate Parrish from attending this Court and testifying in this action. This Court
     has previously upheld Parrish's First Claim in its Order of August 27, 2012 denying certain
26   Defendants' motion for summary judgment (Dkt. 79 at 6) ("Accepting Plaintiff's account as
     true, as this Court must, an inference could certainly be drawn that these Defendants
27   assaulted Plaintiff for the purpose of causing harm.") *See Hudson v. McMillian,* 503 U.S. at 5
     ("[T]he unnecessary and wanton infliction of pain [by prison officials] constitutes cruel and
28   unusual punishment forbidden by the Eighth Amendment.") Defendants do not even mention
     Section 1985(2) in their motion to dismiss.

14

1        **A.**       **Parrish States a Claim for Violating his First Amendment Right to Petition.**

2        42 U.S.C. § 1983 prohibits any person acting under color of state law to deprive any United

3 State citizen of the rights, privileges and immunities secured by the Constitution. In his Second

4 Claim for Relief, Parrish alleges that Defendants, as employees of the State of California, acted

5 under color of state law to deprive Parris, a U.S. citizen, of his rights under the First Amendment

6 petition the government for a redress of grievances. Defendants Salazar, Raul Machuca, Powell,

7 Adrian Machuca and Sanudo violated Parrish's First Amendment right to petition by acting to

8 cover up their malicious and sadistic assault of Parrish through the filing of materially false and

9 misleading reports in violation of CDCR and SVSP regulations. (FAC ¶¶ 72-3.) Acting

10 individually and in concert with the other Defendants, Haldeman violated Parrish's First

11 Amendment right to petition by framing Parrish for the false charge of possession of a weapon in

12 retaliation for Parrish bringing this action against the other Defendants. (FAC ¶ 74.)

13        These allegations state a claim under Section 1983. The Ninth Circuit has recognized that

14 "[o]f fundamental import to prisoners are their First Amendment rights to file prison grievances,

15 and to pursue civil rights litigation in the courts." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir.

16 2005) (internal quotation marks and citations omitted). Actions interfering with that right

17 "necessarily undermine those protections" and "violate the Constitution quite apart from any

18 underlying misconduct they are designed to shield." *See id.* (citation omitted.) Parrish alleges that

19 Salazar, Raul Machuca, Powell, Adrian Machuca and Sanudo acted under the color of state law

20 adversely to Parrish's right to petition under the First Amendment when they filed materially false

21 and misleading reports (in violation of CDCR and SVSP regulations) concerning the cell extraction

22 incident, thereby interfering with that right. (FAC ¶¶ 53-4, 72-4.) Interference with the First

23 Amendment right of access to the courts by engaging in a cover-up of illegal acts gives rise to a

24 claim for relief under section 1983.  *Ryland v. Shapiro*, 708 F.2d 967, 971-72 (5th Cir. 1983)

25 (reversing district court's dismissal of a 1983 action for interference with plaintiffs' access to the

26 courts).

27

28

1   Haldeman also violated Section 1983 by framing Parrish on the false weapon possession

2   charge. Nothing could be more damaging to Parrish's exercise of his First Amendment right to

3   petition than to be charged falsely with a serious criminal act in retaliation for filing this action.

4       **B.      Parrish States a First Amendment Retaliation Claim Against All Defendants.**

5   Parrish's allegations show that Defendants embarked on a systematic effort to cover up

6   their wrongful conduct and retaliate against Parrish for his participation in this lawsuit, all in the

7   hope of preventing Parrish from pursuing his legitimate constitutional claims.  These facts establish

8   a classic claim of First Amendment retaliation within the prison context, which "entails five basic

9   elements:  (1) An assertion that a state actor took some adverse action against an inmate

10  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

11  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

12  correctional goal." *Rhodes v. Robinson,* 408 F.3d  at 567-68. Defendants do not dispute that they

13  acted under color of state law or that Parrish's pursuit of grievances and this lawsuit constitute

14  protected conduct. (MTD at 22:1-6.)

15      **1.      Defendants Took Adverse Actions Against Parrish Because of His**
16              **Protected Conduct.**

17  Parrish sufficiently alleges that Defendants acted illegally to retaliate against him for

18  complaining about their excessive use of force on June 11, 2010. In their Motion to Dismiss,

19  Salazar, Raul Machuca, Powell, Adrian Machuca and Sanudo  claim that their false reports could

20  not have interfered with Parrish's First Amendment right to petition because the reports were filed

21  before Parrish commenced his grievance on the cell extraction in August 2010. (MTD at 24:11-14.)

22  This argument is meritless. The purpose of Defendants' lies was to deny Parrish an objective

23  unbiased review of his grievance claiming excessive use of force and to obstruct his ability to

24  obtain the facts that would establish the validity of his claim. *See Watkins v. City of Oakland,*

25  145 F.3d 1087, 1093 (9th Cir. 1998) (issuing a false internal affairs report that dismissed plaintiff's

26  valid excessive use of force claim subjected police chief to potential liability under Section 1983).

27  Defendants' actions violated Parrish's right to petition for a redress of grievances by denying his

28  access to truthful information that would show the validity of his excessive use of force claim.

1  Defendants argue that Haldeman "can demonstrate that the alleged retaliation did not occur

2  'because of' protected conduct if he 'would have reached the same decision in the absence of the

3  protected conduct.'" (MTD at 22:20-22.)[7] Apparently, Defendants are claiming that Haldeman's

4  actions in planting a half pair of scissors to frame Parrish on a false weapons charge was for a non-

5  retaliatory purpose. This is simply a factual argument as to Haldeman's motivation, which cannot

6  be resolved on a motion to dismiss.  *See Abbott v. Tootell,* 2012 WL 5497999 at *2 (on a motion to

7  dismiss, "the Court must accept as true all of the factual allegations contained in the complaint").

8  In any event, Defendants do not dare argue that a correctional officer's action to  frame an innocent

9  inmate on a false weapon possession charge can serve a legitimate non-retaliation purpose.

10  Moreover, "the timing and nature of the alleged retaliatory activities can provide circumstantial

11  evidence of retaliation." *Richardson v. Reyes*, Case No. 12–cv–00310-JST, 2013 WL 5800769 at

12  *5 (N.D. Cal. Oct. 28, 2013) (refusing to dismiss prisoner's retaliation claim). Parrish's allegations

13  that Haldeman planted a weapon in Parrish's legal file right after Parrish refused to settle this case

14  and said to Parrish "[y]ou should have settled" (accompanied by a vulgar insult) (FAC ¶ 60) create

15  a strong inference that Parrish's lawsuit was a substantial and motivating factor in Haldeman's

16  decision to frame Parrish for weapon possession.

17  Defendants' argument that Haldeman acted within his discretion when he issued a

18  disciplinary charge to Parrish (MTD at 22:26) also raises factual arguments not proper on this

19  motion. In essence, Haldeman is claiming that he did not plant the scissors. This is directly

20  _____

21  [7] Defendants' own authority shows that Parrish adequately pled retaliatory purpose. In *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314-15 (9th Cir. 1989) the Ninth Circuit reversed a

22  district court's grant of summary judgment in favor of defendants holding that a mere showing that defendants *could* have had a non-retaliatory purpose did not entitle them to summary

23  judgment, and noting that "motivation generally presents a jury question."  The court further found that the suspicious "timing and nature" of defendants' adverse actions supported an

24  inference of a retaliatory purpose. *Id.* at 1316. On strikingly different facts, in *Huskey v. City of San Jose*, 2014 F.3d 893, 899-900 (9th Cir. 2000) the Ninth Circuit held that plaintiff failed to

25  introduce any evidence demonstrating retaliatory purpose because (i) plaintiff admitted that he was not sure his supervisor knew of his protected conduct, (ii) negative performance evaluation

26  took place "six or seven months" after the protected conduct, (iii) was proceeded by an "excellent" performance evaluation that occurred several months after the protected conduct,

27  and (iv) people who had no retaliatory interest confirmed plaintiff's poor performance. *Id.* Unlike plaintiff in *Huskey*, Parrish pled that Defendants knew about his protected conduct, and

28  that the timing and nature of their actions (including threats to stop litigation) create a strong inference of their retaliatory purpose.

17

1    contrary to the FAC's allegations. (*See, e.g.,*¶¶ 61-2, 74.) Defendants' argument thus raises a fact

2    issue that cannot be resolved by a motion to dismiss. *See Solid 21, Inc. v. Breitling USA, Inc.,*

3    512 F. App'x 685, 687 (9th Cir. 2013) ("the inquiry under Rule 12(b) (6) is into the adequacy of

4    the pleadings, not the adequacy of the evidence"); *Fehl v. Manhattan Ins. Grp.,* 11-CV-02688-

5    LHK, 2012 WL 1831584 at *5 (N.D. Cal. May 18, 2012) (holding that whether an oral contract

6    was created appears to be "a question of fact that cannot be resolved at the motion to dismiss

7    stage").

8
                        **2.      Defendants' Illegal Conduct Chilled Parrish's Exercise of His First**
9                                **Amendment Rights.**

10           Parrish properly alleges that Defendants' illegal cover-up actions had a chilling effect on

11   his First Amendment rights. Defendants' conduct in falsifying their reports on the cell extraction

12   was designed to inhibit Parrish's ability to pursue claims against them, either through the grievance

13   process or in court. As the Ninth Circuit held in *Rhodes v. Robinson*, 408 F.3d at 568: "we have

14   *never* required a litigant . . . to demonstrate a *total* chilling of his First Amendment rights to file

15   grievances and to pursue civil rights litigation in order to perfect a retaliation claim. Speech can be

16   chilled even when not completely silenced." (Emphasis in original.)

17           Parrish  sufficiently alleges that acting in concert with Defendants Salazar, Raul Machuca,

18   Powell, Adrian Machuca, and Sanudo, Haldeman  violated Parrish's right to petition for a redress

19   of grievances by framing Parrish on the false charge of possession of a weapon. Haldeman acted in

20   retaliation for  Parrish having brought his lawsuit against the other Defendants. (FAC ¶ ¶ 60-1.)

21   Haldeman undertook this deliberate and fraudulent action in order to intimidate and coerce Parrish

22   into abandoning his lawsuit. Because of the false charge, Parrish was placed in the Security

23   Housing Unit, a form of solitary confinement, for an indefinite period. (FAC ¶¶62-63.) Defendants

24   argue that the false weapons possession charge could not have "chilled" Parrish because he is able

25   to litigate this lawsuit. (MTD at 23:12-3.) The Ninth Circuit has rejected a similar argument. In

26   *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009), the court reversed a summary judgment in

27   favor of prison officials in a Section 1983 case finding that fact issues could not negate defendant's

28   alleged retaliatory acts. In particular, the court rejected the lower court's finding that plaintiff was

18

1   not "chilled" despite that fact that plaintiff had filed numerous grievances. "[A] plaintiff does not

2   have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse

3   action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment

4   activities . . . To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability

5   for a First Amendment violation merely because an unusually determined plaintiff persists in his

6   protected activity." (Citations omitted.) Haldeman's actions "chilled" Parrish's exercise of his First

7   Amendment rights, even though Parrish, with unusual fortitude, was able to pursue his grievance

8   through this litigation.

9               **3.     Defendants' Illegal Conduct Could Not Have Served a Legitimate
                        Correctional Goal.**
10

11         Finally, there can be no legitimate correctional goal for violating CDCR and SVSP

12  regulations by filing false reports, verbally threatening Parrish and performing an unjustified search

13  of his person to intimidate him into abandoning his lawsuit, especially in violation of CDCR and

14  SVSP regulations. Similarly, there can be no legitimate correctional goal in framing Parrish for a

15  weapon possession charge through Haldeman's deceitful conduct, which is itself a crime.  *See* Cal.

16  Penal Code § 141(b) (peace officer who plants evidence of a crime commits a criminal act.)

17          **C.     Parrish Fully Complied with the PLRA by Exhausting All Available
                     Administrative Remedies Before Filing his Second Claim.**
18

19         The Prisoner Litigation Reform Act provides that "[n]o *action* shall be brought with respect

20  to prison conditions …until such administrative remedies *as are available* are exhausted." 42

21  U.S.C. § 1997(e) (a) (emphasis added). Failure to exhaust is an affirmative defense under the

22  PLRA and defendants "have the burden of raising and proving the absence of exhaustion." *Abbott v.*

23  *Tootell,* 2012 WL5497999 at *3. As the Supreme Court has held, "[c]ompliance with prison

24  grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock,*

25  549 U.S. 199, 218 (2007). As Defendants acknowledge, SVSP grievance procedures required

26  Parrish "to describe the problem and the action requested." 15 C.C.R. §3084.2 (a) (2009). (App. Ex.

27  3.) (MTD at 7:2.)  To satisfy requirements of the PLRA, a prison grievance need not advance a

28  legal theory. *Norwood v. Robinson*, 436 Fed. Appx. 799, 800 (9th Cir. June 8, 2011) (a grievance

                                                    19

1  that did not advance the legal theory of retaliation gave the prison adequate notice of the harm

2  being grieved); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) ("Espinal did not have to assert

3  the existence of a conspiracy to exhaust his conspiracy claim; it is sufficient that his grievance

4  adequately described the alleged misconduct."). A grievance also "need not contain every fact

5  necessary to prove each element of an eventual legal claim." *Frederick v. Cal. Dep't of Corrections*

6  *and Rehab.*, 08-CV-2222 MMC(PR), 2012 WL 1143836, at *6 (N.D. Cal. Mar. 30, 2012) (denying

7  defendants' motion to dismiss because plaintiff sufficiently grieved erroneous denial of his

8  placement in firecamp) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009), also cited in

9  MTD at 7:3)."The primary purpose of a grievance is to alert the prison to a problem and facilitate

10 its resolution, not to lay groundwork for litigation." *Id.*

11       Parrish fully complied with the requirements of PLRA by exhausting all available

12 administrative remedies before filing his Second Claim.

13              **1.    Parrish Brings No Claim For Destruction of His Personal Property.**

14       Defendants misread the FAC in claiming that Parrish failed to exhaust administrative

15 remedies with respect to Defendants' destruction of his property immediately following the cell

16 extraction. (FAC ¶ 44; MTD at 15:10) Parrish does not bring a claim for destruction of his property

17 and does not seek relief for it. These acts by the Defendants are, however, evidence that

18 Defendants acted maliciously and sadistically under *Hudson v. McMillian* in their unjustified

19 assault of Parrish on June 11, 2010. They are also evidence that Defendants acted to intimidate

20 Parrish to chill his First Amendment rights and violated Section 1985(2) by conspiring to deter

21 Parrish from pursing this action and from testifying in this Court. The PLRA does not require every

22 fact alleged in the complaint or used as evidence to be exhausted, as Defendant's own authority

23 establishes. *See Griffin*, 557 F.3d at 1120 ("A grievance also need not contain every fact necessary

24 to prove each element of an eventual legal claim").[8]

25

26

27 _____

28 [8]    If Defendants wish the Court to disregard the allegation of property destruction, they should
       convince the Court to grant a motion to strike under Fed. R. Civ.P. 12(f).

20

1

2. **Parrish's Completed Grievances Adequately Put Defendants on Notice That the Assault Defendants Retaliated and Conspired Against Him by Conducting a Corrupt Investigation.**

2

3    The grievances Parrish pursued to Third Level Review provide sufficient detail to alert

4 SVSP and Defendants to his retaliation claim. *See, e.g., Frederick*, 2012 WL 1143836 at *5

5 (inmates' grievance requesting medical clearance for firecamp included facts about erroneous

6 denial of firecamp placement, and was thus sufficient to exhaust administrative remedies).

7    First, it is untrue that Parrish failed to put prison officials on notice that the investigation of

8 his cell extraction was corrupted. (MTD at 17:6.) SVSP grievance 10-2229, which describes the

9 June 11, 2010, cell extraction and physical abuse, speaks of "fabricated" and "falsified" documents

10 by the correctional officers who acted together and states that Parrish is "dissatisfied" with the

11 findings from the investigation on appeal. (Medina Decl. Ex. B at 5, 8; Zamora Decl. Ex. B at 5, 8.)

12 Parrish was not required to plead every fact showing corruption of the investigation. In addition, in

13 his FAC Parrish alleges that he "specifically objected to Salazar conducting the investigation, but

14 Salazar ignored the objection." (FAC ¶ 53.) Defendants argue that Parrish should have included

15 this objection in his grievance (MTD at 17:10-12) but Salazar did not prepare the confidential

16 report until October 7, 2010, long after Parrish filed his grievance on August 23, 2010. (FAC ¶¶ 51,

17 54.) Parrish could not have known of the report's contents because it was not provided to him.

18 15 C.C.R. § 3084.9(i)(3)(B)(1) (the report "shall not be provided to the appellant."). (App. Ex. 4.)

19 Defendants cannot fairly argue that Parrish should have included in his grievance objections about

20 a report that he did not see.

21    Parrish was also not required to grieve Defendant Salazar's improper investigation of his

22 original grievance, as neither PLRA nor California prison regulations require an inmate "to grieve

23 a breakdown in the grievance process." *Turner v. Burnside*, 541 F.3d 1077, 1083 (11th Cir. 2008)

24 (holding that inmate was not required to grieve warden's destruction of the inmate's grievance).

25 Finally, there was no requirement that Parrish name all the individuals in his grievance that

26 eventually became parties to this action. *Jones v. Bock,* 549 U.S. at 218 (the PLRA does not

27 contain a "'name all defendants' requirement"). All Parrish was required to do to exhaust his

28

21

administrative grievances was "to describe the problem and action requested."  15 C.C.R. §

3084.2(a) (2009). (App. Ex. 3.) He did.

### 3.    Parrish Brings No Action For Denial of His Request for a Cell Move.

Parrish does not bring an action for denial of a cell move, which was later granted. (Parrish

Decl. ¶ 17.)[9]  Instead, Parrish's allegations of threats by non-party co-conspirators Valenzuela and

Villalobos in the context of denying Parrish's request for a cell move (FAC ¶ 56) are evidence of

Parrish's intimidation and harassment by Green Wall gang members for filing this lawsuit and of

Defendants' conspiracy to intimidate Parrish to chill his First Amendment rights and to deter him

from pursuing this action.

### 4.    Even if More Specific Grievances Were Required, Defendants' Threats and Intimidation and Parrish's Mental Condition Excused Parrish Doing So.

PLRA requires that prisoners exhaust only such administrative remedies "as are available."

42 U.S. § 1997(e) (a). Where circumstances render exhaustion of remedies unavailable, exhaustion

is not required, as even Defendants' authority recognizes. *See Sapp v. Kimbrell*, 623 F.3d 813, 823

(9th Cir. 2010) (holding that improper screening of an inmate's administrative grievances renders

administrative remedies "effectively unavailable" such that exhaustion is not required under the

PLRA). To the extent Parrish was required to exhaust administrative remedies with respect the

retaliatory search of his person and cell that occurred on April 3, 2012, Defendants' acts of

intimidation and Parrish's own mental condition during that time made administrative remedies

unavailable to Parrish.[10]

---

[9]   Receipt of the partial grants to inmate appeals qualifies "as exhausting the available administrative remedies." *Jones v. Pleasant Valley State Prison*, 01-CV-05287-AWI-SMS PC, 2010 WL 2197655, at *4 (E.D. Cal. May 28, 2010).

[10]  As with allegations of destruction of property and denial of his request for a cell move, Parrish does not bring a claim or seek relief for the unlawful strip and cell searches that occurred in April 2012. These acts are evidence of conspiracy and retaliation by Defendants and non-parties.

22

1

**(a)** **Threats and Intimidation Made Administrative Remedies Unavailable to Parrish.**

2

3        Threats and intimidation by the prison officials can make administrative remedies

4    unavailable to an inmate. *See Tuckel v. Grover,* 660 F.3d 1249, 1252-53 (10th Cir. 2011) (when a

5    prison official inhibits an inmate from utilizing an administrative process through threats or

6    intimidation, that process can no longer be said to be "available"); *Turner v. Burnside*, 541 F.3d

7    1077, 1084 (11th Cir.2008) ("it is possible for retaliation or the threat of retaliation to make

8    administrative remedies unavailable to an inmate"); *Kaba v. Stepp,* 458 F.3d 678, 685-6 (7th

9    Cir.2006) (threats of violence against prisoner raises fact issue whether administrative remedies

10   were unavailable); *Hemphill v. State of New York,* 380 F.3d 680, 688 (2d Cir. 2004) (threats and

11   intimidation can make administrative remedies unavailable). An inmate will be excused from

12   complying with PLRA's exhaustion requirement if (1) the threat or intimidation actually did deter

13   him inmate from lodging a grievance or pursuing a particular part of the prison administrative

14   process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary

15   firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative

16   process that the inmate failed to exhaust. *Tuckel,* 660 F.3d at 1254. That an inmate chose to forgo

17   an internal grievance while continuing litigation in federal court does not show lack of fear on the

18   part of the inmate. "This may be so, if for no other reason, because seeking a criminal investigation

19   or filing a civil rights complaint may enable an inmate to draw outside attention to his complaints,

20   thereby neutralizing threatened retaliatory conduct from prison employees." *Hemphill*, 380 F.3d at

21   688.

22       Defendants' threats and retaliatory actions described in the FAC and in Parrish's

23   Declaration Dismiss would have deterred any "reasonable inmate of ordinary firmness" from

24   pursuing his grievances, and have in fact intimidated Parrish into abandoning some of his

25   grievances. During the time Parrish was working on his opposition to Defendants' summary

26   judgment motion, Villalobos, Valenzuela, and Roberto Machuca verbally intimidated Parrish,

27   subjected him to an embarrassing strip and cavity search in front of other inmates, and took his

28   legal files, all to try to get Parrish to abandon his lawsuit. (Parrish Decl. ¶¶ 17-19.) On April 14,

23

1  2012, Parrish submitted grievance SVSP 12-1449 describing the conspiracy and the retaliatory acts

2  taken by Roberto Machuca, Villalobos and Valenzuela, all of whom Parrish believed were

3  members of the violent Green Wall gang. (Medina Decl. Ex. G at 6.) When Parrish refused to

4  withdraw this grievance in the face of a demand from a Lieutenant, his cell was ransacked (Parrish

5  Decl. ¶ 20.) Parrish then submitted grievance SVSP 12-1789 to protest these actions. (Medina Decl.

6  Ex. H at 4.) And in July 2012, the Green Wall gang facilitated an inmate's beating of Parrish in

7  retaliation for these grievances and this lawsuit. (Parrish Decl. ¶ 24.) After Parrish was informed

8  that "No findings were possible" on grievance SVSP 12-1449 and that "Staff did not violate CDCR

9  policy" on grievance SVSP 12-1789, he realized that further grievances would  subject him to more

10  acts of intimidation and violence by Roberto Machuca and his co-conspirators and he did not wish

11  to face such dangers. (Parrish Decl. ¶ 21.) Parrish's decision was reasonable. *See Turner*, 541 F.3d

12  at 1084-85 ("One of the purposes of administrative remedies is to give prisoners a way of

13  attempting to improve prison conditions without having to file a lawsuit. That purpose is thwarted

14  if the prisoner is told that lodging a grievance will result in his overall condition becoming worse

15  instead of better. Where cost outweighs benefit a rational decision maker will forego the benefit")

16  (citations omitted).

17                              **(b)    Parrish's Mental Condition Made Certain Administrative
18                                      Remedies Unavailable to Him.**

19             In addition to his fear of further retaliation by Defendants and their co-conspirators,

20  Parrish's mental condition deteriorated making it impossible for him to pursue his grievances to

21  Third Level of Appeal.  "Physical or mental infirmities may render administrative remedies

22  'unavailable,' and excuse a prisoner from complying with the PLRA's exhaustion requirement."

23  *Michalek v. Lunsford*, No. 4:11CV00685–JMM–JTR, 2012 WL 1454162, *3-4 (E.D. Ark. Apr. 5,

24  2012) (finding that where there was  a genuine issue of fact about whether plaintiff was mentally

25  capable of assessing grievance procedures, defendants failed to satisfy their burden of establishing

26  that plaintiff failed to exhaust available administrative remedies).

27             Starting in May 2012, Parrish had to take heavy doses of medication to treat his mental

28  disorders.  Parrish Decl. ¶ 23.) When on this medication, Parrish was unable to focus or write

1  coherently. (*Id.*) Moreover, Parrish's cellmate Williams, who was helping him with his grievances,

2  was transferred out of SVSP in the end of May 2012. (*Id.* ¶ 22.) Because Williams no longer was

3  able to help Parrish, Parrish was physically and emotionally unable to complete the grievance

4  process. (*Id.* ¶ 23.) In light of threats and abuse Parrish has already experienced for his grievances,

5  he was understandably afraid to ask anyone else for help during this time.  (*Id.*¶ 22.)

6       **5.**    **Parrish's Complete Grievances Adequately Put Defendants on Notice of**

7           **Their Conspiracy to Deter Parrish from Pursuing this Lawsuit.**

8       Given SVSP -13-340, which describes how Defendant Haldeman framed Parrish for

9  weapon possession, explains that Parrish was subject to reprisals as a direct result of his "pending

10  lawsuit" against the Machuca brothers, and describes the "Code of Silence" that has prevented a

11  fair investigation of the incident. (Medina Decl. Ex. I at 6; Zamora Decl. Ex. C at 6.) This

12  grievance adequately describes "the problem and the action requested" and provide notice of

13  Parrish's retaliation and conspiracy to obstruct justice claims. *Richardson v. Reyes*, Case No. 12–

14  cv–00310–JST, 2013 WL 5800769 at *3 (N.D. Cal. Oct. 28, 2013) ("Defendants cite no case in

15  which a prisoner was required to also specifically state the reasons he thought a deprivation might

16  be occurring in order to exhaust claims that stem directly from the facts in the administrative

17  appeal.")

18                     **<u>CONCLUSION</u>**

19       For the reasons stated above, the Court should deny Defendants' Motion to Dismiss.

20  However, should the Court choose to grant Defendants' Motion to Dismiss in any respect, Parrish

21  respectfully requests an opportunity to amend the FAC. *See* Fed. R. Civ. P. 15(a) (2)("The court

22  should freely give leave when justice so requires.").

23  DATED:  February 14, 2014

24                     SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

25

26           By:         */s/ James E. Lyons*

27                   JAMES E. LYONS
                  CHRISTINE HUNG
                  TATYANA SHMYGOL

28                    Attorneys for Plaintiff
                  KAHEAL PARRISH