UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| KAHEAL PARRISH, | ) | Case No.: 11-CV-01438 |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | WITHOUT PREJUDICE AND |
| v. | ) | DENYING IN PART DEFENDANTS' |
| | ) | MOTION TO DISMISS, AND DENYING |
| A. SOLIS, et al., | ) | PLAINTIFF'S ADMINISTRATIVE |
| | ) | MOTION FOR LEAVE TO FILE A SUR- |
| Defendants. | ) | REPLY |
| | ) | |

Plaintiff Kaheal Parrish, a prisoner incarcerated at Salinas Valley State Prison ("SVSP"), filed this lawsuit on March 18, 2011 alleging violations of his civil rights by several prison officials. ECF No. 1. Plaintiff's original complaint named as defendants A. Solis, B. Hedrick, W. Muniz, K. Salazar, R. Machuca, B. Powell, A. Machuca, and J. Sanudo. ECF No. 1. After this Court granted in part Defendants' motion for summary judgment, ECF No. 79, the parties stipulated that Plaintiff be granted leave to amend his complaint. ECF No. 104. Plaintiff's First Amended Complaint now brings claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against K. Salazar, R. Machuca, B. Powell, A. Machuca, J. Sanudo, and Maurice Haldeman (collectively, "Defendants"). ECF No. 120, First Amended Complaint (hereinafter "Complaint"). This Order addresses Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 111.

1

United States District Court
For the Northern District of California

As the Court explained in its Order Responding to the Parties' Notice of Ninth Circuit Law, ECF No. 155, the Ninth Circuit recently held that a defense of non-exhaustion of administrative remedies in the Prison Litigation Reform Act context should be raised at the summary judgment stage of the proceedings rather than the motion to dismiss stage. *Albino v. Baca*, 10-55702, 2014 WL 1317141 at *6 (9th Cir. Apr. 3, 2014). Accordingly, in light of *Albino*, this Court DENIES without prejudice Defendants' motion to dismiss Plaintiff's claims based on Plaintiff's alleged failure to exhaust administrative remedies. ECF No. 111. Defendants may re-raise their non-exhaustion defense in their summary judgment motion to be filed by August 21, 2014. This Order addresses the remaining issues raised in Defendants' motion to dismiss, ECF No. 111.

Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument, and accordingly VACATES the hearing on this motion set for May 15, 2014, at 1:30 p.m. The May 15, 2014 Case Management Conference will remain as set. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART without prejudice and DENIES IN PART Defendants' motion to dismiss. The Court also DENIES Plaintiff's Administrative Motion for Leave to File a Sur-reply.

# I. BACKGROUND

## A. Factual Allegations

### 1. Parties and the Green Wall Gang

Plaintiff was housed at SVSP from roughly 2006 until 2013, during which time he was diagnosed with major depressive disorder and was assigned to the prison's Enhanced Outpatient Program for intensive treatment and medication. Complaint at ¶¶ 1, 26-27. Defendant Salazar is a Correctional Lieutenant at SVSP, Defendant R. Machuca is a Correctional Sergeant at SVSP, and the remaining defendants are Correctional Officers at SVSP. *Id*. at ¶¶ 14-18, 20.

According to the Office of the Inspector General, by 2003 a group of correctional officers at SVSP formed a gang called "The Green Wall" which engaged in excessive force, intimidation, and retaliation to control inmates. *Id*. at ¶ 28. Since 2004, SVSP administrators have attempted to eliminate the Green Wall Gang and the "Code of Silence" it established at the prison to conceal

wrongdoing by officers, but at the time Plaintiff was housed in Cellblock D-2 the gang was still

active there. *Id*. at ¶¶ 29-31. Plaintiff alleges that some or all of the Defendants were active

members of the Green Wall gang. *Id*. at ¶ 22.

### 2. June 11, 2010 Cell Extraction

After a May 2010 hearing regarding an earlier charge of indecent exposure against Plaintiff,

Defendant R. Machuca threatened that Plaintiff would "feel the Green Wall" if he indecently

exposed himself again. *Id*. at ¶ 32. On the morning of June 11, 2010, Plaintiff was again charged

with indecently exposing himself to a prison social worker, and Defendant Powell told him,

"Sergeant Machuca said he already told you next time you expose yourself, you're getting fucked

up, so you got an ass-kicking coming." *Id*. at ¶ 33. On that day, Defendants Salazar, R. Machuca,

A. Machuca, Powell, and Sanudo (collectively, "Assault Defendants") were on duty in Cellblock

D-2 where Plaintiff was housed; Salazar was the Incident Commander on duty. *Id*. at ¶¶ 27, 32-33.

Afraid of retribution by prison officers for his second indecent exposure charge, Plaintiff

began feeling suicidal and reported that he had swallowed metal to both officers and a psychiatric

technician delivering his medicine. *Id*. at ¶¶ 34-35. When Defendants R. Machuca and Powell

arrived at Plaintiff's cell to remove him from the cell, Plaintiff refused to submit to handcuffing

and so Machuca and Powell gathered the other Assault Defendants and secured authorization from

Salazar for a forcible cell extraction. *Id*. at ¶ 36.

Shortly after 1:00 p.m., Defendants Sanudo, R. Machuca, A. Machuca, and Powell charged

into Plaintiff's cell and knocked him to the floor with a plastic shield. *Id*. at ¶ 37. While Plaintiff

was on the ground, the officers pinned him under the shield, put him in restraints, then pulled down

his underwear and sprayed him in the genital area and the face with pepper spray as they beat and

kicked him and shouted racial insults. *Id*. at ¶¶ 38-40. Contrary to prison regulations on the

calculated use of force, the Assault Defendants did not videotape the cell extraction and did not

bring along a health care professional. *Id*. at ¶ 49.

The officers then brought Plaintiff to a holding cell with Defendant Salazar and psychiatric

technician Munn present. *Id*. at ¶ 42. Defendant R. Machuca instructed Munn not to record all of

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

**United States District Court**
For the Northern District of California

Plaintiff's injuries in his evaluation and not to authorize a decontamination of Plaintiff as required by prison regulations for an inmate exposed to pepper spray. *Id*. Munn recorded only some of the injuries to Plaintiff's face, and did not record the cuts and bruises on Plaintiff's hands, back, and legs and did not record the pepper spray exposure. *Id*. at ¶¶ 42-43. While Plaintiff was out of his cell, the Assault Defendants destroyed much of his personal property. *Id*. at ¶ 44. In addition to physical injuries, Plaintiff suffered psychological trauma that exacerbated his existing mental disorders and resulted in his transfer to the Department of Mental Health in Vacaville in July 2010. *Id*. at ¶ 50.

### 3. Investigation of the Cell Extraction

After the cell extraction, the Assault Defendants coordinated their stories and cooperated to file false reports which failed to note the involvement of A. Machuca, claimed that Plaintiff had been hiding behind a sheet and charged at the officers as they entered the cell, and omitted facts regarding the insults and physical abuse directed at Plaintiff. *Id.* at ¶ 49. The reports also stated that the pepper spray was discharged accidentally. *Id.*

Upon returning to SVSP in August of 2010, Plaintiff filed an inmate appeal claiming that the Assault Defendants used excessive force in conducting the June 11 cell extraction. *Id*. at ¶ 51. Salazar arranged to be appointed chief investigator of Plaintiff's grievance and issued a report on October 7, 2010, ignoring Plaintiff's objection that Salazar was involved in the cell extraction itself. *Id*. at ¶¶ 53-54. Plaintiff alleges numerous deficiencies in the investigation, including that no witness interviews were recorded, written notes were not preserved, material evidence was destroyed, and the final report closely tracked the Assault Defendants' falsified version of events. *Id*.

### 4. Plaintiff's Lawsuit and Retaliation by Defendants

Plaintiff filed the instant suit against the Assault Defendants in March 2011. *Id.* at ¶ 55. Roughly one year later, the Assault Defendants recruited other correctional officers into a conspiracy to retaliate against Plaintiff for filing suit. *Id.* In March of 2012, two non-party correctional officers approached Plaintiff and informed him that his request for a cell move was

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   being denied because he had filed the lawsuit, and threatened to fabricate a charge of cell phone

2   use against Plaintiff if he did not abandon the suit. *Id* at ¶ 56. In April of 2012, Roberto Machuca

3   (brother to Defendants R. Machuca and A. Machuca) falsely accused Plaintiff of cell phone use,

4   triggering a public strip search and a cell search that failed to turn up a phone. *Id.* at ¶ 57. During

5   both searches, officers intimated to Plaintiff that his problems would cease if he stopped litigating

6   this lawsuit. *Id.*

7          On December 5, 2012, Plaintiff returned to SVSP from a settlement conference in this case

8   in Solano State Prison and was processed in SVSP's Receiving and Release area. *Id.* at ¶ 58-60.

9   During Plaintiff's processing, while Defendant Haldeman was searching Plaintiff's possessions,

10  Plaintiff discussed his lawsuit with another inmate and was overheard by Haldeman, who then told

11  Plaintiff that "[n]obody wants to hear about your fucking civil lawsuit against my officers. You

12  should have settled you stupid fuck." *Id.* at ¶ 60. Plaintiff then saw Haldeman take a half pair of

13  scissors from his own pocket and place it in an envelope inside Plaintiff's legal materials. *Id* at ¶

14  61. Haldeman shortly thereafter pulled the scissors from the envelope and announced "This is what

15  I was looking for." *Id.*  By this conduct, "Haldeman evidenced his membership in the conspiracy to

16  pressure Parrish into dismissing his lawsuit[.]" *Id.* As a result of Haldeman's actions, Plaintiff was

17  charged with possession of a weapon and lost one year's worth of behavioral credits. *Id.* at ¶ 62. In

18  April 2013, Plaintiff was transferred to CSP-Sacramento and placed in indefinite solitary

19  confinement as a result of his conviction for possessing a weapon at SVSP. *Id.* at ¶ 63.

20          **B. Procedural History**

21          Plaintiff initiated this lawsuit by filing a complaint pro se on March 18, 2011. ECF No. 1.

22  Defendants filed a Motion for Summary Judgment on December 5, 2011, ECF No. 41, Plaintiff

23  filed an Opposition on June 22, 2012, ECF No. 74, and Defendants filed a Reply on July 9, 2012,

24  ECF No. 76. On August 28, 2012, the Court ruled on the Motion for Summary Judgment and

25  dismissed several of the original defendants from this suit. ECF No. 79.[1]

26  _____

27  [1] The Court granted the motion for summary judgment in part and denied in part. The Court found
    that "Defendants Solis, Muniz, and Hedrick are entitled to summary judgment, and are dismissed

28  from this action." ECF No. 79 at 7. However, the Court held that "there is a genuine issue of fact as

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1    Plaintiff filed a Motion to Appoint Counsel on January 7, 2013, ECF No. 84. The Court

2 granted the motion on January 14, 2013, ECF No. 85, and appointed pro bono counsel on

3 March 12, 2013, ECF No. 86. On November 21, 2013, the parties stipulated that Plaintiff be

4 permitted to file an amended complaint, ECF No. 101, and the Court granted this stipulation on

5 November 22, 2013, ECF No. 104.

6    Plaintiff filed an amended complaint on November 21, 2013. ECF No. 102. Defendants

7 filed a Motion to Dismiss the amended complaint on December 27, 2013. ECF No. 111 (hereinafter

8 "Mot."). Due to an omitted exhibit, the Court on January 8, 2014 granted leave to Plaintiff to file

9 another amended complaint, ECF No. 119. Plaintiff then filed his First Amended Complaint on

10 January 17, 2014. ECF No. 120. Plaintiff filed an opposition to the Motion to Dismiss on February

11 14, 2014. ECF No. 136 (hereinafter "Opp'n"). Defendants filed a reply on February 28, 2014. ECF

12 No. 142 (hereinafter "Reply"). On March 13, 2014, Plaintiff filed an Administrative Motion for

13 Leave to File a Sur-reply. ECF No. 145. Defendants filed an opposition to this motion on March

14 17, 2014. ECF No. 146.

15    On April 11, 2014, Plaintiff filed a Statement of Recent Decision, notifying the Court of the

16 Ninth Circuit's decision in *Albino v. Baca*, 10-55702, 2014 WL 1317141 (9th Cir. Apr. 3, 2014).

17 ECF No. 150. In light of this decision, Defendants filed a request to convert their pending Motion

18 to Dismiss into a summary judgment motion on April 17, 2014. ECF No. 154. On April 23, 2014,

19 the Court issued an order notifying the parties of its intention to deny without prejudice

20 Defendants' motion to dismiss based on Plaintiff's alleged failure to exhaust administrative

21 remedies, and permitting Defendants to re-raise their non-exhaustion defense in their summary

22 judgment motion to be filed by August 21, 2014. ECF No. 155.[2]

23 **II. LEGAL STANDARD**

24

25    to whether [Defendants Salazar, R. Machuca, B. Powell, A. Machuca, and J. Sanudo] violated
     Plaintiff's constitutional rights. Accordingly, Defendants Salazar, R. Machuca, B. Powell, A.

26 Machuca, and J. Sanudo are not entitled to summary judgment, nor are they entitled to qualified
     immunity." *Id.* at 9.

27 [2] The Court hereby denies Defendants' request to convert their motion to dismiss into a summary
     judgment motion with respect to the exhaustion issues Defendants raise in their motion to dismiss.

28

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

**A. Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. A complaint must plead "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A court ruling on a Rule 12(b)(6) motion must generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court may dismiss a suit as "factually frivolous" if the sufficiently well-pleaded facts are "clearly baseless"— that is, if they are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327, 328 (1989)).

A court must also "presume that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss," however. *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Moreover, a court is not required to " 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' " *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)).

**B. Motion for Leave to File a Sur-reply**

Local Rule 7-11 in the Northern District of California permits a party to request a court order regarding "miscellaneous administrative matters, not otherwise governed by a federal statute." Civil L.R. 7-11. Plaintiff has filed a motion for leave to file a sur-reply on the grounds that

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1    Plaintiff believes Defendants raised for the first time in their reply brief an argument relating to

2    non-exhaustion of administrative remedies with respect to Plaintiff's § 1985 conspiracy claim. ECF

3    145. The Court DENIES Plaintiff's request as moot, because as stated above, all of Defendants'

4    arguments related to non-exhaustion will not be considered by the Court at this stage of the

5    proceedings and will be considered only at summary judgment. ECF No. 155. Accordingly, the

6    Court need not determine whether Defendants' arguments relating to non-exhaustion of Plaintiff's

7    § 1985 claim were in fact raised for the first time in Defendants' reply.

8            **C. Leave to Amend**

9            When a court determines that a complaint should be dismissed, Rule 15(a) of the Federal

10   Rules of Civil Procedure states that leave to amend "should be freely granted when justice so

11   requires," bearing in mind that "the underlying purpose of Rule 15 ... [is] to facilitate decision on

12   the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

13   Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a court "may exercise its

14   discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the

15   movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

16   to the opposing party ..., [and] futility of amendment.' " *Carvalho v. Equifax Info. Servs., LLC*, 629

17   F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178,

18   182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

19   **III. ANALYSIS**

20           Plaintiff's Complaint states three claims for relief, only the second of which is challenged in

21   Defendants' motion to dismiss.[3] The 42 U.S.C. § 1983 claim at issue alleges that Defendants'

22   conduct violated Plaintiff's rights under the First and Fourteenth Amendment to petition the

23   government for a redress of grievances. Complaint at ¶ 72. The claim is titled, "Violation of

24   Parrish's First and Fourteenth Amendment Right Protected by 42 U.S.C. § 1983 Against the

25   Assault Defendants and Defendant Haldeman." *Id*. at 20. Plaintiff specifies two courses of alleged

---

[3] Plaintiff's other claims for relief, which are not challenged by Defendants, are a § 1983 claim premised on an alleged violation of Plaintiff's Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, and a § 1985 claim alleging conspiracy to deter Plaintiff from attending or testifying in court proceedings. Complaint at ¶¶ 64-69, 76-79.

8

1   conduct by Defendants that form the basis for this claim: (1) the Assault Defendants' filing of false

2   and misleading incident reports regarding the cell extraction in order to cover up their malicious

3   and sadistic assault of Plaintiff; and (2) the planting of a half-pair of scissors in Plaintiff's legal

4   materials by Defendant Haldeman, who acted in concert with the Assault Defendants in order to (a)

5   retaliate against Plaintiff for filing his lawsuit by commencing "a disciplinary proceeding . . . that

6   eventually resulted in Parrish's indefinite confinement in the Security Housing Unit;" (b) to

7   intimidate him into abandoning the lawsuit; and (c) to "interfere" with Plaintiff's right to petition

8   the government for a redress of grievances. *Id*. at ¶¶ 73-74.

9         Defendants argue that the allegations in Plaintiff's Complaint are insufficient to state a

10  retaliation claim against Defendants with regard to both these courses of conduct. Mot. at 21-24.

11  With regard to the filing of false and misleading reports, Defendants argue that they prepared their

12  incident reports *prior to* Plaintiff initiating a prison grievance and thus the reports could not have

13  been falsely prepared with a retaliatory purpose. *Id*. at 24. With regard to the alleged framing of

14  Plaintiff for weapon possession, Defendants argue that Plaintiff's Complaint fails to plead all of the

15  elements required of a retaliation suit pursuant to *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th

16  Cir. 2005). Mot. at 21-23. Below, the Court will address Defendants' arguments with respect to

17  each of the two courses of conduct underlying Plaintiff's claim. Before doing so, the Court notes

18  that 42 U.S.C. § 1983 imposes civil liability on any person acting under color of state law who

19  deprives any person within the jurisdiction of the United States of "any rights, privileges, or

20  immunities secured by the Constitution and laws." To support a claim under § 1983, a plaintiff

21  must demonstrate that (1) the challenged action occurred "under color of state law" and (2) the

22  action resulted in the deprivation of a constitutional right or federal statutory right." *See Parratt v.*

23  *Taylor*, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled on other grounds*

24  *by Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986). In the instant action,

25  Defendants do not make any argument with respect to whether they were acting under color of

26  state law as officers at SVSP. The Court will thus presume that the officers were acting under color

27  of state law in undertaking all conduct alleged in the Complaint. Accordingly, the dispute between

United States District Court
For the Northern District of California

9

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

the parties centers on whether Defendants' conduct violated Plaintiff's First and Fourteenth Amendment rights.

### A. First Amendment Retaliation: Defendants' framing of Plaintiff for weapon possession

The Court first assesses whether Plaintiff has sufficiently stated a First Amendment retaliation claim with regard to Defendants' alleged planting of scissors in Plaintiff's legal file. The Court concludes that Plaintiff has adequately alleged a retaliation claim, and thus DENIES Defendants' motion to dismiss Plaintiff's § 1983 claim based on this course of conduct.

An inmate's First Amendment rights – including the right to petition the government – are of "fundamental import" because of their importance in permitting prisoners to challenge the conditions of their confinement. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (without such "bedrock constitutional guarantees," prisoners are left with "no viable mechanism to remedy prison injustices."). A prisoner does not lose upon incarceration his right to pursue civil rights litigation in the courts. *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).

Consequently, retaliation against an inmate by prison officials on account of the inmate exercising his or her First Amendment rights gives rise to liability under § 1983. *See Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit […] That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.") (citing *Schroeder*, 55 F.3d at 461); *Bruce v. Ylst,* 351 F.3d 1283, 1288 (9th Cir. 2003); *see also Rhodes*, 408 F.3d at 567 (retaliatory acts by prison officials "violate the Constitution quite apart from any underlying misconduct they are designed to shield."). This constitutional prohibition against retaliation clearly includes retaliation for filing a complaint. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

The Ninth Circuit has held that within the prison context, a prison inmate may state a claim of retaliation under the First Amendment by alleging five basic elements:

(1) An assertion that a state actor took some adverse action against an inmate

(2) because of

10

United States District Court
For the Northern District of California

1        (3) that prisoner's protected conduct, and that such action

2        (4) chilled the inmate's exercise of his First Amendment rights, and

3        (5) the action did not reasonably advance a legitimate correctional goal.

4  *Rhodes*, 408 F.3d at 567-68. In this case, Defendants concede that Plaintiff's prison grievances and

5  lawsuit regarding the cell extraction constitute protected conduct, and that Plaintiff's punishment

6  for weapon possession qualifies as an adverse action. Mot. at 22. As such, the dispute between the

7  parties centers on whether the punishment was made "because of" Plaintiff's protected activities,

8  whether the punishment chilled Plaintiff's exercise of his First Amendment rights, and whether the

9  punishment advanced a legitimate correctional goal. Defendants argue that Plaintiff's Complaint

10  fails to sufficiently allege three of the five *Rhodes* elements. The Court considers each element in

11  turn below, and concludes that Plaintiff has adequately alleged each element of his claim.

### 1. Adverse Action "Because of" Protected Conduct

13        To state a claim for retaliation, a plaintiff must show not only that he suffered some adverse

14  action but that this action was motivated by his protected activity. A plaintiff need not show direct

15  evidence that the act was retaliatory, as "the timing and nature of the alleged retaliatory activities

16  can provide circumstantial evidence of retaliation." *Richardson v. Reyes*, Case No. 12–cv–00310–

17  JST, 2013 WL 5800769, at *5 (N.D. Cal. Oct. 28, 2013). Generally, such circumstantial evidence

18  will include that the defendant knew of the protected activity plus "at least (1) evidence of

19  proximity in time between the protected speech and the allegedly retaliatory decision; (2) evidence

20  that the defendant expressed opposition to the speech; or (3) evidence that the defendant's

21  proffered reason for the adverse action was pretextual." *Corales v. Bennett*, 567 F.3d 554, 568 (9th

22  Cir. 2009) (internal citation and emphasis omitted).

23        However, the fact that an adverse action chronologically followed some protected activity is

24  not alone enough to state a retaliation claim. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th

25  Cir. 2000) (stating that a retaliation claim cannot be based simply on the logical fallacy of "after

26  this, therefore, because of this."). To sufficiently allege that retaliation was "because of" protected

27  conduct, a plaintiff must plead facts showing that "the protected conduct was a 'substantial' or

28

**United States District Court**
For the Northern District of California

11

'motivating' factor in the defendants' decision." *Soranno's Gasco Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citation omitted). The plaintiff "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury.' " *Lacey v. Maricopa County,* 693 F.3d 896, 917 (9th Cir. 2012) (*citing Hartman v. Moore,* 547 U.S. 250, 260 (2006)).

    Here, Defendants argue that Plaintiff's Complaint fails to meet the "because of" prong of the *Rhodes* test because "Haldeman had a non-retaliatory purpose for issuing Parrish a disciplinary charge" – they claim that possessing a weapon is dangerous and that Haldeman would have issued such a charge against any prisoner caught with scissors regardless of whether he had filed a lawsuit against correctional officers. Mot. at 22. Defendants argument is, in essence, that Plaintiff is lying because the scissors belonged to Plaintiff and were not planted by Defendant Haldeman among his possessions. Mot. at 22. Thus, Defendants argue, "any alleged retaliatory motive could not have been the substantial motivating factor behind Defendant Haldeman's decision to issue the disciplinary charge" because Plaintiff's very possession of the sharpened scissors is a "sufficient reason to issue the disciplinary charge." *Id.* at 22-23. Defendants' argument fails because it is irrelevant at the motion to dismiss stage. In other words, Defendants' argument ignores Plaintiff's factual allegations and attempts solely to dispute the factual allegations in Plaintiff's Complaint, and factual disputes are not properly resolved in a motion to dismiss. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

    Viewing Plaintiff's Complaint in the light most favorable to Plaintiff as the Court must do at this stage of the proceedings, the Court concludes Plaintiff has alleged facts sufficient to support an inference that Plaintiff's lawsuit was a substantial factor in Haldeman's decision to plant scissors in Plaintiff's legal materials in order to frame him with weapon possession. First, Plaintiff explicitly alleges that sometime after Plaintiff filed his lawsuit in federal court in March 2011, Defendant Haldeman and the Assault Defendants embarked together on a "campaign of intimidation and harassment against Parrish" that included "threats of retaliation [and] the filing of

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

**United States District Court**
For the Northern District of California

1    false disciplinary charges against Parrish," and that this campaign was undertaken "with the

2    objective to convince Parrish to abandon his lawsuit [and to] refuse to testify and forego using the

3    federal court to redress his legitimate grievances." Complaint at ¶ 55. Plaintiff further alleges that

4    Haldeman planted the scissors as Plaintiff was returning to SVSP from a settlement conference

5    concerning Plaintiff's civil rights lawsuit, *id.* at ¶ 59-60, immediately after Haldeman heard

6    Plaintiff discuss the lawsuit with another inmate and after Haldeman said, "Shut the fuck up. . . .

7    Nobody wants to hear about your fucking civil lawsuit against my officers. You should have settled

8    you stupid fuck." *Id.* at ¶ 60. Moreover, Plaintiff's Complaint alleges that "some or all of the

9    Assault Defendants [and] Haldeman" were affiliated with the Green Wall gang – an organization

10   allegedly existing for the purpose of protecting its membership from prisoner complaints. *Id.* at ¶

11   22. A reasonable finder of fact could conclude from these allegations – if proven at trial – that

12   Plaintiff's lawsuit was in fact a substantial motivating factor in Haldeman's decision to frame

13   Plaintiff with weapon possession.

14          Nor is the Court convinced by Defendants' arguments in their Reply that Plaintiff fails to

15   state a claim because his claim is "factually frivolous," "fantastic," or "delusional." Reply at 12-13

16   (citing case law holding that a case may be dismissed as "factually frivolous" if allegations are

17   "fanciful" or "fantastic"). In essence, Defendants argue that Plaintiff's retaliation allegations are

18   implausible in light of how Haldeman allegedly planted the scissors at a time after Plaintiff's

19   lawsuit had been pending for "two and a half years"[4] and how Haldeman worked at an "entirely

20   separate" part of the prison than the Assault Defendants – thus suggesting it is implausible that

21   there was a "connection between Defendant Haldeman and the [Assault] Defendants." Reply at 12.

22   Defendants also note how Haldeman's search of Plaintiff's possessions in December 2012 occurred

23   two and a half years after the June 2010 cell extraction which is the basis of Plaintiffs' lawsuit.

24   Reply at 12-13. Defendants thus claim that the "timing and nature of Defendant Haldeman's search

25

26   [4] While Defendants claim that Plaintiff's lawsuit had been pending for "two and a half" years at the
     time when Haldeman searched Plaintiff's possessions in December 2012, the lawsuit had only been
27   pending for one year and nine months at that point. This is because the lawsuit was filed in March
     2011, ECF No. 1, and Defendants concede that the search by Haldeman of Plaintiff's possessions
28   occurred on December 5, 2012.

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

of Parrish's property does not suggest retaliation[.]" *Id.* Defendants' arguments do not convince the

Court that Plaintiffs' allegations are so implausible or fantastical that they fail scrutiny under *Iqbal.*

Plaintiff has alleged facts relating to the timing and nature of the retaliation that could support an

inference of retaliation. *Richardson*, 2013 WL 5800769, at *5 ("[T]he timing and nature of the

alleged retaliatory activities can provide circumstantial evidence of retaliation"). This is because, as

stated above, Plaintiff has alleged facts that Haldeman "knew of the protected activity" – i.e.

Plaintiff's lawsuit – and "expressed opposition to [it]." *Corales*, 567 F.3d at 568. Plaintiff alleges

that immediately after Haldeman heard Plaintiff talking about his lawsuit, Haldeman expressed his

knowledge of the lawsuit and his opposition to it, stating, "Shut the fuck up. . . . Nobody wants to

hear about your fucking civil lawsuit against my officers. You should have settled you stupid

fuck." Complaint at ¶ 60. Defendants attempt to minimize the import of this allegation, arguing that

it is somehow irrelevant because Plaintiff "does not claim that Defendant Haldeman was acting

beyond the scope of his responsibilities by inspecting [Plaintiff's] personal property or that

Defendant Haldeman and the [Assault] Defendants knew one another." Reply at 13. The Court is

not convinced, as Plaintiff does allege that Haldeman and the Assault Defendants knew each other

and were conspiring together. Complaint at ¶ 55. Simply put, the Court concludes that Plaintiff has

"allege[d] facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of

injury[.]'" *Lacy*, 693 F.3d at 917 (citation omitted) (holding that allegations sufficiently stated a

claim for First Amendment retaliation).

## 2. Chilling of Plaintiff's First Amendment Activity

For a First Amendment retaliation claim to be actionable, a plaintiff must show a

cognizable injury in the form of a chilling effect on his protected expression. *Lacey,* 693 F.3d at

917. A plaintiff need not allege that his speech was fully silenced by the retaliation, and indeed the

fact that the plaintiff continued filing lawsuits or grievances is not fatal to his case. *See Rhodes*,

408 F.3d at 566-69 (noting the "Catch-22" that would result if a plaintiff could only maintain a

retaliation suit upon a showing that he or she was too intimidated to file one); *Watison v. Carter*,

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

**United States District Court**
For the Northern District of California

668 F.3d 1108, 1114 (9th Cir. 2012) ("That the retaliatory conduct did not chill the plaintiff from

suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.").

Defendants insist that Plaintiff's Complaint nowhere alleges that Plaintiff's ability to

litigate this lawsuit was impeded by his disciplinary charge for weapon possession, and thus that

Plaintiff fails to adequately allege that his speech was chilled. Mot. at 23. Defendants' argument

fails under Ninth Circuit law. The Ninth Circuit has held that where a plaintiff pleads actual harm

resulting to him or her from the retaliatory action, an independent assertion that the harm had a

chilling effect is not required. *See Rhodes*, 408 F.3d at 567 n.11 (where a plaintiff has alleged that

he suffered harm, "[a]lleging harm and alleging the chilling effect would seem under the

circumstances to be no more than a nicety."); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.

2009) (noting that a "plaintiff who fails to allege a chilling effect may still state a claim if he

alleges he suffered some other harm"); *Watison*, 668 F.3d at 1114 (holding the same); *see also*

*Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that alleged harm was

enough to ground a First Amendment retaliation claim without independently discussing whether

that harm had a chilling effect). Moreover, an "objective standard governs the chilling inquiry"; a

plaintiff "does not have to show that his speech was actually inhibited or suppressed, but rather that

the adverse action at issue would chill or silence a person of ordinary firmness from future First

Amendment activities." *Brodheim*, 584 F.3d at 1271 (internal quotations omitted); *see also Pinard*

*v. Clatskunie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

Here, while Plaintiff nowhere explicitly states that his speech was chilled, that is

unnecessary because he pleads actual harm resulting to him from the retaliatory action – i.e. loss of

one year of behavioral credit and indefinite solitary confinement as a result of his disciplinary

charge. Furthermore, Plaintiff's Complaint satisfies *Brodheim*'s objective standard by alleging a

retaliatory adverse action that would tend to chill the protected expression of a person of ordinary

firmness. The harms to Plaintiff resulting from the weapons possession charge – loss of one year of

behavioral credit and indefinite solitary confinement – are undeniably severe. Those consequences

suggest that the retaliatory weapons possession charge would be enough to dissuade an inmate of

**United States District Court**
For the Northern District of California

15

United States District Court
For the Northern District of California

1    ordinary firmness from continuing to challenge prison officials. Confronted with a highly

2    analogous case in which an inmate wound up in administrative segregation because prison guards

3    allegedly filed a false disciplinary charge against him, the Ninth Circuit held that the prisoner had

4    alleged facts sufficient to allege that the retaliatory actions would have chilled or silenced a person

5    of ordinary firmness because he alleged actual harms including "his placement in administrative

6    segregation, and interference with his parole hearing." *Watison*, 668 F.3d at 1115. The Court finds

7    that *Watison* is controlling here. Further, it is clear that as in *Watison*, the fact that Plaintiff in this

8    case has persisted in his litigation does not defeat his retaliation claim. *See id*. at 1114 ("That the

9    retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the

10   retaliation claim at the motion to dismiss stage.").

11         Other courts addressing retaliation claims by prisoners have reached similar conclusions. In

12   fact, retaliation suits alleging far less significant actual harm to prisoners have been held to

13   sufficiently state a claim. *See, e.g., Watison*, 668 F.3d at 1116 (reversing dismissal of a retaliation

14   claim, holding that "chilling effect" was alleged by inmate's allegation that guard refused to serve

15   him breakfast once in retaliation for grievance) (internal quotations omitted); *Martin v. Hurtado*,

16   2008 WL 4145683, at *9 (S.D. Cal. Sept. 3, 2008) (denying motion to dismiss retaliation claim for

17   failure to allege chilling effect in case where plaintiff did not explicitly allege that defendants'

18   conduct chilled his speech but alleged that he had his television confiscated, reasoning that this

19   harm "would chill the exercise of his First Amendment rights.")

20         In sum, because the harm suffered by Plaintiff as a result of the weapons possession charge

21   would be sufficient to deter an inmate of ordinary firmness from exercising his or her First

22   Amendment rights, Plaintiff has adequately alleged that Haldeman's retaliatory action and the

23   resulting punishment to Plaintiff would tend to chill Plaintiff's protected expression.

### 3. Absence of a Legitimate Correctional Goal

25         A prisoner suing prison officials for retaliation must allege that the retaliatory action did not

26   advance a legitimate correctional goal, such as "the preservation of an internal order and discipline

27   and the maintenance of institutional security." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir.

28

16

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1   1995); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first

2   amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional

3   institution in the preservation of internal order and discipline, maintenance of institutional security,

4   and rehabilitation of prisoners."). A plaintiff successfully pleads this element by alleging that the

5   defendant's actions were arbitrary and capricious, *id.* at 527, or that they were "unnecessary to the

6   maintenance of order in the institution," *Franklin v. Murphy,* 745 F.2d 1221, 1230 (9th Cir. 1984).

7   Defendants argue that the possession of weapons by a prisoner can threaten the safety and security

8   of other inmates and staff, and that because Plaintiff was caught with a half-pair of scissors,

9   Defendant Haldeman served a legitimate correctional goal by subjecting Plaintiff to a disciplinary

10  charge. Mot. at 23. Thus, Defendants argue, "Parrish cannot allege the absence of a legitimate

11  penological goal." *Id.*

12         Defendants' argument is without merit. While institutional security is undeniably a

13  legitimate correctional goal and weapon possession undoubtedly a threat to it, Defendants ignore

14  that Plaintiff's Complaint alleges that the scissors were fraudulently planted on Plaintiff by

15  Haldeman as a pretext to punish him for filing his lawsuit against Defendants. Punishing a prisoner

16  for weapon possession is a legitimate exercise of correctional discretion, but *framing* a prisoner for

17  weapon possession – the retaliatory action alleged here – is not. *See Richardson*, 2013 WL

18  5800769, *5 ("Plaintiff's right to pursue litigation without retaliation is clearly established. [] Any

19  reasonable prisoner [sic] official would understand that it would violate a prisoner's rights to

20  initiate baseless disciplinary proceedings [...] because the prisoner had filed a lawsuit."). Simply

21  put, Defendants' argument here fails because Defendants again attempt to dispute the factual

22  allegations in Plaintiff's Complaint, despite the fact that at the motion to dismiss stage the Court is

23  bound to accept as true all facts alleged. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

24  1025, 1031 (9th Cir. 2008). Under the facts alleged in Plaintiff's Complaint, Haldeman could have

25  had no legitimate correctional goal in framing Plaintiff for weapon possession. *See, e.g.*, *Watison*,

26  668 F.3d at 1115 (prisoner alleged facts sufficient to allege the absence of a legitimate penological

27

28

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1   reason for the adverse actions because he "pleaded arbitrary, capricious, and retaliatory conduct"

2   by pleading that false disciplinary charges were filed against him).

3               **4. Conclusion**

4         The Court concludes that Plaintiff has adequately alleged that his disciplinary charge was

5   made because of his protected activity, tended to chill his exercise of First Amendment rights, and

6   did not advance a legitimate correctional goal. Plaintiff has therefore stated a First Amendment

7   retaliation claim with regard to Defendant Haldeman's alleged framing of him for weapon

8   possession. Thus, the Court DENIES Defendants' motion to dismiss Plaintiff's First Amendment

9   retaliation claim based on Plaintiff's disciplinary charge for weapon possession.

10        **B. Plaintiff's "Denial of Access to Courts" Claim**

11        The Court now addresses whether Plaintiff's claim based on Defendants' falsification of

12  reports should be dismissed. The Court GRANTS Defendants' motion to dismiss, as explained

13  below.

14        Included within the First Amendment right to petition the government is a right of access to

15  the courts. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The

16  right of access to the courts is indeed but one aspect of the right of petition.").[5] Prison inmates

17  unquestionably retain this right, *Bounds v. Smith,* 430 U.S. 817 (1977), which protects their

18  freedom "to litigate without active interference" by prison officials. *Silva v. Di Vittorio*, 658 F.3d

19  1090, 1102-1104 (9th Cir. 2011) (finding that seizing and withholding a prisoner's legal files

20  constituted active interference with prisoner's pending lawsuits where the prisoner alleged that his

21  lawsuits had consequently been dismissed as a result). This means, for example, that prison

22  officials may not actively impede an inmate's access to courts by confiscating the prisoner's legal

23  materials for an extended period of time. *Vigliotto v. Terry,* 873 F.2d 1201, 1202-1203 (9th Cir.

24  1989). There are "two types of access to the court claims: those involving prisoners' right to

_____

[5] Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances. *See Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995) (*overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230 n. 2, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)).

18

1    affirmative assistance and those involving prisoners' rights to litigate without active interference."

2    *Silva,* 658 F.3d at 1102.

3          Claims for denial of access to the courts may take two forms: a "forward-looking" claim

4    arising from the frustration of "a litigating opportunity yet to be gained," or a "backward-looking

5    claim" stemming from the loss of a meritorious suit that cannot now be tried because of the

6    interference of government officials. *Christopher v. Harbury,* 536 U.S. 403, 412-16 (2002).

7    "Forward-looking" claims "are claims that systemic official action frustrates a plaintiff or plaintiff

8    class in preparing and filing suits at the present time." *Id.* at 413. "Backward-looking" claims are

9    those "in aid . . . of specific cases that cannot now be tried (or tried with all material evidence)." *Id.*

10   at 413-14. "The official acts . . . may allegedly have caused the loss or inadequate settlement of a

11   meritorious case. . . . These cases do not look forward to a class of future litigation, but backward

12   to a time when specific litigation ended poorly, or could not have commenced, or could have

13   produced a remedy subsequently unobtainable." *Id.* at 414.

14         The Supreme Court has made clear that a prisoner's right of access to the courts is strictly

15   limited in two ways. First, the right is limited to direct criminal appeals, habeas petitions and civil

16   rights actions. *Lewis v. Casey*, 518 U.S. 343, 354 (1996).[6] Second, and critically here, in order to

17   state a valid claim for relief a prisoner must plead a specific actual injury to a non-frivolous legal

18   claim. *Id.* at 351-55. Actual injury is a "constitutional prerequisite" stemming from Article III

19   standing doctrine. *Id.* at 349 n.1, 351.

20         An actual injury in the context of an "access to the courts" claim is not generalized harm to

21   a prisoner's case, but rather "actual prejudice to contemplated or existing litigation" by being shut

22   out of court. *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*,

23   518 U.S. at 348, 351); *Christopher*, 536 U.S. at 415. To satisfy the actual injury requirement, a

24   plaintiff must allege facts showing that he or she "could not present a claim to the courts because of

25   the [Defendants'] failure to fulfill [their] constitutional obligations." *Allen v. Sakai*, 48 F.3d 1082,

26   _____

27   [6] In *Lewis,* the Arizona Department of Corrections ("ADOC") appealed an injunction imposed by
     the district court for the District of Arizona – upheld by the Ninth Circuit – requiring the ADOC to
     significantly upgrade their law library facilities. The Supreme Court reversed because of the failure
28   to find imminent actual injury resultant from the existing conditions. *Id.* at 349-53 & n. 3.

1091 (9th Cir. 1994); *see also Ryland v. Shapiro*, 708 F.2d 967, 1264 (5th Cir. 1983) ("[a] plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions. Rather, the plaintiff must present evidence that the defendant['s] actions actually rendered any available state court remedy ineffective."). Examples of actual prejudice include the "inability to meet a filing deadline or to present a claim." *Lewis,* 518 U.S. at 348 (citations and internal quotations omitted). Courts interpreting *Lewis* have held that a plaintiff must allege facts showing injury to a plaintiff's case that is concrete and demonstrable, not merely hypothetical. *See Hernandez v. Broin*, 2012 WL 2327645 (N.D. Cal. June 19, 2012) ("A plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions.") (citation omitted). The Ninth Circuit has held that backward-looking claims specifically require a plaintiff to allege, as an actual injury, "the loss of a 'nonfrivolous' or 'arguable' underlying claim." *Phillips v. Hust,* 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher,* 536 U.S. at 413-14), *vacated and remanded on other grounds by Hust v. Phillips,* 555 U.S. 1150 (2009). In sum, unless a plaintiff can show an actual injury, such as that "a complaint he prepared was dismissed" or that Defendants' conduct rendered him "unable even to file a complaint," he lacks standing and his claim must be dismissed. *Lewis*, 518 U.S. at 351.

Here, the Court concludes that Plaintiff's claim fails to adequately plead actual injury and must be dismissed for lack of Article III standing. Before explaining the rationale behind that holding, the Court must address two preliminary issues.

First, the Court notes that in their motion to dismiss, Defendants construe Plaintiff's claim with regard to the filing of false incident reports as sounding in *retaliation*, because Defendants argue that Plaintiff's allegations are insufficient to state a retaliation claim. Mot. at 24. However, Defendants misconstrue the nature of Plaintiff's claim. Plaintiff's Complaint nowhere alleges that the filing of false reports was undertaken with a retaliatory purpose. Instead, it alleges that:

> "[T]he Assault Defendants violated Parrish's First and Fourteenth Amendment right to petition for redress of grievances by agreeing to cover up their malicious and sadistic assault of Parrish. They accomplished this goal through the filing of materially false and misleading reports in violation of CDCR and SVSP regulations."

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1    Complaint at ¶ 73. The word retaliation does not appear in the section where Plaintiff sets forth his

2    § 1983 claim based on Defendants' filing of false incident reports. Thus, the Court concludes that

3    this claim alleges not retaliation but rather interference with Plaintiff's right to access the courts –

4    i.e. interference with his ability to litigate his Eighth Amendment claim based on the "malicious

5    and sadistic assault of Parrish" – due to Defendants' falsification of evidence. Plaintiff's

6    Opposition confirms this interpretation because it clarifies that Plaintiff's claim alleges that the

7    filing of false reports violated Plaintiff's right of access to the courts. Opp'n at 15 ("Interference

8    with the First Amendment right of access to the courts by engaging in a cover-up of illegal acts

9    gives rise to a claim for relief under section 1983.").[7] Defendants belatedly recognize that this

10   claim is an "access to the courts" claim in their Reply, and argue for the first time in their Reply

11   that this claim should be dismissed because Plaintiff has failed to allege actual injury as required

12   for any "access to courts" claim under *Lewis*. Reply at 13-14. New issues raised in a reply are

13   generally waived. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).[8] However, the Court

14   will not deem this argument waived and will address it here because the actual injury requirement

15   for pleading an access to courts claim is rooted in constitutional standing doctrine. *See Lewis*, 518

16   U.S. at 349 ("The requirement that an inmate alleging a violation of *Bounds* must show actual

17   injury derives ultimately from the doctrine of standing"). Thus, the sufficiency of Plaintiff's

18   pleading with regard to actual injury is jurisdictional and not waivable, and a court must address it

19   whether Defendants raised the argument or not. *See id.* at 349, n.1 (actual injury "is jurisdictional

20   and not subject to waiver."); *see also Meeks v. Peterman*, 2012 WL 3929716 at *3 (D. Nev. June

21   19, 2012) ("To establish a violation of the right to access the courts, a prisoner must establish that

22   he or she suffered an actual injury, a jurisdictional requirement that flows from the standing

23   doctrine and may not be waived").

---

[7] While the Complaint does not explicitly state that Plaintiff's theory underlying his § 1983 claim is
that Defendants' actions deprived Plaintiff of his "access to courts," the Court concludes this must
be the basis for Plaintiff's "petition for redress of grievances" claim, given that his Opposition
states as much, and given that this appears to be the only cognizable theory upon which he could
bring a claim for a violation of his right to petition for redress of grievances.
[8] Because of Defendants' misreading of Plaintiff's Complaint, Defendants failed to raise in their
motion to dismiss any argument that Plaintiff failed to allege actual injury as required for an access
to courts claim.

21

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

**United States District Court**
For the Northern District of California

1

Second, the Court explains the nature of Plaintiff's access to courts claim. While Plaintiff's

2    Complaint is unclear as to precisely which of Plaintiffs' three other legal claims[9] were prejudiced

3    by Defendants' filing of false reports and thereby is the basis of his denial of access to courts

4    claim, the Court concludes that the only claim for which Plaintiff alleges he was denied access to

5    the courts in order to litigate is his Eighth Amendment claim. This is because the Complaint

6    explicitly alleges Defendants violated Plaintiffs' right to petition by covering up the Defendants'

7    "malicious and sadistic" assault of Plaintiff, which is the conduct underlying the Eighth

8    Amendment claim. The Complaint states:

9
10
11

> "[T]he Assault Defendants violated Parrish's First and Fourteenth Amendment right to petition for redress of grievances by agreeing to cover up their malicious and sadistic assault of Parrish. They accomplished this goal through the filing of materially false and misleading reports in violation of CDCR and SVSP regulations."

12   Complaint at ¶ 73. Presumably, Plaintiff is arguing in his denial of access to courts claim that

13   Defendants attempted to deny his access to the courts by covering up the evidence he needs to

14   prove his Eighth Amendment claim. A cover-up may indeed be actionable as a denial of the right

15   of access to courts when state officials shield facts that, if known, would have resulted in a

16   successful lawsuit. *See Karim-Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 625 (9th Cir.

17   1988) (holding that a cover-up Fourth Amendment violation is actionable upon a showing that

18   defendants obstructed justice); *see also Delew v. Wagner,* 143 F.3d 1219, 1222 (9th Cir. 1998)

19   (holding that a § 1983 claim can be based on police officers' conspiring to cover up evidence that

20   is unknown to the plaintiffs, if such cover-up deprives the plaintiff of meaningful access to the

21   courts).

22

Here, the Court concludes that Plaintiff has failed to allege actual injury to his Eighth

23   Amendment claim – or to any of his legal claims for that matter – in the instant lawsuit. Besides

24   stating that the Assault Defendants' falsified reports led to a "corrupted investigation" of his

25   grievances, Complaint at ¶ 53, Plaintiff fails to make even conclusory allegations that this conduct

26   resulted in any prejudice to a non-frivolous legal claim he has raised or might otherwise have

27
28

---

[9] Those include Plaintiff's § 1985 conspiracy claim, § 1983 retaliation claim, and his § 1983 Eighth Amendment claim.

22

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  raised in this case. *Greene*, 648 F.3d at 1018. To the extent Plaintiff raises a forward-looking claim,

2  "[t]he Supreme Court's jurisprudence . . . reveals at least two necessary elements: an arguable

3  underlying claim and present foreclosure of a meaningful opportunity to pursue that claim."

4  *Broudy v. Mather,* 460 F.3d 106, 120-21 (D.C. Cir. 2006). Plaintiff has failed to identify any

5  foreclosure of a meaningful opportunity to pursue his claims – i.e., he fails to explain or allege why

6  he "could not present a claim to the courts because of the [Defendants'] failure to fulfill [their]

7  constitutional obligations." *Allen*, 48 F.3d at 1091.[10] To the contrary, it is clear that any forward-

8  looking claim by Plaintiff fails as a matter of law. This is because Plaintiff has already successfully

9  filed the instant suit, prosecuted it over the course of three years, and thus far evaded a dismissal of

10  the entire case. The very fact that a plaintiff has been able to file his complaint and air his

11  grievances in district court suffices to undermine any allegation of actual injury in the form of not

12  being able to "present a claim to the courts[.]" *Allen*, 48 F.3d at 1091. *See, e.g.*, *Gronquist v.*

13  *Deshazer*, 292 Fed. Appx. 704 (9th Cir. 2008) (unpublished) (affirming dismissal of access to

14  courts claim where plaintiff did not "allege any specific instance in which the prosecution of his

15  lawsuits was compromised"); *Canell v. Multnomah County,* 141 F.Supp.2d 1046, 1056 (D. Or.

16  Feb. 26, 2001), *aff'd,* 14 Fed. Appx 900 (9th Cir. 2001) ("Plaintiff was able to initially file this

17  action and file three lengthy amended complaints, successfully defend a counter-claim, conduct

18  discovery, file numerous motions and briefs including a voluminous response to defendants'

19  motion for summary judgment. Plaintiff has [thus] failed to demonstrate any actual injury resulting

20  from the circumstances he alleges constituted denial of access to the courts[.]"); *Newman v.*

21  *McLean*, 2009 WL 688859 at *3 (N.D. Cal. Mar. 13, 2009) (holding that although plaintiff "has a

22

23  _____

[10] In fact, Plaintiff has failed to show that officers have any affirmative constitutional obligation to
24  file prison incident reports truthfully. Nor indeed can he, as prisoners have no freestanding
constitutional right to any particular administrative prison grievance system for investigating
25  complaints. *See Al-Hizbullahi v. Nimrod*, 122 F. App'x 349, 350 (9th Cir. 2005) (holding that
"inmates lack a separate constitutional entitlement to a specific prison grievance procedure.");
26  *Norman v. Walker*, CIV S-10-1344-KJM, 2011 WL 6153274 (E.D. Cal. Dec. 12, 2011) ("Because
there is no right to any particular grievance process, it is impossible for due process to have been
27  violated by ignoring or failing to properly process grievances."). The alleged falsifications of
which Plaintiff complains may undermine the prison's own internal administrative system for
28  investigating abuses, but do not suggest that Defendants failed to fulfill a constitutional obligation.

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1    right of access to the courts, the filing of this action makes clear that the hindrances of which he

2    appears to complain did not cause him an actual injury to court access."); *Ornelas v. Giurbino*, 358

3    F. Supp.2d 955, 972-73 (S.D. Cal. 2005) (dismissing without leave to amend access to the courts

4    claim because prisoner's ability to file lawsuit demonstrated that his access to the courts had not

5    been impaired).[11]

6          To the extent Plaintiff is raising a "backward-looking" claim, the Ninth Circuit has held that

7    Plaintiff must allege, as an injury, "the *loss* of a 'nonfrivolous' or 'arguable' underlying claim."

8    *Phillips,* 477 F.3d at 1076 (emphasis added); *Neff v. Bryant,* 772 F.Supp.2d 1318, 1324 (D. Nev.

9    2001) ("Plaintiff must allege that as a result of [Defendants' conduct], . . . he lost the underlying

10   civil claim itself."). Plaintiff has failed to allege or show the loss of his underlying Eighth

11   Amendment claim. Indeed, Plaintiff cannot allege the "loss" of this claim at this point in time

12   because litigation of that claim is still pending in this very Court. This leads to the conclusion not

13   only that Plaintiff cannot allege an actual injury for purposes of standing, but that his claim is

14   premature and not ripe for adjudication. *See Polk v. Cavin*, 2012 WL 1893529, *4 (N.D. Cal. May

15   23, 2012) (dismissing access to courts claim without prejudice and noting that "because plaintiff's

16   lawsuit against County defendants remains pending, she has sustained no 'actual injury' as a result

17   of being 'shut out of court'  . . . [and] her denial of access claim is premature."). This is because the

18   Ninth Circuit has held that a § 1983 claim based on allegations of a cover-up of wrongdoing is

19   premature and not ripe where, as here, plaintiff's action seeking redress for the underlying

20   constitutional violations remains pending. *See Karim–Panahi,* 839 F.2d at 625 (holding that a §

21   1983 access to courts claim alleging that defendant officers falsified facts and destroyed

22   documentary evidence in an effort to cover up alleged Fourth Amendment violations was unripe

23

24   [11] To the extent Plaintiff intends to allege an injury to his ability to litigate his Eighth Amendment
     claim *effectively* rather than his ability to litigate it at all, such an injury is insufficient as a matter
25   of law to convey standing for an access to the courts claim. *See Fitzhugh v. Wieking*, 2002 WL
     1812831 at *2-3 (N.D. Cal. Aug. 1, 2002) (dismissing without leave to amend access to the courts
26   claim because plaintiff's complaint alleged injury to only "his ability to litigate effectively after
     commencement of litigation," not his ability to bring a suit in the first place and thus he had not
27   alleged actual injury). Indeed, the Supreme Court in *Lewis* specifically rejected the notion that the
     state is required to enable the prisoner to "litigate effectively once in court." *Lewis*, 518 U.S. at
28   354.

United States District Court
For the Northern District of California

24

1    when action challenging misconduct was pending); *Morales v. City of Los Angeles,* 214 F.3d 1151,

2    1154-55 (9th Cir. 2000) (holding that Plaintiff's denial of access to the courts claim would

3    "accrue" only once "the alleged police misconduct resulted in judgments being entered against

4    [plaintiffs].");  *Delew v. Wagner,* 143 F.3d 1219, 1222-23 (9th Cir. 1998) (allegations that

5    defendants deprived plaintiffs of their right of access to the courts by "covering up the true facts"

6    of plaintiffs' daughter's death were not ripe for adjudication in federal court because plaintiffs'

7    wrongful death action was still pending in state court). To put it another way, "denial-of-access-to-

8    the-courts claims arising from alleged police misconduct ... are not ripe until the trial court

9    proceedings are concluded adversely to the plaintiffs." *Morales,* 214 F.3d at 1155 (citation

10   omitted).

11           The Ninth Circuit has held that premature claims for denial of access to the courts should be

12   dismissed without prejudice. *Delew,* 143 F.3d at 1222-23; *see also Polk,* 2012 WL 1893529, *4. As

13   such, courts routinely dismiss access to courts claims *without prejudice* when the claim is not ripe

14   because the underlying constitutional claim is still pending in court. *See Lynch v. Barrett,* 2010

15   WL 3938359 (D. Co. Oct. 5, 2010) (dismissing without prejudice "backward-looking" access to

16   courts claim which was not yet ripe because "Plaintiff's injury is contingent on the success (or lack

17   thereof) of his [underlying] excessive force claim."). This includes claims similar to the one at

18   issue here, which involve allegations that state officials covered up or falsified information. *See,*

19   *e.g.*, *Madrigal v. City of Santa Maria*, 2011 WL 486559, *6 (C.D. Cal. Feb. 7, 2011) (dismissing

20   access to courts claim based on cover-up allegations "without prejudice, unless and until

21   proceedings are concluded adversely to Plaintiffs" because the claim was "not ripe for judicial

22   consideration, because the underlying litigation has not concluded"); *Carr v. Her*, 2012 WL

23   968075, *1 (E.D. Cal. March 21, 2012) (adopting magistrate judge's recommendation and thus

24   dismissing without prejudice access to courts claim based on allegations that defendants falsified

25   incident reports to cover up misconduct because the "claim is not ripe until [plaintiff] can show that

26   his underlying suit—his pending Eighth Amendment claims against defendants—fails"); *McDaniel*

27   *v. Hubbard*, 2010 WL 3769110 (E.D. Cal. Sept. 22, 2010) (adopting magistrate judge's

28

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

**United States District Court**
For the Northern District of California

1   recommendation and thus dismissing access to courts claim without prejudice because "plaintiff's

2   cover-up [access to courts] claim is not ripe until he can show that his underlying suit—his pending

3   claim of excessive force against defendant []—fails"). Accordingly, because the Court finds that

4   Plaintiff has not alleged an actual injury and his claim is not ripe, Plaintiff's § 1983 claim for

5   violation of Plaintiff's right to petition the government based on Defendants' falsification of

6   reports is DISMISSED without prejudice. If the Court dismisses Plaintiff's underlying Eighth

7   Amendment with prejudice, Plaintiff may file a new separate lawsuit on his access to the courts

8   claim.[12]

9   **IV. CONCLUSION**

10          For the foregoing reasons, the Court DENIES without prejudice Defendants' motion to

11   dismiss on failure to exhaust grounds. The Court DENIES Defendants' motion to dismiss

12   Plaintiff's First Amendment retaliation claim based on Plaintiff's disciplinary charge for weapon

13   possession. The Court GRANTS Defendants' motion to dismiss Plaintiff's First Amendment

14   access to the courts claim based on Defendants' falsified reports without prejudice. There is no

15   leave to amend. If Plaintiff's Eighth Amendment claim is dismissed with prejudice, Plaintiff may

16   file a new separate lawsuit on his access to the courts claim.

17

18   _____

[12] The Court notes that nowhere in his Opposition does Plaintiff fully articulate the precise theory
19   underlying his access to courts claim nor allege a concrete injury. Plaintiff's Opposition simply
recites that the Assault Defendants filed false and misleading incident reports regarding the cell
20   extraction and that this interfered in unspecified ways with Plaintiff's right to petition the
government and access the courts to litigate his claims. Opp'n at 15. The only authority Plaintiff
21   advances in support of his access to courts claim is *Ryland v. Shapiro*, 708 F.2d 967, 971-72 (5th
Cir. 1983), which Plaintiff cites for the proposition that covering up illegal acts can give rise to a §
22   1983 claim for interference with a right of access to the courts. However, *Ryland* is inapposite on
the issue of actual injury. In *Ryland*, the Fifth Circuit reversed and remanded a district court's
23   dismissal of a § 1983 suit alleging that a prosecutorial cover-up interfered with the victim's access
to the courts. *Id.* at 969-71. The court did not excuse the plaintiffs in that case from showing actual
24   injury, nor did it hold that the plaintiffs had satisfied that requirement. Rather, the panel reversed
because the district court had mischaracterized plaintiffs' claim and failed to properly analyze it.
25   *See id.* at 973 ("[T]he district court viewed the Rylands' claim merely as a suit by citizens to
compel state prosecutors to initiate a *criminal* action against an alleged murderer. In so limiting its
26   analysis, the district court failed to entertain the legal theory upon which the Rylands based their
case.") (emphasis in original). Thus, *Ryland*'s holding does not resolve the pertinent issue in the
27   instant case: whether Plaintiff adequately pleaded actual injury under *Lewis*. Moreover, *Ryland*
predated the Supreme Court's clarification in *Lewis* of the actual injury limitation on access to
28   courts claims.

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**IT IS SO ORDERED.**

Dated: May 13, 2014

_Lucy H. Koh_
_____

LUCY H. KOH
United States District Judge

27

Case No.: 11-CV-01438
ORDER GRANTING IN PART WITHOUT PREJUDICE AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS, AND DENYING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY