1
2
3
4
5
6
7

**United States District Court**
For the Northern District of California

8                         UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11   KAHEAL PARRISH,                    )   Case No.: 11-CV-01438-LHK
                                        )
12          Plaintiff,                  )
13      v.                              )   ORDER GRANTING IN PART AND
                                        )   DENYING IN PART DEFENDANTS'
14   A. SOLIS, et al.,                  )   MOTION FOR SUMMARY JUDGMENT
                                        )
            Defendants.                 )
15   _____)

16

17          Plaintiff Kaheal Parrish ("Parrish") brings this action under 42 U.S.C. § 1983 and § 1985(5)

18   against defendants Gregorio Salazar, Raul Machuca, Jr., Brandon Powell, Adrian Machuca, Jason

19   Sanudo (the "Extraction Defendants") and Maurice Haldeman (collectively, "Defendants"). All

20   Defendants are correctional officers at Salinas Valley State Prison. Parrish has alleged violations of

21   his First, Eighth, and Fourteenth Amendment rights under the U.S. Constitution. Before the Court

22   is Defendants' motion for summary judgment. ECF No. 202 ("Motion"). On October 30, 2014, the

23   Court held a hearing on this Motion. Having considered the record in this case, applicable law, oral

24   argument, and the parties' briefs, the Court GRANTS IN PART AND DENIES IN PART

25   Defendants' Motion, for the reasons stated below.

26

27

28

# I. BACKGROUND

## A. Factual Background

Parrish is a prisoner of the California Department of Corrections and Rehabilitation ("CDCR"), and from 2006 to 2013 was principally incarcerated at Salinas Valley State Prison ("SVSP"). First Am. Compl. ¶¶ 1, 9. While incarcerated at SVSP, Parrish was placed in the Enhanced Outpatient Program, which provides care to prisoners such as Parrish who are afflicted with mental disorders. Exhibit A to Declaration of Kaheal Parrish in Opposition to Defendants' Motion for Summary Judgment ("Parrish Decl. Ex. A"), ¶ 3.

Parrish, citing a 2002 report from the state Office of Inspector General, has alleged that a gang of prison guards who call themselves the "Green Wall" was active at SVSP during Parrish's period of incarceration there. First Am. Compl. ¶¶ 3-6; Exhibit 23 to the Declaration of Christine Hung in Support of Plaintiff's Opposition to Motion for Summary Judgment ("Hung Decl."), ECF No. 216. Parrish claimed that members of the Green Wall engaged in the systematic abuse, harassment, and intimidation of prisoners and other prison staff. First Am. Compl. ¶¶ 28-31. Parrish has also claimed that members of the Green Wall typically wear dark green uniforms, gloves, and use a particular hug or handshake, and will make verbal statements alluding to their membership in the group. Parrish Decl. Ex. A, ¶ 5. Parrish further contended that members of the Green Wall partook of a "Code of Silence," an agreement to conceal evidence and lie to investigators to protect one another from disciplinary action and criminal prosecution. *Id.* In support of his allegations, Parrish cited to a February 2004 memorandum to all CDCR employees from the department director, which stated that "[r]ecently . . . the public's trust has been undermined by the operation of a Code of Silence within the [CDCR]." Hung Decl., Ex. 24. The memorandum further stated that CDCR was implementing a "zero tolerance policy concerning the Code of Silence." *Id.*

According to Parrish, several of the Defendants, including Adrian Machuca, Raul Machuca, Sanudo, and Powell, are members of the Green Wall. *Id.* ¶¶ 9-13. All Defendants deny affiliation with a group called the Green Wall. *See* Exhibit B to Declaration of Robert Duncan in Support of

Motion for Summary Judgment ("Duncan Decl."), 173:7-:25; *id*. Ex. C, 244:13-:19; *id*. Ex. D, 81:18-86:24; *id*. Ex. E, 35:1-:2; *id*. Ex. F, 61:5-:24; *id*. Ex. G, 72:3-:15

### 1.    Parrish's Cell Extraction

In February 2010, CDCR staff charged Parrish with committing indecent exposure. First Am. Compl. ¶ 32. In May 2010, Parrish alleged that Raul Machuca told Parrish that if he were ever charged with indecent exposure again, Parrish would "feel the Green Wall." Parrish Decl., Ex. A, ¶ 10.

On June 11, 2010, Parrish was charged with indecent exposure against an SVSP licensed clinical social worker, who reported the incident to Sergeant Raul Machuca. Hung Decl., Ex. 2, at 2. Shortly afterward, Parrish claimed that Powell came by his cell and told Parrish, "Sergeant Machuca said he already told you next time you expose yourself, you're getting fucked up," and "[y]ou got an ass-kicking coming." Hung Decl., Ex. 41 ("Parrish Dep."), ECF No. 216-11, 160:11-:17.

At approximately noon, Parrish told Psychiatric Technician Kevin Munn that he was feeling suicidal and that he had swallowed metal. Parrish Dep. 175:9-:19; Hung Decl., Ex. 40, ECF No. 216-11, 259:20-:25. Shortly after, Powell informed Raul Machuca that Parrish had covered his cell windows, except for a small section in the lower right window of the cell door. Hung Decl., Ex. 4, ECF No. 216-3, at 3. At about 12:40 p.m., Munn told Raul Machuca that Parrish stated he was feeling suicidal and refused to exit his cell for a mental health evaluation. *Id*.

Raul Machuca ordered Powell to get a concave, plexiglass shield, approximately 3 feet long by two and a half feet wide. *Id.*; Hung Decl., Ex. 38, ECF No. 216-11, 239:13-:4. Raul Machuca and Powell went to Parrish's cell. Hung Decl., Ex. 4, at 3. According to the incident report from the cell extraction, Raul Machuca could not see into the cell because Parrish had covered up all the windows. *Id*. Raul Machuca ordered Parrish to uncover his windows and turn on his cell lights. *Id*. Parrish repeated his statement that he was suicidal and that he had swallowed metal. *Id*. At some point, Raul Machuca and five other correction officers entered Parrish's cell to conduct a cell extraction. *Id*.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

It is at this point that the stories of the Extraction Defendants and Parrish sharply diverge. According to Raul Machuca, the extraction team consisted of himself, Powell, and three other correction officers, Chavez, Sanudo, and Spaulding. *Id*. When the extraction team entered, Parrish was hiding behind a sheet and not visible. *Id*. Parrish then ran toward Powell's shield, hitting it with his left shoulder and both hands. *Id*. Powell forced Parrish to the ground, and Parrish attempted to break free. *Id*. The correction officers subdued Parrish, and during the ensuing struggle an officer accidentally discharged pepper spray. *Id*. The correction officers placed Parrish in handcuffs and leg restraints. *Id*. According to a report prepared by Munn, the only injury Parrish suffered as a result of the cell extraction was pepper spray to the face. *See id*. at 22.

According to Parrish, Adrian Machuca (the brother of Raul Machuca) was present and a member of the cell extraction team. Parrish Dep. 182:11-:24. Parrish denied that he was hiding behind a sheet when the extraction team entered his cell. *Id*. 189:23-192:6. Rather, Parrish said he was standing in his cell, plainly visible. *Id*. Parrish claimed that Powell charged into the cell and rammed the plexiglass shield into Parrish, knocking the wind from Parrish. *Id*. 181:6-:21. Powell then forced Parrish to the ground. *Id*. The extraction team put Parrish in handcuffs and ankle restraints, and Raul Machuca began talking to Adrian Machuca in Spanish. *Id*. Parrish then claimed Raul Machuca walked behind him, pulled down his boxers, and discharged pepper spray into his anus and testicles, then circled back to Parrish's front and sprayed him in the face. *Id*. The correction officers then started to punch and kick Parrish. *Id*. Powell allegedly punched Parrish five times in the back of his head and called him a racial slur. *Id*. Raul Machuca kicked and punched Parrish, calling Parrish a "pervert." *Id*. After about three to four minutes, the correction officers stopped. *Id*. 181:23-182:3. Raul Machuca then told Adrian Machuca to leave because "you shouldn't be here." *Id*. As a result of the assault, Parrish contended he suffered a swollen left eye; a cut above his left eye; a cut and swollen bottom lip; bruises to his head, hands, back, and legs; mental and emotional trauma; and pepper spray to his entire body. First Am. Compl. ¶ 43.

Salazar subsequently drafted and signed the CDCR Crime/Incident Report Form 837-A regarding the cell extraction. Hung Decl., Ex. 4. The report summarized the incident, and noted that an x-ray determined Parrish swallowed three pieces of metal. *Id*. at 3. The report also stated

4

1    that there "was an accidental discharge of [pepper spray], but decontamination was not necessary."

2    *Id*. The report concluded that Parrish was guilty of obstructing a peace officer resulting in the use

3    of physical force, although the report did not recommend referral of the incident to the Monterey

4    County District Attorney. *Id*. at 4. Parrish claimed that he objected to Salazar leading the

5    investigation of the incident because Parrish believed Salazar personally authorized the cell

6    extraction. Parrish Decl., Ex. A, ¶ 9. Parrish also alleged that Salazar failed to follow CDCR

7    regulations during Salazar's investigation of the cell extraction, including failure to videotape his

8    interview with Parrish, and failure to ask Parrish about Parrish's claim of excessive force. First

9    Am. Compl. ¶¶ 4-5. On August 24, 2010, Parrish filed a Form 602 Inmate Grievance that alleged

10   excessive force by the Extraction Defendants and the falsification of paperwork in the subsequent

11   investigation. *See* ECF No. 204-1, at 8-13.

### 2.    Alleged Acts of Intimidation Against Parrish

13          On March 28, 2011, Parrish filed his Complaint in this lawsuit, alleging among other

14   things, excessive force by the Extraction Defendants, and that other correction officers authorized

15   and supported the Extraction Defendants' acts. *See* ECF No. 1. After the filing of this lawsuit,

16   Parrish alleged that several of the Defendants, as well as non-parties Martin Valenzuela, Arturo

17   Villalobos, and Roberto Machuca,[1] worked in cooperation with one another to dissuade Parrish

18   from prosecuting this action. For instance, according to an administrative grievance that Parrish

19   filed in April 2012, multiple correction officers including Valenzuela and Roberto Machuca,

20   falsely accused Parrish of carrying a contraband cell phone and subjected Parrish to a strip search

21   in a holding cage. ECF No. 204-1, at 39. Parrish also alleged that Roberto Machuca told him "stop

22   your litigation and your program will run smooth." *Id*. Subsequent to his strip search, Parrish

23   claimed he was subject to another retaliatory search in approximately May 2012, after Parrish

24   refused to withdraw his April 2012 administrative grievance. *Id*. at 47.

### 3.    Parrish's Encounter With Haldeman

---

[1] Roberto Machuca is the brother of Adrian and Raul Machuca. Parrish alleged that Roberto Machuca is also a member of the Green Wall. Parrish Decl., Ex. A, ¶ 14.

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   On August 28, 2012, the Court ordered the parties to attend a settlement conference. ECF

2   No. 79. Parrish was subsequently granted a writ to attend the settlement conference in person. ECF

3   No. 81. A CDCR Inmate Inventory Form 1083 prepared when Parrish left to attend the conference

4   indicated that Parrish's property contained nothing innocuous. *See* Hung Decl., Ex. 21. The

5   settlement conference occurred on November 28, 2012, and the parties were unable to settle. First

6   Am. Compl. ¶ 59.

7   Parrish returned to SVSP from the settlement conference on December 5, 2012. *See* Hung

8   Decl., Ex. 20, ECF No. 216-7. At about 3:30 p.m., Parrish was in the receiving and release area of

9   SVSP, where Haldeman was on duty. *Id.* Parrish's personal possessions, which had been stored at

10  SVSP since Parrish left to attend the settlement conference, were being returned to him. *See id.*

11  While Haldeman was searching Parrish's possessions, Parrish was discussing his lawsuit with

12  another prisoner. Parrish Dep. 236:19-237:13, 239:20-:23. According to Parrish, Haldeman then

13  told Parrish to "shut . . . up" and added, "Nobody want[s] to hear about your fucking civil lawsuit

14  against my officers." *Id.* Parrish also alleged that Haldeman told him, "You should have settled you

15  stupid fuck." Parrish Decl., Ex. A ¶ 26.

16  Parrish claimed he then saw Haldeman take an object from Haldeman's left pants' pocket

17  and place it inside one of the envelopes in a box of Parrish's legal materials. Parrish Dep. 242:13-

18  246:13. Haldeman subsequently looked in the envelope and pulled out a half pair of scissors, and

19  then said he had found what he was looking for. *Id.* As a result of this incident, Parrish was found

20  guilty of possession of a weapon. Hung Decl,. Ex 20, at 2, 7. On April 10, 2013, Parrish was

21  transferred to CSP-Sacramento, and placed in the Security Housing Unit (a form of solitary

22  confinement) for an indefinite period of time as a result of his conviction for possession of a

23  weapon. First Am. Compl. ¶ 63.

24  **B.      Procedural History**

25  On December 5, 2011, the Extraction Defendants and other named defendants moved for

26  summary judgment on all claims in Parrish's Complaint. ECF No. 41. On August 28, 2012, this

27  Court granted the motion for summary judgment as to certain defendants, but denied it as to the

28  Extraction Defendants. *See* ECF No. 79. The Court also denied the Extraction Defendants' motion

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1    for summary judgment on the grounds of qualified immunity.

2           Parrish subsequently filed his First Amended Complaint on November 21, 2013.[2] ECF No.

3    120. In his First Amended Complaint, Parrish raised three claims for relief. First, Parrish alleged a

4    claim under 42 U.S.C. § 1983 against the Extraction Defendants for violating his right to be free

5    from gratuitous physical punishment, in contravention of Parrish's Eighth and Fourteenth

6    Amendment rights. First Am. Compl. ¶¶ 64-69. Second, Parrish alleged a claim under § 1983

7    against Haldeman for violating his right to petition the government for a redress of grievances, in

8    contravention of Parrish's First and Fourteenth Amendment rights.[3] *Id*. ¶¶ 70-75. Finally, Parrish

9    alleged a claim under 42 U.S.C. § 1985(2) against the Extraction Defendants and Haldeman for

10   conspiring, along with several non-parties, to use force and intimidation to deter Parrish from

11   testifying in court. *Id*. ¶¶ 76-79.

12          On September 25, 2014, Defendants moved for summary judgment on multiple grounds.

13   *See* ECF No. 202. First, Defendants contended that Parrish failed to exhaust available

14   administrative remedies as to his excessive claim against Salazar, and Parrish's § 1985(2) claim

15   against the Extraction Defendants, Haldeman, and the non-party co-conspirators. Mot. at 11-19.

16   Second, Defendants alleged that Parish failed to raise any issue of material facts regarding his

17   excessive force claim against Adrian Machuca and Salazar, Mot. at 19-22; his retaliation claim

18   against Haldeman, *id*. at 22-25; and his § 1985(2) conspiracy claim, *id*. at 25-28. Finally,

19   Defendants claimed they are entitled to qualified immunity. *Id*. at 28-29. On October 9, 2014,

20   Parrish filed his opposition to Defendants' Motion ("Opp'n"). ECF No. 215. Parrish also filed two

21          [2] The parties subsequently stipulated to Parrish filing a corrected version of his First
22   Amended Complaint on January 16, 2014. ECF No. 118.
            [3] Parrish's First Amended Complaint also asserted his First Amendment claim against the
23   Extraction Defendants, in addition to Haldeman. First Am. Compl. ¶¶ 73. Specifically, Parrish
     argued that the Extraction Defendants denied Parrish's First Amendment right to petition this Court
24   with his grievances by "agreeing to cover up their malicious and sadistic assault of Parrish" and
     "filing . . . materially false and misleading reports." *Id*. On December 27, 2013, Defendants filed a
25   motion to dismiss Parrish's First Amended Complaint on the grounds that, among other things,
     Parrish failed to state a claim against the Extraction Defendants for violation of Parrish's First
26   Amendment rights. *See* ECF No. 111. The Court subsequently granted Defendants' motion as to
     Parrish's First Amendment allegation against the Extraction Defendants. *See* ECF No. 157. The
27   Court concluded that Parrish failed to allege an actual injury, and that Parrish's First Amendment
     claim against the Extraction Defendants was not ripe. *Id*. The Court otherwise denied Defendants'
28   motion to dismiss. *Id*. The Court did not order Parrish to file an amended complaint, and Parrish
     did not file one.

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

supporting declarations with numerous exhibits. *See* ECF Nos. 216 & 217. On October 16, 2014,

Defendants filed their reply in support of their motion, ECF No. 223, with a supporting declaration

and multiple exhibits, ECF No. 222. On October 22, 2014, Parrish filed an objection to evidence

contained in Exhibit L to Defendant's Reply, as well as Defendants' reference to Exhibit L in the

Reply itself. ECF No. 230. Parrish filed a declaration in support of his objection, as well as four

exhibits. *See* ECF No. 231. Defendants filed a response to Parrish's objection, ECF No. 233, as

well as a supporting declaration and two exhibits, ECF No. 234

## II.      LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

inferences in the light most favorable to the nonmoving party, there are no genuine issues of

material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court

"does not assess credibility or weigh the evidence, but simply determines whether there is a

genuine factual issue for trial." *House v. Bell,* 547 U.S. 518, 559-60 (2006). A fact is "material" if

it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact

is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the

nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

(internal citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings,

discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

*Corp.,* 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it

must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

party, but on an issue for which the opposing party will have the burden of proof at trial, the party

moving for summary judgment need only point out "that there is an absence of evidence to support

the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978,

984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set

forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a

8

1     genuine issue for trial." *Anderson,* 477 U.S. at 250.

2 **III.**     **DISCUSSION**

3        **A.**      **Failure to Exhaust Administrative Remedies**

4           **1.**        **The Prison Litigation Reform Act**

5       Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring a federal

6 action concerning prison conditions "until such available administrative remedies as are available

7 are exhausted." 42 U.S.C. § 1997(e)(a). Among the purposes of the PLRA is to allow prison

8 officials a chance to resolve disputes regarding the exercise of their responsibilities before being

9 haled into court; to reduce the number of prisoner suits; and to improve the quality of suits that are

10 filed by producing a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). To

11 satisfy the requirements of the PLRA, exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81,

12 93 (2006). This means that a prisoner must use all steps the prison offers, enabling the prison to

13 reach the merits of the issue. *Id.* at 90. Prisoners need only comply with the prison's own grievance

14 procedures to properly exhaust. *Bock*, 549 U.S. at 218.

15       In the Ninth Circuit, a prisoner's grievance contains the appropriate standard of factual

16 specificity "if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v.*

17 *Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted). It is axiomatic that

18 "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution,

19 not to lay groundwork for litigation." *Id.* To that end, a grievance need not include legal

20 terminology or legal theories, or contain every fact necessary to prove each element of an eventual

21 claim. *Id*. In addition, the PLRA "does not require that a prisoner identify in his initial prison

22 grievance each of the defendants later sued in federal court; rather, to the extent that any such

23 requirement may exist, it must come from prison regulations prescribing the grievance process for

24 that prison." *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (citing *Bock*, 549 U.S. at 217-

25 19).

26       Procedurally, failure to exhaust under the PLRA is an affirmative defense. *Bock*, 549 U.S.

27 at 216. In the Ninth Circuit, a motion for summary judgment is the proper vehicle to decide

28 whether a prisoner has exhausted administrative remedies pursuant to the PLRA. *Albino v. Baca*,

9

747 F.3d 1162, 1170 (9th Cir. 2014). A defendant has the burden to prove that there was an available administrative remedy, and that the prisoner did not exhaust it. *Id*. at1172. If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion are decided by the court. *Id*. at 1170-71. However, if the court grants summary judgment on the issue of exhaustion, the court must view all the facts in the record in the light most favorable to the non-moving party. *Id.* at 1173 (citing *Liberty Lobby*, 477 U.S. at 247-50). To the extent the court makes any factual findings that are relevant to both exhaustion and the merits, the court's findings made in the course of deciding exhaustion are not binding on a jury deciding the merits of the suit. *Id*. at 1171.

## 2.   California Prisons' Grievance Procedures

CDCR regulations allow a prisoner to appeal any action or decision by a prison official that adversely affects the prisoner's welfare. 15 Cal. Code Regs. § 3084.1(a). Prior to January 28, 2011, a prisoner had to pursue an appeal through four levels, one "informal" and three "formal." *Manning v. Bunnell*, No. 2:12-CV-2440, 2014 WL 1338312, at *2 (E.D. Cal. Apr. 2, 2014). The CDCR's administrative exhaustion procedure was modified by amendment on December 13, 2010, becoming effective on January 28, 2011. *See id.* at *3. In order to exhaust available administrative remedies within the current system, a prisoner must submit his complaint on a CDCR Form 602 and proceed up to a third formal level of appeal filed with the CDCR director or designee. Cal. Code Regs. tit. 15, § 3084.1-3084.7. Third-level, or "Director's level," of review satisfies the administrative remedies exhaustion requirement under Section 1997e(a). *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997); Cal. Code Regs. tit. 15 § 3084.1(b). CDCR regulations require a prisoner to describe "the specific issue under appeal and the relief requested." Cal. Code Regs. Tit. 15, § 3084.2(a). The prisoner is also required to list "all staff member(s) involved and . . . their involvement in the issue." Cal. Code Regs. Tit. 15, § 3084.2(a)(3). If the prisoner does not know all staff members involved, the prisoner "shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id*.

## 3.   Parrish's Exhaustion of Administrative Remedies as to Salazar

Defendants move for summary judgment for failure to exhaust administrative remedies on

10

1    the grounds that Parrish did not mention Salazar in his grievance of his excessive force claim. After

2    the cell extraction incident, Parrish filed grievance SVSP-L-10-2229. *See* ECF No. 204-1 at 6-13.

3    Defendants do not dispute that Parrish pursued this grievance up to Director's level review. ECF

4    No. 202, at 6. According to SVSP-L-10-2229, Parrish described in detail his version of the assault

5    in his cell, and names Powell and Raul Machuca as being involved in either the cell extraction or

6    the events immediately preceding it. ECF No. 204-1 at 10-11. Parrish does not name Salazar in his

7    grievance. However, Parrish raised the allegation that the correction officer involved "fabricated

8    documents." *Id*. at 12. Moreover, Parrish requested that there be an investigation of the incident

9    and that the "person or persons that authorized the emergency cell extraction be reprimanded." *Id*.

10   at 8.

11         The Court finds that Parrish sufficiently exhausted the administrative grievance process

12   with respect to Salazar. The fact that Salazar was not specifically named in Parrish's grievance

13   does not mean that Parrish failed to exhaust the administrative grievance process. *See Nunez*, 591

14   F.3d at 1223-24; *Treglia v. Kernan*, No. C 12-2522 LHK, 2013 WL 4427253, at *4 (N.D. Cal.

15   Aug. 15, 2013) (prisoner's failure to "name Warden Lewis in his grievance does not equate to a

16   failure to properly exhaust"). Parrish alleged that correction officers fabricated documents related

17   to the cell extraction, and Salazar signed the CDCR Form 837 report that summarized the cell

18   extraction and determined that Parrish should receive a serious rule violation for his involvement.

19   *See* Hung Decl., Ex. 4, at 1-4. Moreover, Parrish requested that SVSP officials reprimand the

20   individuals who authorized the cell extraction, and Salazar stated in his deposition that he was the

21   incident commander for the cell extraction. *See id*. Ex. 45, 230:7-:12.

22         One of the purposes of the PLRA's exhaustion requirement is to give the prison the

23   opportunity to reach the merits of a prisoner's grievance. *Woodford*, 548 U.S. at 93. A grievance

24   adequately puts officials on notice of the prisoner's claims, and therefore permits them to reach the

25   merits of the issue, if the grievance "alerts the prison to the nature of the wrong for which redress is

26   sought." *Griffin*, 557 F.3d at 1120. Here, Parrish's grievance alerted SVSP officials that individuals

27   with either supervisory power over the cell extraction team or involvement in drafting the

28   paperwork related to the incident were the subject of Parrish's grievances. These allegations, and

11

the fact that Parrish pursued administrative appeal SVSP-L-10-2229 to Director's level review, satisfy the requirements of the PLRA. The Court therefore DENIES Defendant's motion for summary judgment for failure to exhaust administrative remedies as to Salazar.

### 4.   Parrish's Exhaustion of Administrative Remedies as to His Conspiracy Claim

Defendants also move for summary judgment for failure to exhaust administrative remedies regarding Parrish's allegation of conspiracy under § 1985(2). Parrish alleged that the Defendants— as well as non-parties Valenzuela, Villalobos, and Roberto Machuca—conspired with one another to deter Parrish from pursuing this lawsuit, in violation of § 1985(2). First Am. Compl. ¶ 78. Specifically, Parrish alleged that the Defendants and above non-parties "undertook unjustified searches of Parrish's person and possessions, illegally destroyed Parrish's personal property, and falsely accused Parrish of possession of a weapon," all because Parrish "attended this Court through the filing of his lawsuit and . . . testified in this Court in the course of his lawsuit." *Id.* Defendants argued that Parrish did not allege the existence of a conspiracy among the Defendants and non-parties in his exhausted administrative grievances. Furthermore, to the extent that any of Parrish's grievances did allege a conspiracy, Defendants argued that Parrish failed to properly exhaust those grievances.

In the Ninth Circuit, a prisoner's grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120. When a prisoner alleges a conspiracy, the issue for the purposes of administrative exhaustion is whether any of that prisoner's grievances put prison officials on notice as to the existence and nature of the conspiracy. *See Manning*, 2014 WL 1338312, at *4 (analyzing prison grievances to determine if any of them alleged a "conspiracy of harassment intended to stop plaintiff from writing, publishing, and complaining"). It is not necessary that a prisoner name every person in his grievance that the prisoner eventually names as a co-conspirator in his lawsuit. *See Nunez*, 591 F.3d at 1224; Cal. Code Regs. Tit. 15, § 3084.2(a)(3) (if prisoner does not know all staff members involved in his grieved action, the prisoner "shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.");

12

United States District Court
For the Northern District of California

1  *see also Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (holding that a prisoner's grievance

2  sufficiently alleged a conspiracy where it gave prison officials the "opportunity to learn which

3  officers were involved in the alleged incident."). Procedurally, if a prisoner adds a new claim in an

4  amended complaint, the prisoner must have exhausted any grievance regarding the new claim

5  before the prisoner filed his amended complaint. This is because "'[t]he filing of the amended

6  complaint [is] the functional equivalent of filing a new complaint . . . and it was only at that time

7  that it became necessary to have exhausted all of the administrative remedies' prerequisite to

8  bringing the new claims in the amended complaint." *Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th

9  Cir. 2010) (quoting *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005)).

10     Here, Parrish added his § 1985(2) claim when he filed his First Amended Complaint on

11  November 21, 2013. *See* ECF No. 102. Therefore, the relevant inquiry is whether any of Parrish's

12  exhausted administrative grievances prior to November 21, 2013 alerted prison officials to the

13  existence of a conspiracy to retaliate against Parrish for the pursuit of this lawsuit. Both parties cite

14  multiple grievances, exhausted and unexhausted, related to Parrish's conspiracy claim. The Court

15  first considers whether Parrish's exhausted grievance as to the Haldeman incident, SVSP-L-13-

16  00340, was sufficient to put officials on notice of Parrish's conspiracy claim. The Court will then

17  address Parrish's unexhausted grievances.

18          **a)    Grievance SVSP-L-13-00340**

19      Grievance SVSP-L-13-00340 and its subsequent appeals contained a significant amount of

20  detail regarding Parrish's encounter with Haldeman on December 3, 2014, as well as Parrish's

21  allegation of a conspiracy among multiple correction officers to take reprisals against prisoners

22  such as himself. In Parrish's Form 602, which is dated January 17, 2013, Parrish alleged that "c/o

23  Haldeman . . . planted [a] half pair of scissors in my [property]." ECF No. 113-3[4] at 4. Parrish

24  further alleged that "SVSP hiring authorities" including "Captain E. Moore," "Lt. A. Oyarzabal,"

───────────────────────

[4] ECF No. 113-3 is a copy of Parrish's grievance SVSP-L-13-00340 that Defendants
submitted in connection with their motion to dismiss. Defendants' re-submitted grievance SVSP-
L-13-00340 in connection with their motion for summary judgment. *See* ECF No. 204-1, at 50.
However, the copy of SVSP-L-13-00340 submitted with Defendants' motion for summary
judgment is nearly illegible. Therefore, the Court refers to ECF No. 113-3 for the sake of accuracy
and completeness.

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

and "Sergeant R. Jensen" ratified policy which authorized correction officers to "take formal reprisals against inmates." *Id*. Parrish also filed a CDCR Form 602-A[5] that contained even greater detail of the Haldeman incident. There, Parrish stated that his "property was searched before I left" for the court-mandated settlement conference, and that it was in the "R&R warehouse when I was out to court." ECF No. 113-3, at 7. Parrish further stated that, upon his return from the settlement conference, he was discussing his case with another prisoner when "c/o Haldeman told me to shut the fuck up! Nobody want[s] to hear about your fucking civil suit against my officers." *Id*. at 6. Parrish also claimed that Haldeman told him, "You should have settle[d] you stupid fuck." *Id*. The grievance went on to state that Parrish then "saw him [Haldeman] take a half pair of scissors out of his pocket, and put it inside of my legal envelope." *Id*. According to the grievance, Haldeman stated: "This [is] what I was looking for." *Id*.

Parrish's Form 602-A also contained details as to the alleged involvement of other correction officers in the incident. First, Parrish specifically alleged that Haldeman's act was a "reprisal" as a "direct result of my pending lawsuit against the infamous Machuca brothers." *Id*. at 6. Parrish also stated that other correction officers, including "Lt. A. Oyarabal" and "B. Jensen . . . work[ed] together" with Haldeman. *Id*. at 7. Parrish also alleged that other correction officers "knew Haldeman lied" about discovering the half pair of scissors in Parrish's property because "my property was searched before I left and my property was in the R&R warehouse when I was out to court." *Id*. Finally, Parrish asserted that prison staff engaged in a "code of silence" with respect to the Haldeman incident. *Id*.

Parrish subsequently appealed his grievance to Director's level review, where it was denied. *Id*. at 2. In the Director's level decision, the appellate examiner noted that Parrish alleged Haldeman "planted a weapon (a half-pair of scissors) in his property . . . in response to his prior lawsuits filed against staff." *Id*. The appellate examiner also stated that Parrish requested that CDCR acknowledge "the misconduct of SVSP staff," including "reprisals and code of silence." *Id*.

The Court finds that Parrish's grievance SVSP-L-13-00340 alerted SVSP officials to

---

[5] A prisoner may use a Form 602-A to supplement the prisoner's Form 602, if the prisoner needs additional space to describe the incident. Cal. Code Regs. Tit. 15, § 3084.2(a).

14

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Parrish's claim of a conspiracy to retaliate against Parrish for his lawsuit against, among others, Adrian and Raul Machuca. First, Parrish's grievance specifically referenced a "code of silence." ECF No. 113-3, at 6. Indeed, the appellate examiner assigned to Parrish's grievance noted that Parrish wanted the prison to acknowledge the existence of a "code of silence." *Id*. at 2. CDCR's own documents described the "Code of Silence" as a "*conspiracy* among staff to . . . retaliate against those employees who report wrongdoing." Hung Decl., Ex. 24 (emphasis added). Therefore, Parrish's reference to a "code of silence" in his description of his encounter with Haldeman would have alerted prison officials that Parrish linked Haldeman's actions with a conspiracy of retaliation.

Second, the fact that Parrish named (as Parrish's appellate examiner characterized it) "SVSP staff" and other specific officers including the "Machuca brothers," gave prison officials the opportunity to determine whether Adrian and Raul Machuca, or anyone else named in Parrish's grievance or excessive force lawsuit, were involved in Parrish's encounter with Haldeman. A prisoner in filing a grievance "is not required to provide the agency with a preview of his lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant. A claim can put an agency on notice of facts it should discover during its investigation of the claim." *Gomez v. Winslow*, 177 F. Supp. 2d 977, 983 (N.D. Cal. 2001) (internal quotation marks omitted). Therefore, to allege a conspiracy, a grievance need only put prison officials on notice as to the existence and nature of a conspiracy. *See Manning*, 2014 WL 1338312, at *4. A prisoner also sufficiently alleges a conspiracy in an administrative grievance if the prisoner gives prison officials the "opportunity to learn which officers were involved in the alleged incident." *Espinal*, 558 F.3d at 128.

As stated above, Parrish's grievance did not name *only* Haldeman, but also mentioned "SVSP staff" and the "Machuca brothers." In addition to alerting SVSP officials as to the involvement of other individuals besides Haldeman, Parrish's grievance specifically alleged that Haldeman "planted" the half pair of scissors on Parrish in "reprisal[] . . . [and as] direct result of my pending lawsuit against the Machuca brothers." ECF No. 113-3, at 10. Indeed, the link between Parrish's grievance against Haldeman and the instant lawsuit is clear. Parrish was in the receiving

United States District Court
For the Northern District of California

and release area because this Court had ordered Parrish to attend a settlement conference in the instant lawsuit against Adrian and Raul Machuca and others. *See* ECF No. 79. In other words, but for Parrish's lawsuit, Parrish would not have been in the receiving and release area and would not have encountered Haldeman. By December 5, 2012, when the Haldeman incident occurred, the Extraction Defendants had been defending themselves from Parrish's § 1983 lawsuit for over a year. Moreover, prior to the filing of the instant lawsuit, Parrish had filed an administrative grievance against, among others, Adrian Machuca and Raul Machuca for the cell extraction incident, and pursued that grievance to Director's level review. ECF No. 204-1, at 6. Therefore, prison officials had ample notice that Parrish's reference to his "pending lawsuit against the infamous Machuca brothers" referred to this lawsuit and the Extraction Defendants. Parrish's grievance therefore alleged (1) the involvement of multiple correction officers (2) in an agreement to retaliate against Parrish for the instant lawsuit.

In addition to Parrish's reference to the Machuca brothers, Parrish's grievance referenced other correction officers who were involved in "formal reprisals against inmates." ECF No. 113-3, at 8 (citing "Captain E. Moore," "Lt. Oyarzabal," and "Sgt. R. Jensen"). This also would have alerted prison officials as to the alleged existence of an agreement among correction officers to retaliate against prisoners, including Parrish. *See Espinal*, 558 F.3d at 128. That these individuals are not the correction officers Parrish ultimately sued is of no moment. The Ninth Circuit in *Griffin* (which, as counsel for Defendants conceded during oral argument, is still good law) merely required that a prisoner's grievance "alert[] the prison to the nature of the wrong for which redress is sought." 557 F.3d at 1120. Here, Parrish's grievance alerted prison officials to an alleged conspiracy among multiple correction officers, including Haldeman, Adrian Machuca, and Raul Machuca, to retaliate against him as a "direct result of [Parrish's] pending lawsuit." ECF No. 113-3, at 10. This should have put the prison "on notice of facts it should discover during its investigation of the claim." *Gomez*, 177 F. Supp. 2d at 983 (internal quotation marks omitted).

At the hearing, counsel for Defendants argued that state regulations require a prisoner in his or her grievance to name all staff involved in the incident. However, California's regulations only require that a prisoner's grievance provide the names of those involved to the extent they are

16

known. *See* Cal. Code Regs. Tit. 15, § 3084.2(a)(3). If the prisoner does not know all staff members involved, the prisoner "shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id.* Here, Parrish did precisely that. Parrish claimed the existence of a conspiracy, and named Haldeman, the Machuca brothers, and other correction officers as those involved. This should have permitted prison officials to make a reasonable attempt to identify any other staff members involved.

The Court finds that grievance SVSP-L-13-00340 alerted prison officials to Parrish's claim that a conspiracy existed between Haldeman and the Extraction Defendants to retaliate against Parrish for his lawsuit. Moreover, Parrish exhausted the administrative appeal process as to SVSP-L-13-00340. Therefore, Defendants' motion for summary judgment regarding Parrish's failure to exhaust his § 1985(2) claim against Haldeman and the Extraction Defendants is DENIED.

### b)      Grievance SVSP-L-10-02809

The Court now considers Parrish's unexhausted administrative grievances. SVSP-L-10-02809, filed in September 2010, involved property that Parrish claimed was improperly taken or withheld from him, including "legal paper work" and various articles of personal property. ECF No. 204-1, at 23-24. The appeal cited Parrish's interactions with personnel in the receiving and release department, and paraphrased what other correction officers told Parrish about the location of Parrish's property. *Id*. Appeal No. SVSP-L-10-02809 was denied on the grounds that Parrish's property was in the property room, and Parrish did not pursue it past the first level of review. *Id*. at 18-19. Parrish offered no reason to excuse his failure to exhaust SVSP-L-10-02809. Therefore, to the extent that Defendants move for summary judgment on the grounds that SVSP-L-10-02809 did not sufficiently allege Parrish's § 1985(2) claim, the Court GRANTS Defendants' motion.

### c)      Grievance SVSP-L-12-01365

On April 9, 2012, approximately eight months before the Haldeman incident, Parrish filed grievance SVSP-L-12-01365. In it, Parrish alleged that when he filed his § 1983 lawsuit, "I have began [sic] to suffer wanton retaliatory acts imposed and orchestrated by officer's R. Machuca and A. Villalobos . . . while authorized thereby condoned [sic] by Sergeant Valenzuela." ECF No. 204-

17

United States District Court
For the Northern District of California

1, at 31. Parrish also accused prison officials of "ignoring the pattern of constitutional violations imposed by officer R. Machuca." *Id*. Finally, the grievance directly connected these acts of retaliation with the motive to "discourage me from pursuing my lawsuit against . . . their green wall ganglike group." *Id*. The grievance does not discuss any specific events or incidents. Indeed, the prison appeals coordinated denied SVSP-L-12-01365 on the grounds that it made a "general allegation" and "fail[ed] to state facts or specify an act or decision consistent with the allegation." *Id*. at 30. Parrish did not pursue this grievance past the first level of review, and offered no reason to excuse his failure to exhaust. The Court therefore GRANTS Defendants' motion for summary judgment with respect to grievance SVSP-L-12-01365.

### d)   Grievance SVSP-L-12-01449

In grievance SVSP-L-12-01449, filed in approximately mid-April 2012, Parrish alleged that various corrections officers, including alleged non-party co-conspirators Roberto Machuca (the brother of Adrian and Raul Machuca, who are co-defendants in the instant lawsuit) and Valenzuela, performed a strip cavity search of Parrish. ECF No. 204-1, at 39. Parrish claimed that Roberto Machuca "falsely conveyed" to Valenzuela that Parrish decided not to go to the exercise yard because "I was in possession of a cellphone." *Id*. at 37. Parrish alleged that he was placed inside a holding cage, and then the correction officers "impos[ed] upon me a most degrading strip cavity search on the open tier." *Id*. After the strip cavity search, Roberto Machuca allegedly told Parrish "stop your litigation and your program will run smooth." *Id*. Parrish claimed that Valenzuela "very well know [sic], or should have known, that . . . R. Machuca was carrying out malicious retaliatory act [sic]." *Id*. SVSP-L-12-01449 was partially granted at Level 2 review, and subsequently modified to state that officials investigated the allegations and "determined that no findings were possible." *Id*. at 33. Parrish did not pursue the grievance to Director's level review.

In terms of its substantive claims, grievance SVSP-L-12-01449 alleged a conspiracy among two or more correction officers, including non-parties and alleged co-conspirators Roberto Machuca and Valenzuela, to prevent Parrish from pursuing his lawsuit in this Court. Specifically, in SVSP-L-12-01449 Parrish claimed that Roberto Machuca told Parrish to "stop your litigation" after he subjected Parrish to a degrading strip search, and further alleged that Valenzuela knew or

18

should have known about Roberto Machuca's threat. *Id*. at 39. However, Parrish did not pursue

grievance SVSP-L-12-01449 to Director's level review, and therefore Parrish did not comply with

the requirements of PLRA. Parrish, however, has argued that his failure to exhaust SVSP-L-12-

01449 should be excused, because subsequent threats or intimidation by correction officers

rendered the administrative grievance process effectively unavailable.

The Ninth Circuit has not directly addressed the question of whether intimidation or threats

of retaliation by prison officials can excuse an inmate's failure to exhaust administrative remedies.

*Martin v. Evans*, No. C 08-04067, 2012 WL 1929885, at *3 (N.D. Cal. May 24, 2012). However,

the Ninth Circuit has held that to be "available" within the meaning of the PLRA, "a remedy must

be available as a practical matter; it must be capable of use; at hand." *Baca*, 747 F.3d at 1171

(internal quotation omitted). In addition, the Ninth Circuit has held that the actions of prison

officials can render a prison's administrative remedies "effectively unavailable" such that failure to

exhaust administrative remedies should be excused. *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th

Cir. 2010). Moreover, "[t]he Circuit has . . . cited with approval cases from other circuits holding

that where prison officials threaten an inmate with retaliation for filing a complaint, the failure to

exhaust is excusable under the PLRA." *Martin*, 2012 WL 1929885, at *3 (citing *Sapp v. Kimbrell*,

623 F.3d 812, 823 (9th Cir. 2010)).

In *Turner v. Burnside*, one of the cases the Ninth Circuit cited with approval in *Sapp*, the

Eleventh Circuit, held that threats or intimidation on the part of prison officials is sufficient to

excuse failure to exhaust administrative remedies if the threat "actually did deter the plaintiff

inmate from lodging a grievance or pursuing a particular part of the process" and "the threat is one

that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance

or pursuing the part of the grievance process that the inmate failed to exhaust." 541 F.3d 1077,

1085 (11th Cir. 2008); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (holding that the

Eleventh Circuit's analysis in *Turner* "serves as the best model"). Under the Eleventh Circuit's

two-pronged test, the first inquiry—whether intimidation or a threat actually deterred the inmate

from pursuing a part of the grievance process—is subjective: "the inmate must show that he was

actually deterred." *Tuckel*, 660 F.3d at 1254. The second inquiry, whether the alleged threat would

19

United States District Court
For the Northern District of California

1    deter a reasonable inmate of ordinary firmness, is an objective one "requiring the district court to

2    consider the context of the alleged threat or intimidation." *Id*. When a prisoner claims an excuse for

3    failure to exhaust, the burden is on the prisoner to adduce evidence supporting his excuse. *Id*.;

4    *Albino*, 747 F.3d at 1170.

5         Here, Parrish has claimed three acts of intimidation should excuse his failure to exhaust

6    SVSP-L-12-01449. First, Parrish claimed that after he filed grievance SVSP-L-12-01449, a

7    correction officer named Martinez told him to withdraw it or face further retaliation. Parrish Decl.,

8    Ex A ¶ 20. During the hearing on SVSP-L-12-01449, Martinez subsequently told Parrish that he

9    had "filed a grievance against the best officers," and Martinez "emphasized that they were required

10   to search three cells each shift." *Id*. Parrish said, based on his personal experience in his cellblock,

11   correction officers did not search three cells per shift each day, and Parrish said he then understood

12   Martinez to be implying that Parrish's cell would be searched again. *Id*. Parrish then claimed that

13   his cell was searched by two correction's officers.[6] Second, Parrish claimed that after he was told

14   in response to grievance SVSP-L-12-01449 that "no findings were possible," Parrish realized that

15   if he continued to pursue this grievance, it would "subject me to further threats and acts of

16   intimidation and violence." *Id*. ¶ 21. Finally, on July 6, 2012, Parrish said that while he was

17   traveling to the yard in his cellblock, he saw several correction officers, including Valenzuela and

18   Roberto Machuca, "lined up as if they were there for a spectator event, laughing and giving each

19   other fist bumps." *Id*. ¶ 24. A few minutes later, another inmate attacked Parrish on the yard. *Id*.

20   Correction officers continued to house that inmate near Parrish for approximately five days. *Id*.

21   Parrish claimed, given the timing of the assault and the fact that the inmate who attacked him was

22   housed next to him for five days, that these acts were done in "retaliation for my grievances and for

23   my testifying in this lawsuit." *Id*.

24        The Court, applying the Eleventh Circuit's two-pronged test in *Turner*, finds that Parrish

25   should be excused for his failure to exhaust grievance SVSP-L-12-01449. Under the first prong of

26   the *Turner* test, Parrish must show that he was actually deterred from pursuing the grievance

27   _____

28   [6] This resulted in Parrish filing grievance SVSP-L-12-01789, which the Court will discuss in
     Section III.A.4(d), *infra*.

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

process. *Turner*, 541 F.3d at 1085. Parrish has done so here, as the evidence shows Parrish did not pursue SVSP-L-12-01449 past the second level of administrative review. *See* ECF No. 204-1 at 33. Second, Parrish has shown that the alleged threats would have "deter[ed] a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *Turner*, 541 F.3d at 1085. Acts of physical coercion are sufficient to excuse the pursuit of administrative grievances. *Tuckel*, 660 F.3d at 1255. Here, Parrish claimed that he was beaten by another inmate in circumstances that suggest the attack was orchestrated by correction officers, including alleged non-party co-conspirator Roberto Machuca. Specifically, Parrish said that while he was traveling to the yard in his cellblock on July 6, 2012, Parrish saw several correction officers, including Roberto Machuca, "lined up as if they were there for a spectator event, laughing and giving each other fist bumps." Parrich Decl., Ex. A ¶ 24. A few minutes later, another inmate attacked Parrish on the yard. *Id*. Parrish also claimed that correction officers housed the inmate who attacked Parrish in close proximity to Parrish for five days. *Id*. In addition, Parrish contended that his cell was subject to a retaliatory search as a result of his filing of grievance SVSP-L-12-01449. *Id*. ¶ 20. Finally, the fact that grievance SVSP-L-12-01449 was denied for the non-specific reason that "no findings were possible" further convinced Parrish that pursuit of his grievance would subject Parrish to additional acts of retaliation. *Id*. ¶

The Court finds that the alleged physical acts of retaliation, paired with the reason for the denial of Parrish's grievance SVSP-L-12-01449, would be sufficient to "deter a reasonable inmate of ordinary firmness and fortitude" from pursuing the grievance process any further. *Turner*, 541 F.3d at 1085. Therefore, Parrish's failure to exhaust grievance SVSP-L-12-01449 is excused on the grounds that the administrative grievance process was rendered effectively unavailable to Parrish. *See Nunez*, 591 F.3d at 1226. Accordingly, Defendants' motion for summary judgment is DENIED with respect to grievance SVSP-L-12-01449.

e)      **Grievance SVSP-L-12-01789**

Parrish filed a grievance SVSP-L-12-01789 in approximately May 2012. This grievance alleged that correction officers "Lt. R. Martinez," "Captain McCall," and "Herrera," acting "on behalf of "R. Machuca," executed a "retaliatory search of my quarters in a manner consistent with

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1    formal reprisal, harassment, and intimidation." ECF No. 204-1, at 45-47. Parrish further alleged

2    that this search was in retaliation for his filing of grievance SVSP-L-12-01449, and as a "direct

3    result of my pending lawsuit against the infamous 'Machuca Brothers.'" *Id.* at 47. The grievance

4    was partially granted at the second level of review, and a determination made that staff "did not

5    violate CDCR policy." *Id.* at 43-44. Parrish did not pursue the grievance to Director's level review.

6        As with grievance SVSP-L-12-01449 (the prior grievance discussed by this Court),

7    grievance SVSP-L-12-01789 alleged a conspiracy among multiple correction officers, including

8    Roberto Machuca, to retaliate against Parrish for the instant lawsuit. In addition, Parrish has argued

9    that his failure to exhaust should be excused because acts of intimidation and retaliation made the

10   grievance process effectively unavailable to him. Parrish has pointed to substantially the same acts

11   of intimidation and retaliation that excused his failure to exhaust his earlier grievance, SVSP-L-12-

12   01449: Parrish's alleged beating at the hands of another inmate, and the fact that grievance SVSP-

13   L-12-01789 was denied for the non-specific grounds that "Staff did not violate CDCR policy." *See*

14   Parrish Decl., Ex. A ¶ 21; ECF No. 204-1, at 44. Parrish has satisfied both prongs of the *Turner*

15   test. First, Parrish has shown that he was actually deterred from pursuing the administrative

16   grievance process, as Parrish did not pursue grievance SVSP-L-12-01789 to Director's level

17   review. *See* ECF No. 204-1, at 43. Second, Parrish alleged he suffered a physical beating at the

18   hands of another inmate, in circumstances that suggested correction officers orchestrated the attack.

19   Parrish Decl., Ex. A ¶ 24. Therefore, Parrish's failure to exhaust grievance SVSP-L-12-01789 is

20   excused on the grounds that threats and intimidation by correction officers rendered the

21   administrative grievance process effectively unavailable. *See Nunez*, 591 F.3d at 1226.

22   Accordingly, Defendants' motion for summary judgment is DENIED with respect to grievance

23   SVSP-L-12-01789.

24       In sum, Parrish properly exhausted an administrative grievance (SVSP-L-13-00340) that

25   would have put prison officials on notice as to an alleged conspiracy of retaliation between

26   Haldeman and the Extraction Defendants. In addition, the Court excuses Parrish's failure to

27   exhaust two administrative grievances (SVSP-L-12-01449 and SVSP-L-12-01789) that would have

28   alerted prison officials to the fact that non-parties Roberto Machuca and Valenzuela were members

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1 of the alleged conspiracy.

2    Therefore, as set forth above, the Court GRANTS summary judgment for failure to exhaust

3 as to grievances SVSP-L-10-2809 and SVSP-L-12-01365. The Court DENIES summary judgment

4 for failure to exhaust as to grievances SVSP-L-13-00340, SVSP-L-12-01449, and SVSP-L-12-

5 01789. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

6 Parrish's § 1985(2) claim against non-party Villalobos. The Court DENIES Defendants' motion for

7 summary judgment as to Parrish's § 1985(2) claim against all Defendants and non-parties Roberto

8 Machuca and Valenzuela.

9    **B.**  **Parrish's Excessive Force Claim Against Adrian Machuca**

10    Defendants also move for summary judgment on the grounds that there is no genuine

11 dispute of material fact as to whether Adrian Machuca was a participant in the June 11, 2010 cell

12 extraction. Defendants provide the deposition testimony of other participants in the cell

13 extraction—Raul Machuca, Powell, and Sanudo—who state that Adrian Machuca was not involved

14 in the cell extraction. Duncan Decl., Ex. D, 267:22-268:5; *id*. Ex. E, 249:25-250:4; *id*. Ex. G,

15 101:22-102:2. In addition, Adrian Machuca denied that he was present during Parrish's cell

16 extraction. *See, e.g.*, *id*. Ex. C, 219:24-220:1. Parrish disputed this, stating that Adrian Machuca

17 was present before his cell door was opened. Parrish Dep. 195:20-:22. Parrish also stated that he

18 saw Adrian Machuca enter as part of the cell extraction team, and that during the event he

19 recognized Adrian Machuca's voice. *Id*. at 182:11-:24. Parrish also testified that before he was

20 pepper sprayed, he heard Raul Machuca and Adrian Machuca talking to one another in Spanish. *Id*.

21 at 181:10-:15. Parrish also claimed that he heard Raul Machuca tell his brother to leave because

22 "you shouldn't be here." *Id*. 181:23-182:3

23    Defendants have not satisfied their burden to show there is no genuine issue of material fact

24 as to Adrian Machuca's involvement in the cell extraction, especially when the evidence is viewed

25 in the light most favorable to Parrish. *See Celotex*, 477 U.S. at 321. Parrish has presented detailed

26 deposition testimony based on his personal knowledge regarding Adrian Machuca's involvement in

27 the cell extraction. Parrish testified that he saw Adrian Machuca before and during the cell

28 extraction; that he recognized Adrian Machuca's voice; that he heard Adrian Machuca and Raul

**United States District Court**
For the Northern District of California

1    Machuca talk to one another in Spanish; and that he heard Raul Machuca tell Adrian Machuca to

2    leave after the cell extraction. Defendants argued that the Court should discount Parrish's

3    testimony as conclusory and self-serving. *See* Mot. at 19. However, the Ninth Circuit has held that

4    self-serving testimony is "cognizable to establish a genuine issue of material fact so long as [it]

5    state[s] facts based on personal knowledge and [is] not too conclusory." *Rodriguez v. Airborne*

6    *Express*, 265 F.3d 890, 902 (9th Cir. 2001); *United States v. Shumway*, 199 F.3d 1093, 1103-04

7    (9th Cir. 1999) ("When a respondent to a motion for summary judgment submits proper affidavits

8    by individuals with personal knowledge . . ., such that a reasonable juror drawing all inferences in

9    favor of the respondent could return a verdict in the respondent's favor, the judge must treat that

10   fact as genuinely at issue.") Here, Parrish's deposition testimony as to Adrian Machuca's

11   involvement went far beyond mere conclusory statements. *See* Black's Law Dictionary 329 (9th

12   ed. 1990) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying

13   facts on which the inference is based"). Parrish's testimony included details as to when Parrish saw

14   Adrian Machuca, and how he recognized him. Therefore, the Court DENIES Defendants' motion

15   for summary judgment with respect to Adrian Machuca's liability for Parrish's claim of excessive

16   force.[7]

17       **C.     Parrish's Excessive Force Claim Against Salazar**

18           Defendants also moved for summary judgment as to Parrish's excessive force claim against

19   Salazar, arguing that there is no evidence that Salazar initiated or supervised the cell extraction, or

20   that he could otherwise be held liable for the acts of the cell extraction team. *See* Mot. at 21-22;

21   Reply at 9-11. Parrish responded by claiming that Salazar is liable based on a theory of supervisor

22           [7] Parrish also presented the sworn affidavit of Kacey Valli, a former prisoner housed near
23   Parrish on the date of the cell extraction. *See* Parrish Decl., Ex. B. In Valli's affidavit, Valli stated
     that he saw Parrish "get cell extracted by Srg. R. Machuca, c/o A. Machuca, c/o Powell, c/o
24   Sanudo." *Id.* The affidavit also stated that Valli saw "A. Machuca and R. Machuca run into the cell
     of [Parrish]." *Id.* Defendants argued that this Court should ignore Valli's affidavit, on the grounds
     that it prejudices them because they have not been able to take Valli's deposition. Reply at 9 (citing
25   Federal Rule of Evidence 403). Defendants also contended that Valli's affidavit is inadmissible
     hearsay. *Id.* (citing Federal Rule of Evidence 801 & 802). Defendants do not state why Valli's
26   argument is inadmissible hearsay. Moreover, beyond their conclusory statements that Valli's
     affidavit is prejudicial, Defendants articulate no argument as to why it is more prejudicial than
27   probative. Nevertheless, the Court has determined there is a genuine dispute as to Adrian
     Machuca's involvement in the cell extraction based on Parrish's detailed testimony alone, and
28   therefore need not reach the admissibility of Valli's affidavit.

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1    liability. Opp'n at 23-24.

2            The Ninth Circuit has "long permitted plaintiffs to hold supervisors individually liable in

3    § 1983 suits when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652

4    F.3d 1202, 1205 (9th Cir. 2011). The Ninth Circuit has never held that the supervisor must be

5    present when the alleged injury occurs. *Id*. Rather, the supervisor's participation can include "his

6    own culpable action or inaction in the training, supervision, or control of his subordinates"; "his

7    acquiescence in the constitutional deprivations"; or "conduct that showed a reckless or callous

8    indifference to the rights of others." *Id*. Signing or ratifying an after-the-fact investigation of the

9    acts of subordinates can demonstrate a supervisor's acquiescence in the alleged constitutional

10   violation. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (police chief's signature

11   on letter informing plaintiff that none of his complaints could be sustained sufficient to find police

12   chief liable); *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (police chief could

13   be held liable as supervisor of officer accused of excessive force where police chief signed an

14   internal affairs report dismissing complaint).

15           Here, Salazar has admitted that he was the incident commander for the cell extraction.

16   Hung Decl., Ex. 45, 230:7-:12. In addition, Salazar investigated Parrish's cell extraction, and

17   signed the CDCR Form 837 report that summarized the incident and determined that Parrish should

18   be disciplined. *See id*., Ex. 4, at 1-4. Parrish has also alleged that Salazar improperly conducted the

19   investigation by failing to follow relevant CDCR regulations. For instance, CDCR regulations

20   require that if an inmate makes an allegation of unnecessary or excessive force, the incident

21   commander is required to make a "video recording of the inmate." 15 C.C.R. § 3268.1(d)(2). In

22   addition, SVSP's use of force policy requires that if an "inmate sustained a head or serious injury

23   that could have been caused by staff's use of force," the incident commander shall "conduct a

24   videotaped interview within 48 hours." ECF No. 216-4, at 39. Parrish contended that Salazar did

25   neither of these things. Salazar's conduct, viewed in the light most favorable to Parrish, created a

26   genuine issue as to whether Salazar was culpable for, among other reasons, improper "training,

27   supervision, or control of his subordinates," or whether Salazar "acquiesce[d] in [Parrish's]

28   constitutional deprivations." *Starr*, 652 F.3d at 1205. Moreover, Salazar's ratification of the CDCR

25

United States District Court
For the Northern District of California

1    Form 837 report could also establish Salazar's liability for Parrish's excessive force claim.

2    *Watkins*, 145 F.3d at 1093. The Court therefore DENIES Defendant's motion for summary

3    judgment as to Parrish's claim against Salazar.

4        **D.    Parrish's Retaliation Claim Against Haldeman**

5        Defendants move for summary judgment on Parrish's § 1983 claim against Haldeman on

6    two grounds. First, Defendants argue that the "weight of the evidence makes it impossible for a

7    jury to find that Haldeman planted a half pair of scissors into Parrish's property." Mot. at 23.

8    Second, Defendants argue that Parrish cannot establish a claim of retaliation against Haldeman as a

9    matter of law. *Id*. at 24.

10       With respect to the claim that Haldeman placed a half pair of scissors in Parrish's property,

11   Parrish has adduced sufficient evidence to present a genuine issue as to whether Haldeman did in

12   fact place the half pair of scissors with Parrish. First, according to a CDCR Inmate Inventory Form

13   1083 prepared when Parrish left SVSP to attend the court-mandated settlement conference,

14   Parrish's property did not contain a half pair of scissors. *See* Hung Decl., Ex. 21. This would

15   suggest that the half pair of scissors were placed in Parrish's property only *after* Parrish returned

16   from the settlement conference. Second, Parrish presented his own deposition testimony. In that

17   testimony, Parrish described in detail how he witnessed Haldeman take an object from the left-

18   hand side pocket of his pants; place the object in an envelope among Parrish's legal documents;

19   subsequently remove a half pair of scissors from that envelope; and then state that Haldeman found

20   what he was looking for. Parrish Dep. 243:3-246:13. Parrish's testimony was based on his personal

21   knowledge, and is sufficiently detailed to create a genuine issue of material fact. *See Rodriguez*,

22   265 F.3d at 902. Moreover, although the testimony is self-serving, whether testimony "is self-

23   serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue

24   of material fact." *Shumway*, 199 F.3d at 1104. So long as the testimony states facts that would

25   otherwise be admissible, it is sufficient to defeat a motion for summary judgment. *Id*.

26       As to whether Parrish can establish Haldeman acted with a retaliatory motive, Defendants

27   have likewise failed to carry their burden of showing no genuine issue. *See Celotex*, 477 U.S. at

28   321. Prisoners have a First Amendment right to file prison grievances and pursue civil rights

26

litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (internal quotations and citations omitted). Purely retaliatory actions against a prisoner for exercising these rights necessarily undermine the protections of the First Amendment; therefore, such retaliatory actions violate the Constitution and are cognizable claims under § 1983. *Id*. In the prison context, a viable claim of First Amendment retaliation entails: (1) an assertion that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the prisoner's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id*.

Defendants argue that they are entitled to summary judgment because Parrish cannot establish a nexus between Haldeman's acts and a retaliatory motive. Mot. at 24; Reply at 13. In other words, Defendants argue that Parrish cannot show Haldeman acted "because of" Parrish's protected conduct. In determining whether a retaliatory motive exists, relevant factors include the timing of the alleged retaliatory act, and whether the defendant was aware of the prisoner's protected conduct. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *Richardson v. Reyes*, Case No. 12-CV-00310, 2013 WL 5800769, at *5 (N.D. Cal. Oct. 28, 2013 ("the timing and nature of the alleged retaliatory activities can provide circumstantial evidence of retaliation"). "In the First Amendment context, a plaintiff creates a genuine issue of material fact on the question of retaliatory motive when he or she produces, in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proffered reason for the adverse action was pretextual." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted). With respect to timing, where, as here, an allegedly retaliatory act comes "soon after" the protected conduct, that close proximity in time can show retaliatory intent. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (when prisoner alleged that prison officials took action against him soon after he succeeded in a prison grievance, that suggested retaliatory motive); *but see Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (proximity in timing is not, standing alone, enough to sustain a retaliation claim).

At the time of the Haldeman incident, Parrish contended that he was speaking with another prisoner about his lawsuit, after which Haldeman told Parrish to, "Shut the fuck up . . . Nobody want[s] to hear about your fucking civil lawsuit against my officers." Parrish Dep. 236:19-237:13, 239:20-:23. Haldeman conceded during his deposition that at the time Parrish was in the receiving and release area, Haldeman "believe[s]" Parrish told him that had a lawsuit pending against SVSP officials. Duncan Decl., Ex. B, 183:2-:7. In addition, Haldeman's alleged planting of the half pair of scissors occurred almost immediately after Parrish made a statement about his lawsuit to another prisoner. *See* Parrish Dep. 239:20-246:13. The deposition of Dale Stein, another prisoner who was in the receiving and release area of SVSP at the same time as Parrish, corroborated Parrish's testimony that Haldeman discovered the half pair of scissors shortly after he told Parrish to "shut the fuck up, don't nobody want to hear about you and your shit, or you and your case." Hung Decl., Ex. 47, ECF No. 216-11, 44:25-:50:1 (internal quotation marks omitted). Viewing the evidence in the light most favorable to Parrish, Haldeman was aware of Parrish's protected conduct (his lawsuit), Haldeman made a comment suggesting his opposition to Parrish's lawsuit, and Haldeman allegedly planted the half pair of scissors on Parrish's property shortly after he overheard Parrish discussing his lawsuit. Parrish has therefore adduced evidence to suggest that Haldeman "knew of the protected speech" and "expressed opposition to the speech," and that there was "proximity in time between the protected speech and the allegedly retaliatory decision." *Corales*, 567 F.3d at 568. Therefore, there is a genuine issue as to whether Haldeman acted with a retaliatory motive.[8] The Court DENIES Defendants' motion for summary judgment on this issue.

### E. Parrish's § 1985(2) Conspiracy Claim

Defendants also move for summary judgment on the grounds that there is no genuine

---

[8] Parrish, in arguing that there is a material issue as to whether Haldeman put the half pair of scissors in his property, also cited the deposition testimony of a former prisoner named Malik Jones who said he was in the receiving and release area at the same time as Parrish. *See* Opp'n at 13-14. In their Reply, Defendants contest that evidence provided to Parrish showed that Jones was in administrative segregation on December 5, 2012, and therefore Jones' testimony is not credible. *See* Reply at 12. Parrish subsequently filed an objection to this portion of Defendants' Reply as well as the supporting exhibits, and argued that these documents were provided to Parrish after the discovery cut-off, and were produced in response to Defendants' defective subpoena. *See* ECF No. 230. Parrish also argues that the documents are inadmissible hearsay. *Id*. Because the Court finds that a genuine issue of material fact exists independent of Parrish's reliance on Jones' testimony, the Court need not address Parrish's objection.

28

United States District Court
For the Northern District of California

1    dispute of material fact as to Parrish's claim under § 1985(2). The essence of Defendants'

2    argument appears to be that Parrish made only conclusory assertions as to the existence of a

3    conspiracy on the part of the Defendants and non-parties Valenzuela, Villalobos, and Roberto

4    Machuca. *See* Mot. at 25-28. Moreover, Defendants argued that Parrish cannot show that a

5    conspiracy resulted in any injury. *Id.* at 27-28.

6          The second clause of § 1985 prohibits two or more people from conspiring to use "force,

7    intimidation, or threat" to dissuade any party or witness from attending or testifying in any federal

8    court, or to "injure him in his person or property" for having so testified. 42 U.S.C. § 1985(2). The

9    Ninth Circuit has held that "to make out a claim based on retaliation under section 1985(2), a

10   plaintiff must prove four elements: (1) a conspiracy by the defendants; (2) to injure a party or

11   witness in his or her person or property; (3) because he or she attended federal court or testified in

12   any matter pending in federal court; (4) resulting in injury or damages to the plaintiff. *Portman v.*

13   *County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). An alleged agreement "need not be

14   overt, and may be inferred on the basis of circumstantial evidence such as the actions of the

15   defendants." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999).

16   This is because "[d]irect evidence of improper motive or an agreement among the parties to violate

17   a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be

18   necessary to infer such agreements from circumstantial evidence or the existence of joint action."

19   *Id.* at 1302. The Ninth Circuit has also stated that "[w]hether defendants were involved in an

20   unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there

21   is a possibility that the jury can infer from the circumstances that the alleged conspirators had a

22   'meeting of the minds' and thus reached an understanding to achieve the conspiracy's objectives."

23   *Id.* at 1301-02.

24         Here, viewing the evidence in the light most favorable to Parrish, there is a genuine dispute

25   as to whether there was a conspiracy among the Defendants and non-parties Roberto Machuca and

26   Valenzuela to retaliate against Parrish for this lawsuit. The Ninth Circuit has stated "showing that

27   the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an

28   agreement' may allow a jury to infer the existence of a conspiracy." *Mendocino Envtl. Ctr.*, 192

F.3d at 1301 (quoting *Kunik v. Racine County,* 946 F.2d 1574, 1580 (7th Cir.1991)). Here, Haldeman acknowledged during his deposition that he knew Defendants Raul Machuca and Salazar, as well as alleged non-party co-conspirators Roberto Machuca and Valenzuela. *See* Hung Decl., Ex. 35, 34:8-37:5. As discussed in Section III.D., *supra*, Haldeman also stated during his deposition that at the time Parrish was in the receiving and release area, Haldeman "believe[s]" Parrish told him that Parrish had a pending lawsuit against prison officials. Duncan Decl., Ex. B, 183:2-:7. Parrish testified in his deposition that when he was in the receiving and release area, Haldeman commented to him: "Nobody want[s] to hear about your fucking civil lawsuit against *my* officers." Parrish Dep. 236:19-237:13 (emphasis added). Parrish also testified that shortly after Haldeman told him that no one "want[s] to hear about your fucking civil lawsuit," Haldeman planted a half pair of scissors in Parrish's property. Parrish Dep. 242:13-246:13. Parrish has further alleged that other correction officers engaged in acts of retaliation against him for his lawsuit. For instance, Parrish claimed that Roberto Machuca falsely accused him of possession of a cell phone, after which Valenzuela ordered Parrish to be strip searched. Parrish Decl., Ex. A, ¶ 18. Parrish alleged that Valenzuela then told Parrish, "You wouldn't be having this problem if you didn't have this lawsuit." *Id*. Shortly after the strip search incident, Parrish alleged that Roberto Machuca carried out a retaliatory search of Parrish's cell, after which Roberto Machuca told Parrish, "Stop your litigation and your program will run smooth." *Id*. In sum, the testimony Parrish presented, both his own and that of Haldeman, is sufficiently detailed to create "a possibility that the jury can infer from the circumstances that the alleged conspirators had a 'meeting of the minds' and thus reached an understanding to achieve the conspiracy's objectives." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301-02.

As to Parrish's injury, viewing the evidence in the light most favorable to Parrish, the conspiracy between Defendants and certain non-parties resulted in invasive searches of Parrish and his property, the planting of false evidence on Parrish, and Parrish's resulting placement in solitary confinement at CSP-Sacramento. Parrish has therefore sufficiently alleged an "injury to his person or property" for purposes of the statute. 42 U.S.C. § 1985(2); *Haddle v. Garrison*, 525 U.S. 121, 126 (1998) (a sufficient injury under § 1985(2) includes "a compensable injury under tort law").

Case No.: 11-CV-01438-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

1

**F.      Defendants' Claim of Qualified Immunity**

2          "Law enforcement officers, including prison guards, enjoy qualified immunity from civil

3   damage suits unless their conduct violates 'clearly established statutory or constitutional rights of

4   which a reasonable person would have known.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1195-96

5   (9th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Summary judgment

6   based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of

7   the clearly established law, a reasonable officer could not have believed his conduct was lawful. *Id.*

8   (citing *Grossman v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994)).

9          Here, under Parrish's version of the facts, the Extraction Defendants assaulted him in his

10  prison cell while he was defenseless, plainly visible to them, and not otherwise resisting their

11  authority. The Extraction Defendants further pepper sprayed Parrish in his anus, testicles, and face

12  while Parrish was restrained and lying on the floor of his cell. A violation of the Eighth

13  Amendment occurs where a party engages in the "excessive use of physical force . . . maliciously

14  and sadistically to cause harm" rather than in a "good-faith effort to maintain or restore discipline."

15  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "[T]he law regarding a prison guard's use of

16  excessive force was clearly established by 1994." *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th

17  Cir. 2003). Here, the Extraction Defendants' alleged gratuitous and malicious use of force would

18  be excessive in violation of Parrish's rights under the Eighth Amendment, and no reasonable

19  correction officer could have believed otherwise.

20         As to Haldeman, assuming the truth of Parrish's allegations, Haldeman planted a half pair

21  of scissors in Parrish's personal possessions, resulting in Parrish being charged with possession of

22  a weapon. In addition, Haldeman did this allegedly in retaliation for Parrish's exercise of his First

23  Amendment right to petition a court with his grievances. It is well-recognized that prisoners have a

24  First Amendment right to file prison grievances and pursue civil rights litigation in the courts.

25  *Rhodes*, 408 F.3d at 567. Moreover, at the time of Haldeman's alleged action, it was "clearly

26  established law in the Ninth Circuit that prison officials could not retaliate against prisoners for

27  exercising their First Amendment rights." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

28  Therefore, Haldeman's alleged acts would have violated Parrish's Constitutional rights, and

**United States District Court**
For the Northern District of California

31

Haldeman could not have reasonably believed otherwise. For these reasons, the Court DENIES

Defendants' motion for summary judgment with respect to their claims of qualified immunity.

**IV.      CONCLUSION**

        For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART

Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: November 11, 2014

_____
LUCY H. KOH
United States District Judge